**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>ACCESS FUNDING, LLC,<br>ACCESS HOLDING, LLC,<br>RELIANCE FUNDING, LLC,<br>LEE JUNDANIAN,<br>RAFFI BOGHOSIAN,<br>MICHAEL BORKOWSKI, and<br>CHARLES SMITH,<br><br>Defendants. | Case No. 1:16-cv-03759-JFM |

**CONSUMER FINANCIAL PROTECTION BUREAU'S**
**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR ABSTAIN**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES....................iv

INTRODUCTION....................1

ARGUMENT....................2

A. *Burford* abstention is not appropriate here....................2

B. The Full Faith and Credit Act does not bar the Bureau's claims....................7

1. Maryland collateral-estoppel principles do not bar the Bureau's claims....................8

2. The Bureau's claims are not a collateral attack on state-court judgments, and in any event the Court need not address the issue at this stage....................11

C. The Complaint states claims for relief....................12

1. The Bureau's claims are well-founded under the CFPA, and the Defendants' violations are adequately alleged....................12

a. Smith provided "financial advisory services."....................12

b. The practice of law exclusion does not shield Smith's conduct....................14

c. The Complaint adequately alleges that the Access Funding Defendants and Borkowski offered and extended credit to consumers....................16

d. That Defendants or their transactions may be covered by the FTC Act and state laws is irrelevant....................16

2. The Bureau's Complaint alleges sufficient facts to support the claims contained therein....................17

a. The absence of allegations regarding individual consumers' transactions is of no moment....................17

b. The Bureau adequately alleges that Smith engaged in unfair, deceptive, and, and abusive acts or practices and that the Access Funding Defendants and Borkowski substantially assisted Smith's violations..............................17

c. The Bureau adequately alleges that Boghosian, Jundanian, and Borkowski are related persons....................23

CONCLUSION..........................................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Bouchat v. Champion Products, Inc.*,
327 F.Supp.2d 537 (D. Md. 2003) .......... 10

*Burford v. Sun Oil*,
319 U.S. 315 (1943) .......... 3

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 3

*EEOC v. Pemco Aeroplex, Inc.*,
383 F.3d 1280 (11th Cir. 2004) .......... 11

*First Penn-Pacific Life Ins. Co. v. Evans*,
304 F.3d 345 (4th Cir. 2002) .......... 6

*FNB Bank v. Richmond*,
731 A.2d 916 (Md. 1999) .......... 9

*FTC. v. Ken Roberts Co.*,
276 F.3d 583 (D.C. Cir. 2001) .......... 18

*FTC v. Lake*,
181 F.Supp.3d 692 (C.D. Cal. 2016) .......... 21

*In re Genesys Data Technologies, Inc.*,
204 F.3d 124 (4th Cir. 2000) .......... 8

*Johnson v. Collins Entertainment Co., Inc.*,
199 F.3d 710 (4th Cir. 1999) .......... 4, 5, 6

*Marrese v. Amer. Academy of Orthopaedic Surgeons*,
470 U.S. 373 (1985) .......... 8

*Matthews v. Cassidy Turley Maryland, Inc.*,
80 A.3d 269 (Md. 2013) .......... 9

*New Orleans Pub. Servs., Inc. v. New Orleans*,
491 U.S. 350 (1989) .......... 3, 4

*Pomponio v. Fauquier County Bd. of Supervisors*,
21 F.3d 1319 (4th Cir. 1994) .......... 4, 6, 7

*SEC v. Apuzzo*,
689 F.3d 204 (2d Cir. 2012) .......... 21

*Standard Fire Ins. Co. v. Berrett*,
395 Md. 439 (2006) .......... 8

*Town of Nags Head v. Toloczko*,
728 F.3d 391 (4th Cir. 2013) .......... 2

*U.S. v. Katz*,
2011 WL 2175787, (S.D.N.Y. June 2, 2011) .......... 11

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
496 F.3d 326, 340 (4th Cir. 2007) .......... 11

**Statutes**

12 U.S.C. § 5481(6) .......... 12

12 U.S.C. § 5481(15)(A)(i) .......... 16

12 U.S.C. § 5481(15)(A)(viii) .......... 12, 13

12 U.S.C. § 5481(25)(B) .......... 23

12 U.S.C. § 5481(25)(C)(i) .......... 23

12 U.S.C. § 5481(25)(C)(ii) .......... 23

12 U.S.C. § 5517(e)(1) .......... 14

12 U.S.C. § 5517(e)(2) .......... 15

12 U.S.C. § 5531(a) .......... 14, 19

12 U.S.C. § 5531(c)(1) .......... 14, 18

12 U.S.C. § 5531(d)(2)(A) .......... 14, 19, 20

12 U.S.C. § 5531(d)(2)(C) .......... 14, 19

12 U.S.C. § 5536(a)(1)(B) .......... 14, 19

12 U.S.C. § 5536(a)(3) .......... 14, 21

12 U.S.C. § 5564(a)-(b)........................................................................................................10

28 U.S.C. § 1738....................................................................................................................7

Md. Code Ann., Cts. & Jud. Proc. §§ 5-1101 et seq.......................................................4, 5

## INTRODUCTION

Defendants Access Funding, LLC; Access Holding, LLC; Reliance Funding, LLC; Lee Jundanian; Raffi Boghosian (together, the "Access Funding Defendants"); Michael Borkowski; and Charles Smith seek to dismiss the Complaint in this action on a number of grounds. They first ask this Court to dismiss or stay the case under the *Burford* abstention doctrine, contending that this matter is quintessentially a state concern. Alternatively, they contend, prior state-court proceedings approving the structured-settlement transfers at issue foreclose any claim that their conduct in engineering those transfers—through which they concealed the very facts that might have given consumers pause—violated federal law. These contentions are wholly unpersuasive. There is no precedent for a federal court's abstaining in a matter such as this one, where a federal law-enforcement agency is asserting violations of federal law, simply because a state has a regulatory scheme that touches on the subject matter. Defendants' argument that the the prior state-court proceedings should be given preclusive effect must also be rejected. Issues determined in prior proceedings involving private litigants adjudicating issues of state law cannot preclude a federal government agency seeking to enforce federal law.

Defendants' additional contentions fare no better. They contend they are not subject to the prohibitions the Bureau seeks to enforce, but misconstrue the basis for the claims against them. And finally, they assert that the Complaint contains insufficient allegations to make out claims for relief, but they fail to address the facts upon which the claims rest and, to the extent their arguments do address the claims actually asserted, Defendants fail to show that dismissal is warranted.

In sum, the Complaint's allegations that Defendants violated the Consumer Financial Protection Act of 2010 ("CFPA") by engaging in unfair, abusive, and deceptive practices related to transfers of structured settlements are well-founded and adequately pleaded. The Court should therefore deny the motions to dismiss or abstain.

**ARGUMENT**

**A. *Burford* abstention is not appropriate here.**

"[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction."[1] Defendants nevertheless contend that the Court should abstain from considering the Bureau's claims under the *Burford* abstention doctrine. They suggest that because Maryland law regulates the approval of structured-settlement transfers, and because the Bureau's lawsuit is based on facts similar to those alleged in a state-court lawsuit against them by the Maryland Attorney General, this Court should dismiss the Bureau's claims insofar as they seek equitable relief and stay the action with respect to claims for damages until the state case concludes.[2] Yet these suggestions are not appropriate under *Burford*, and Defendants have identified no case like this one in which the court applied *Burford* abstention.

*Burford v. Sun Oil* held that a federal district court properly refused to exercise jurisdiction over a challenge under Texas law because a concurrent state-court

---

[1] *See Town of Nags Head v. Toloczko*, 728 F.3d 391, 393 (4th Cir. 2013) (internal citation omitted); *id.* ("[T]he abnegation of federal jurisdiction is a serious measure to be taken only under 'extraordinary and narrow' circumstances.") (quoting *Martin v. Stewart*, 499 F.3d 360, 370 (4th Cir. 2007)).

[2] Access Funding Mem. Supp. Mot. for *Burford* Abstention and Stay or Dismissal ("Access Funding Mem."), ECF No. 14 at 9-16; Borkowski Mem. Supp. Mot. for *Burford* Abstention and Stay or Dismissal ("Borkowski Mem."), ECF No. 16-1 at 3-4.

proceeding was better suited to address the state's policy considerations and a parallel federal proceeding would risk inconsistent rulings.[3] Though *Burford* did not provide an exact rule for determining when abstention is appropriate, later cases have established that abstention is the exception, not the rule,[4] and delineated two situations when *Burford* abstention may be appropriate: first, "when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," and second, "where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[5] Notably, a federal court should not abstain under *Burford* simply because resolution of a federal question may result in overturning state policy.[6]

While the courts have not elucidated a definitive list of issues that may be deemed matters of "substantial public import" or "substantial public concern,"[7] cases where courts have applied the doctrine demonstrate that such issues typically involve quintessentially state matters such as application of a state's police power,[8] regulation of the insurance industry,[9] and land-use or zoning policy.[10] While Defendants, in their

---

[3] 319 U.S. 315 (1943).
[4] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).
[5] *New Orleans Pub. Servs., Inc. v. New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (citations and quotation marks omitted).
[6] *Id.* at 363 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." (internal citations omitted)).
[7] *Id.*
[8] *See Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710 (4th Cir. 1999).
[9] *See First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345 (4th Cir. 2002).

briefs, make much of the legislative history of Maryland's Structured Settlement Protection Act (SSPA),[11] it does not follow that every area for which a state has its own regulatory scheme is rendered an area of substantial public concern in which federal court action would be inappropriate. And Defendants understandably do not argue that this case involves an area of law that has typically been the subject of successful *Burford* abstention claims.

Further, for the first rationale for *Burford* abstention to apply, not only must the case touch on a matter of substantial public import, but it must also address difficult questions of state law.[12] Here, while the facts alleged in support of the Bureau's claims might also be relevant to questions of state law, this case by no means addresses or requires interpreting *difficult* questions of state law. Indeed, while the Bureau's claims acknowledge that state law provides certain protections for consumers, the claims do not involve interpreting state law at all, let alone difficult questions of state law. Rather, state-law requirements simply provide the factual backdrop for the Bureau's claims. Thus, the first *Burford* abstention situation does not apply here.

Nor does the second rationale for *Burford* abstention apply here, as litigation in this Court would not disrupt state efforts to establish a coherent policy with respect to structured-settlement transfers. As noted, the Maryland SSPA is uncomplicated—the law requires that a court, before approving a structured-settlement transfer, determine that the consumer has obtained independent professional advice that covers the

---

[10] *See Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319 (4th Cir. 1994).
[11] *See* Access Funding Mem. at 12-15 (discussing Md. Code Ann., Cts. & Jud. Proc. §§ 5-1101 *et seq.*).
[12] *See NOPSI*, 491 U.S. at 361.

financial, legal, and tax implications of the transaction.[13] And while there is a pending action commenced by the State of Maryland in state court, that action does not raise the federal claims at issue here. Nor would a decision in this case on Defendants' federal violations in connection with individual transactions disrupt the state's own efforts to establish a coherent policy.

None of the authorities Defendants cite support their contention that *Burford* applies here. In *Johnson v. Collins Entm't*, the plaintiffs sued in state court alleging numerous violations of state law by video-poker operators in South Carolina, and also asserting federal RICO claims predicated on the alleged state-law violations.[14] The defendants removed the case to federal court on the basis of the federal RICO claims, and the district court enjoined the video-poker operators from committing further state-law violations.[15] The Fourth Circuit, however, concluded that the district court should have invoked *Burford* and either dismissed or remanded the plaintiffs' claims for equitable relief and stayed their claims for damages.[16] The claims at issue were governed by state law that the state courts had not definitively addressed. To decide them, the Fourth Circuit noted, the district court had to "try[] to predict how the South Carolina Supreme Court would decide" disputed issues[17] "without definitive state court guidance."[18] Unlike in *Johnson*, none of the Bureau's claims turn on interpretations of state law, let alone complex and disputed issues of state law on which there is no state-

---

[13] Md. Code Ann., Cts. & Jud. Proc. § 5-1102(b)(3) (West 2016).
[14] 199 F.3d at 717.
[15] *Id*. at 718.
[16] *Id*. at 729.
[17] *Id*. at 720.
[18] *Id*. at 721.

court guidance. Rather, the Bureau alleges violations exclusively of federal law—the CFPA's prohibitions on unfair, deceptive, and abusive acts and practices.

Likewise, in *First Penn-Pac. Life Ins. v. Evans*, the Fourth Circuit again concluded that the district court should have abstained under *Burford*.[19] That case involved the insurance industry, which the states have long been primarily responsible for regulating, and a complex state-receivership proceeding.[20] The court found that the district court did not abuse its discretion in invoking *Burford* abstention given the state-specific character of the issues in the case. Here, unlike in *First Penn-Pacific*, the state issues are not complex, and the federal claims may be resolved without disrupting state efforts to establish a coherent policy regarding structured-settlement transfers. Indeed, the Bureau's claims are based on a federal statute directly applicable to Defendants' conduct. That the state has a regulatory scheme does not render federal law inapplicable.

Defendant Borkowski cites *Pomponio v. Fauquier County Bd. of Supervisors*, a § 1983 action, for the proposition that a federal district court may abstain "to show proper regard for a state government's domestic policy."[21] The *Pomponio* court, however, noted that the case, "when stripped of the cloak of [its] federal constitutional claims," was simply a state-law case.[22] The court concluded that the federal court should have abstained "to avoid interference with the State's or locality's land use policy."[23] The

---

[19] 304 F.3d 345.
[20] *Id*. at 351.
[21] Borkowski Mem. at 4 (citing *Pomponio,* 21 F.3d at 1324).
[22] 21 F.3d at 1319.
[23] *Id*. at 1328.

court quoted a dissent from Justice Marshall recognizing that "zoning is a complex and important function of the State. It may indeed be the most essential function performed by local government."[24] Unlike the land-use law at issue in *Pomponio*, there is no precedent to suggest that overseeing structured-settlement transfers is a "most essential function" of state and local governments, nor, as discussed above, is there reason to think that adjudicating the Bureau's claims related to Defendants' conduct would disrupt the state regulatory scheme. *Pomponio* thus also provides no support for applying *Burford* here.

In short, this is not the exceptional case in which *Burford* abstention is appropriate. Indeed, the only claims in the lawsuit are for violations of the CFPA, a federal statute. Where, as here, a federal law-enforcement action is initiated to address conduct explicitly prohibited by federal law, there is little doubt that *Burford* abstention is inappropriate.

**B. The Full Faith and Credit Act does not bar the Bureau's claims.**

Defendants also argue that the Full Faith and Credit Act bars the Bureau's claims. Under that Act, federal courts must give "full faith and credit" to valid state-court judgments.[25] Defendants contend that the Bureau's action would involve relitigating issues previously decided by state courts. This argument fails, however, because the Bureau was not a party to the prior proceedings, and neither the Bureau's claims nor the issues they present have been previously decided.

---

[24] *Id.* at 1327 (quoting *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting)).

[25] 28 U.S.C. § 1738.

### 1. Maryland collateral-estoppel principles do not bar the Bureau's claims.

In determining the preclusive effect of prior state-court judgments, federal courts look to the law of the state in which the prior judgment was rendered to determine whether that state's preclusion law would bar relitigation.[26] Defendants argue that Maryland collateral-estoppel law precludes the Bureau's claims. It does not.

Defendants seek to apply the purported effect of prior proceedings to the Bureau, a party that was not involved in those proceedings. Maryland law provides a four-part test for determining whether collateral estoppel should be applied in these circumstances: (1) that the issue previously decided was identical to the one presented in the current action; (2) that there was a final judgment on the merits; (3) that the party against whom preclusion is sought to be applied was in privity with a party to the prior adjudication; and (4) that the party against whom preclusion is sought to be applied was given a fair opportunity to be heard on the issue.[27] Even assuming, *arguendo*, that there was a final judgment on the merits in each of the prior state-court proceedings, the remaining parts of this test plainly are not met here.

First, the issues previously decided in state-court proceedings cannot be deemed identical to those presented here. The Complaint alleges violations of the CFPA. The state-court proceedings approving structured-settlement transfers did not adjudicate whether Defendants' conduct was unfair, deceptive, or abusive under CFPA; at most, they adjudicated whether Smith's advice met the applicable state-law standard. And

[26] *See Marrese v. Amer. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985); *see also In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127–28 (4th Cir. 2000).
[27] *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 457-58 (2006).

while Defendants contend that the courts' determinations in the prior proceedings necessarily involved conclusions on each of the issues raised by the Complaint, that is not the case. For example, the Complaint alleges that Smith deceived consumers and engaged in unfair and abusive conduct by, among other things, holding himself out as providing independent advice while misrepresenting to consumers that he was independent of the Access Funding Defendants and Borkowski, and by taking advantage of consumers' inability to understand the risks, costs, or conditions of the advice he provided.[28] Regardless of whether the advice Smith provided met the state-law standard, there is no doubt that the state courts did not address whether his conduct violated federal law.

Second, the Bureau was not in privity with the consumers in the prior state-court proceedings. A party is in privity with another, for purposes of collateral estoppel, where its interests "were fully represented, with the same incentives, by another party in the prior matter."[29] Put differently, privity exists when the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right.[30] "Because preclusion based on privity is an exception to the deep rooted historic tradition that everyone should have his own day in court[,] courts must ensure that the relationship between the party to the original suit

---

[28] Compl. ¶¶ 44-65.
[29] *Matthews v. Cassidy Turley Maryland, Inc.*, 80 A.3d 269, 294 (Md. 2013).
[30] *FNB Bank v. Richmond*, 731 A.2d 916, 930 (Md. 1999) (internal citation omitted).

and the party sought to be precluded in the later suit is sufficiently close to justify preclusion."[31]

The consumers involved in the prior state-court proceedings did not fully represent the Bureau's interests, nor did they have an incentive to do so. Notably, the prior proceedings cannot be deemed to have been adversarial in any meaningful sense. As the Bureau alleges, Defendants preyed on consumers who had immediate cash-flow needs and were likely eager for their transactions to be approved.[32] Those consumers did not have an incentive to question whether the advisor to whom they were connected by Access Funding made misrepresentations to them or failed to disclose important information. Nor, of course, did they have the information they would have needed to do so, because it was withheld from them by the Defendants, including the very individual who was supposed to represent their interests in the transaction.

The Bureau, an independent agency of the United States government with a statutory obligation to enforce the CFPA,[33] has different incentives and, with the power to investigate Defendants' business practices, information that was not available to the consumers when their transactions were approved. Governmental agencies are not typically bound by the results of private litigation when the agency seeks to enforce a federal statute and the interests of such agencies cannot adequately be represented by

[31] *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 543 (D. Md. 2003) (citing *Tyus v. Schoemehl*, 93 F.3d 449, 455 (8th Cir. 1996)).
[32] Compl. ¶¶ 23-28.
[33] 12 U.S.C. § 5564(a)-(b).

individual litigants.[34] It therefore cannot be said to have been in privity with the consumers in question.

Finally, the Bureau did not have an opportunity to be heard in the prior proceedings. The Bureau was of course not even aware that Smith, the Access Funding Defendants and Borkowski had engaged in illegal conduct until it had conducted an investigation; to suggest that before that time it could have availed itself of an opportunity to be heard in state-court proceedings involving approval of individual consumers' structured-settlement transfers strains credulity.

In sum, the prior state-court proceedings do not have preclusive effect here under Maryland law, or under the Full Faith and Credit Act, and this Court should decline to dismiss the Complaint on that basis.

**2. The Bureau's claims are not a collateral attack on state-court judgments, and in any event the Court need not address the issue at this stage.**

Relatedly, Defendants contend that the Bureau's action threatens the finality of state-court judgments and should be dismissed for that reason.[35] The Bureau's claims do not, however, implicate the finality of those judgments.[36] Rather, only in the event relief inconsistent with those judgments is entered would their finality be at issue. The appropriate remedy for the violations alleged in the Complaint is of course not at issue at the present stage of this litigation.

---

[34] *See e.g.*, *U.S. v. Katz*, No. 10 Civ. 3335, 2011 WL 2175787, at *5 (S.D.N.Y. June 2, 2011); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 340 (4th Cir. 2007); *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1291-92(11th Cir. 2004).
[35] Access Funding Mem. at 17; Borkowski Mem. at 4-6; Smith Mem. Supp. Mot. Dismiss (hereinafter Smith Mem.), ECF No. 15-1, at 12-15.
[36] *See* Compl. ¶ 16.

## C. The Complaint states claims for relief.

Defendants also argue that the Bureau's claims fail as a matter of law. The Court should reject this argument because the Bureau's claims are alleged with sufficient factual support for the Court, accepting the facts as true, to infer Defendants' liability.

### 1. The Bureau's claims are well-founded under the CFPA, and the Defendants' violations are adequately alleged.

a. Smith provided "financial advisory services."

First, the Defendants argue that the Bureau lacks authority to bring this action because, under the CFPA, Smith is not a "covered person" and all claims that flow from Smith's conduct must therefore be dismissed.[37] Defendants fail, however, to address the explicit statutory basis for the claims against Smith and the related claims that the other Defendants substantially assisted his violations, and this failure is fatal to their arguments.

Under the CFPA, any person that offers or provides a consumer-financial product or service is a "covered person."[38] The term "financial product or service" includes "financial advisory services"[39] such as credit counseling, debt management, and debt settlement.[40] Smith held himself out to consumers as an advisor on whether the transactions were in their financial best interest, and in fact provided "advice" to consumers relating to the financial implications of selling structured-settlement

[37] Access Funding Mem. at 27-28; Smith Mem. at 6-8.
[38] 12 U.S.C. § 5481(6).
[39] *Id.* § 5481(15)(A)(viii).
[40] *Id.*

payments to Access Funding (however inadequate that "advice" may have been).[41] Smith therefore provided financial-advisory services on "individual financial matters."[42] The statute does not, as Defendants suggest, require that the financial-advisory services at issue be in connection with an extension of credit; rather, advice such as Smith's relating to "individual financial matters" is within the statute's ambit and renders the provider a covered person.[43] For these reasons, Defendants' arguments concerning Smith fail.

As noted, Defendants essentially ignore the statutory basis for Counts I-IV of the Complaint. They also raise other arguments that are not addressed to the allegations of the Complaint, all of which are wholly inapposite. The Access Funding Defendants, for example, argue that they are not covered persons because they do not "extend credit or service loans."[44] Similarly, Borkowski asserts that the transfer of structured-settlement-payment rights is not a consumer-financial product or service and therefore no viable claim is alleged against Smith or, by extension, the other Defendants.[45] But the Complaint does not allege that the Access Funding Defendants extended credit or serviced loans, except with respect to the advances they provided consumers awaiting completion of structured-settlement transactions, as discussed below. And it does not allege that structured settlements or structured-settlement transfers are extensions of credit. Rather, the Complaint alleges that Smith engaged in unfair, deceptive, and

---

[41] *See* Compl. ¶¶ 32-33, 46.
[42] 12 U.S.C. § 5481(15)(A)(viii).
[43] *Id.*
[44] Access Funding Mem. at 31-32.
[45] Borkowski Mem. at 7-8.

abusive acts and practices in providing financial-advisory services.[46] It further alleges that the Access Funding Defendants and Borkowski substantially assisted those violations and may likewise be held liable for them.[47] This conduct is addressed in Counts I-IV. The Complaint further alleges that the Access Funding Defendants and Borkowski extended credit in the form of the advances they provided consumers, and engaged in abusive acts or practices in doing so. This conduct is addressed in Count VI.[48] Defendants' arguments do not even directly address these allegations, and thus fail to show that the claims should be dismissed.

b. <u>The practice-of-law exclusion does not shield Smith's conduct.</u>

Defendants argue that Smith's conduct is excluded from coverage under the CFPA because he was involved in the practice of law.[49] The Complaint's allegations regarding Smith's consultations with consumers, however, establish that he cannot avail himself of the practice-of-law exclusion, which covers "activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice."[50] Defendants' argument therefore fails.

The Bureau may exercise enforcement authority "regarding the offering or provision of a consumer financial product or service . . . (A) that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship; or (B) that is otherwise offered or provided by

---

[46] Compl. ¶¶ 44-65 (citing 12 U.S.C. §§ 5531(a), 5531(c), 5531(d)(2)(A), 5531(d)(2)(C), and 5536(a)(1)(B)).
[47] *Id*. ¶¶ 66-74 (citing 12 U.S.C. § 5536(a)(3)).
[48] The Complaint mistakenly identified the last count as Count VI instead of Count V.
[49] Access Funding Mem. at 30-31, and Smith Mem. at 8-11.
[50] 12 U.S.C. § 5517(e)(1).

the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service."[51] While he is an attorney, Smith did not provide legal advice or services to, or establish an attorney-client relationship with, any Access Funding consumers in the transactions that are the subject of the Complaint. Rather, as the Complaint alleges, the financial-advisory services Smith provided were wholly perfunctory, and directed only to consummating the transactions Access Funding sought to complete.[52] Indeed, Smith provided no substantive advice or counsel to consumers; in his consultations with them, Smith simply recited the terms of the contracts with Access Funding and asked whether consumers understood them.[53] Smith did not typically have any contact with these consumers before or after the brief calls, which were arranged by Access Funding.[54] And Smith sometimes conducted his consultations with consumers on three-way calls that involved an Access Funding representative,[55] which plainly demonstrates that no attorney-client relationship existed between Smith and consumers. Finally, Smith was paid directly by Access Funding for his services.[56] In short, Smith's cursory consultations, devoid of any advice on the implications of the transactions, cannot be said to constitute the practice of law.

---

[51] 12 U.S.C. § 5517(e)(2).
[52] Compl. ¶ 47.
[53] *Id.* ¶ 37.
[54] *Id.* ¶¶ 36-37.
[55] *Id.* ¶ 37.
[56] *Id.* ¶¶ 33-39.

c. The Complaint adequately alleges that the Access Funding Defendants and Borkowski offered and extended credit to consumers.

The Access Funding Defendants and Borkowski further contend that the Complaint's factual allegations are insufficient to establish that they are covered persons under the CFPA for the purposes of Count VI. But the Complaint alleges that the Access Funding Defendants and Borkowski regularly made advances to consumers, and that such advances are a consumer-financial product or service under the CFPA because the advances were extensions of credit to the consumers to be repaid through a deduction from the proceeds of their structured-settlement transfers.[57] The Access Funding Defendants and Borkowski do not even address these allegations, which demonstrate that they are covered persons for purposes of the violations alleged in Count VI.

d. That Defendants or their transactions may be covered by the FTC Act and state laws is irrelevant.

Borkowski contends that since the state Attorney General and Federal Trade Commission (FTC) have jurisdiction over structured settlements the Bureau must not.[58] This contention is simply wrong. As described above, the bases for the claims in the Complaint are Smith's financial-advisory services and the substantial assistance of the Access Funding Defendants and Borkowski in his legal violations (Counts I-IV), and the Access Funding Defendants' advances of money to consumers awaiting completion of structured-settlement transfers (Count VI). Defendants' conduct in each regard is unquestionably within the ambit of the CFPA. Further, there is no support for the

[57] *See id*. ¶¶ 41, 43; 12 U.S.C. § 5481(15)(A)(i).
[58] Borkowski Mem. at 7.

proposition that a person is excluded from coverage under the CFPA because he may be subject to the FTC Act and state laws.[59] Companies and products are routinely subject to multiple laws and the regulatory authority of multiple agencies.

### 2. The Bureau's Complaint alleges sufficient facts to support the claims contained therein.

Finally, Defendants argue that the Complaint pleads insufficient facts to state a claim for a number of reasons. None are persuasive.

a. The absence of allegations regarding individual consumers' transactions is of no moment.

Defendants argue that the Complaint fails to state a claim for relief because it does not identify individual consumers by name.[60] There is no support for the proposition that a complaint must specifically identify particular consumers to state a claim for violations of the CFPA. The Defendants do not, and at this stage cannot, dispute that many consumers received purported advisory services from Smith and advances from Access Funding, as alleged in the Complaint. That's enough.

b. The Bureau adequately alleges that Smith engaged in unfair, deceptive, and abusive acts or practices and that the Access Funding Defendants and Borkowski substantially assisted Smith's violations.

The Access Funding Defendants further argue that the Complaint does "nothing more than state conclusory support of the elements" of unfair, deceptive, and abusive acts or practices under the CFPA and therefore fails to state claims against them.[61] But

[59] *See, e.g.*, *FTC v. Ken Roberts Co.*, 276 F.3d 583, 593 (D.C. Cir. 2001).
[60] Access Funding Mem. at 31.
[61] *Id.* at 32.

this argument ignores the Complaint's plain allegations. As described below, the Complaint contains specific allegations addressing the elements of each claim.

First, the Complaint sufficiently alleges unfair conduct. An act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or to competition.[62] The Bureau alleges that Smith held himself out as providing "independent professional advice" and provided advice to consumers without disclosing his relationship with Access Funding. It alleges that he provided virtually no advice to consumers, and did not take the consumers' personal circumstances, including other debt obligations, into consideration. And it alleges that he was compensated directly by Access Funding for his services.[63] These facts show that Smith's conduct created a likelihood of substantial injury to consumers because it concealed from them that his advice was not *actually* independent, as the consumers were led to believe. Smith's conduct thus deprived consumers of advice designed to protect their financial interests and of the opportunity to obtain such advice elsewhere.

The likely injury to consumers was not reasonably avoidable because the consumers could not know of Smith's relationship with Access Funding and, not understanding that Smith was not himself independent, they could not reasonably be expected to seek other independent advice. This injury was also not outweighed by countervailing benefits to consumers or to competition, and Defendants do not suggest that it could have been.

---

[62] 12 U.S.C. § 5531(c)(1).
[63] Compl. ¶¶ 46-47.

Second, the Complaint sufficiently pleads a claim for deception against Smith. An act or practice is deceptive if there is a representation or omission of material information that is likely to mislead consumers acting reasonably under the circumstances.[64] The Complaint alleges that Smith represented his independence from Access Funding despite his personal and professional ties to the company and the fact that he was paid directly by Access Funding for his services.[65] Smith's representation of independence was both likely to mislead consumers and was material to their decisions. Consumers who spoke to Smith acted reasonably under the circumstances because they were directed to Smith without any indication of his relationship to Access Funding;[66] it was reasonable for them to presume his independence.

Third, the Complaint sufficiently alleges abusive conduct. An act or practice is abusive if it takes unreasonable advantage of "the reasonable reliance by the consumer on a covered person to act in the interests of the consumer"[67] or takes unreasonable advantage of "a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service."[68] With respect to the first of these types of abusive conduct, the Complaint alleges that Smith held himself out as providing independent professional advice to consumers and purported to provide it in his consultations with them.[69] In fact, he concealed his lack of independence from

---

[64] 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).
[65] Compl. ¶¶ 34, 39.
[66] *Id*. ¶¶ 33-36.
[67] 12 U.S.C. § 5531(d)(2)(C).
[68] *Id*. § 5531(d)(2)(A).
[69] Compl. ¶¶ 33-39.

consumers and did not provide such advice.[70] Consumers, having been steered to Smith by Access Funding, reasonably relied on Smith to act in their interests and to provide advisory services, and Smith took unreasonable advantage of that reliance by accepting payment for his role.[71]

With respect to the second type of abusive conduct alleged against Smith—taking unreasonable advantage of consumers' lack of understanding of the material risks, costs, or conditions of the service he provided[72]—the Complaint alleges that Smith purported to provide independent professional advice, but that consumers did not and could not understand that he did not do so. Consumers did not understand that he had not considered their interests, or that their interests would likely be better served by consulting someone truly independent. They likewise did not understand that he was not truly independent and was compensated directly by Access Funding, or that his failure to provide independent advice might constitute a material risk to their financial interests.[73] The Complaint alleges that structured-settlement transfers are complicated transactions that have serious implications for consumers' financial well-being, and although Smith held himself out as providing independent advice on the financial implications of the transfers he simply recited the terms of their proposed contracts and asked consumers if they understood them.[74]

[70] *Id.*
[71] *Id.* ¶¶ 33-36 .
[72] 12 U.S.C. § 5531(d)(2)(A).
[73] Compl. ¶¶ 33-36.
[74] *Id.* ¶ 37.

Lastly, with respect to the Access Funding Defendants' and Borkowski's liability for Smith's unfair, deceptive, and abusive practices, the Complaint alleges more than enough facts to support a claim of substantial assistance. It is unlawful for "any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions of [§ 5531]."[75] Courts have articulated what constitutes "substantial assistance" in the securities context, which offers guidance here. Conduct is "substantial" if the defendant "'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed.'"[76] In other contexts, courts have similarly found that the "threshold for what constitutes substantial assistance is low."[77]

As the Bureau alleges, Access Funding referred nearly all of its Maryland consumers to Smith for advisory services, ensured Smith could contact the consumers, had consumers sign letters saying they had received such services before they had spoken with Smith, and paid Smith directly for his services.[78] Access Funding knew or should have known that Smith engaged in only cursory communications with these consumers and did not provide truly independent professional advice, including by failing to consider consumers' individual circumstances. Access Funding knew or should

---

[75] 12 U.S.C. § 5536(a)(3).
[76] *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012) (quoting *U.S. v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).
[77] *See, e.g.*, *FTC v. Lake*, 181 F. Supp. 3d 692, 699 (C.D. Cal. 2016) (quoting *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG)(RLM), 2012 WL 1890242, at *6 (E.D.N.Y. May 23, 2012)).
[78] Compl. ¶¶ 68-69.

have known that Smith's representations that the consumers he advised had received independent professional advice were inaccurate.[79]

A crucial aspect of each of Boghosian's, Jundanian's, and Borkowski's executive roles at Access Funding was to ensure that structured-settlement transferors received independent professional advice in states where Structured Settlement Protection Acts required it so that Access Funding could seek court approval of the transactions;[80] and each was aware that Access Funding referred nearly all of its Maryland consumers to Smith for IPA services and that Smith had personal relationships with individuals at Access Funding, that Smith was paid directly by Access Funding for providing purported advisory services, and that Smith could be relied on to provide the required letters when asked.[81] Taking the alleged facts as true, the Complaint sufficiently alleges that Boghosian, Jundanian, and Borkowski facilitated Smith's provision of independent professional advice with the goal of having him succeed in providing such advice.

The Access Funding Defendants also contend that the Complaint's allegations are insufficient to establish that Defendants engaged in abusive acts or practices. But as the Complaint alleges, Access Funding provided cash advances to consumers when the company knew consumers needed the money and could not repay it. [82] The consumers would be liable for the advance if the transaction was not completed.[83] And the Access Funding Defendants represented to consumers that they were obligated to go forward

[79] *Id.*
[80] *Id.* ¶¶ 70-72.
[81] *Id.* ¶ 73.
[82] *Id.* ¶ 43.
[83] *Id.*

with the transfers after they accepted the advance, although they were not.[84] Through this conduct, Access Funding took unreasonable advantage of the consumers' lack of understanding of the material risks, costs, and conditions of the advances. The allegations in the Complaint are sufficient to conclude that Access Funding and the individuals are liable for these abusive acts or practices.

c. The Bureau adequately alleges that Boghosian, Jundanian, and Borkowski are related persons.

The Access Funding Defendants obliquely claim that the facts alleged in the Complaint fail to implicate the individual Defendants in Access Funding's abusive acts and practices alleged in Count VI.[85] Borkowski argues that the Complaint does not allege specific facts about his communications with Smith or consumers and therefore fails to state a claim.[86]

A "related person" is a "director, officer or employee charged with managerial responsibility for"[87] the company or "any shareholder who materially participates in the conduct of [its] affairs."[88] Such a person is a "covered person" under the CFPA.[89]

Jundanian, Boghosian, and Borkowski are "related persons" to Access Funding because they are directors, officers, or employees charged with managerial responsibility for the company and shareholders who materially participated in the conduct of its affairs; they are therefore "covered persons" under the CFPA. Further,

---

[84] *Id*. ¶¶ 79-80.
[85] Access Funding Mem. at 31.
[86] Borkowski Mem. at 10.
[87] 12 U.S.C. § 5481(25)(C)(i).
[88] *Id*. § 5481(25)(C)(ii).
[89] *Id*. § 5481(25)(B).

Jundanian, Boghosian, and Borkowski each participated in establishing Access Funding's policies related to advances, including the terms of the advances and how they were presented to consumers.[90] Each may therefore be held individually liable for violations of the CFPA because each participated in and directed the abusive activities of the company.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motions.

Respectfully submitted,

ANTHONY ALEXIS
*Enforcement Director*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*
JOHN C. WELLS
*Assistant Litigation Deputy*

*/s/Meghan Sherman Cater*
MEGHAN SHERMAN CATER (Fed. Bar No. 806212, NY Bar No. 4473120)
CHRISTINA S. COLL (Fed. Bar No. 806530, CA Bar No. 250712)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
Telephone (Sherman Cater): 202-435-9165
Telephone (Coll): 202-435-7843
Facsimile: 202-435-7722
e-mail: meghan.sherman@cfpb.gov
e-mail: christina.coll@cfpb.gov
Attorneys for Plaintiff
Consumer Financial Protection Bureau

[90] Compl. ¶ 42.

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2017, I served the Consumer Financial Protection Bureau's Opposition to Defendants' Motions to Dismiss or Abstain on all parties of record using the Court's CM/ECF system.

/s/Meghan Sherman Cater
Meghan Sherman Cater