**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU<br>1700 G Street, NW<br>Washington, DC 20552,<br><br>Plaintiff,<br><br>v.<br><br>ACCESS FUNDING, LLC,<br>6900 Wisconsin Avenue, Suite 700<br>Chevy Chase, Maryland 20815<br>Montgomery County.,<br>*et al.*<br>Defendants. | : | Case No. 1:16-cv-03759-JFM |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT MICHAEL BORKOWSKI'S MOTION FOR BURFORD ABSTENTION AND STAY, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT**

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Michael T. Hamilton*

Michael T. Hamilton, Esquire
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
300 Delaware Ave. Suite 900
Wilmington, DE 19801
(302) 658-6538 Fax: (302) 658-6537
*Attorney for Defendant Michael Borkowski*

## I. INTRODUCTION

Plaintiff, the Consumer Financial Protection Bureau ("the Bureau") has filed a Complaint, seeking damages, civil penalties, and costs associated with Moving Defendant's attenuated role in the purchase of structured settlement payment rights by Access Funding from citizens of Maryland. The remedy requested seeks to undermine over 150 final judgments entered in Maryland State Court, on a case-by-case basis, each ruled to be fully compliant under Maryland law pertaining to the sale of structured settlement payment rights. (Compl. ¶ 81). Structured settlements are financial arrangements for settlement recipients (also known as "annuitants") holding a contractual right to periodic payments established by settlements in lieu of a one time, lump-sum payment. *Id.* at ¶¶ 19-20, Md. Code, Cts. & Jud. Pro. § 5-1101.

In the Complaint, Defendant Michael Borkowski ("Moving Defendant") is barely mentioned, with his alleged involvement in the transfer of structured settlements at a remove, with conclusory allegations of improper conduct. (*See* Compl. ¶¶ 12, 17, 30, 35). Moving Defendant is only implicated in Count IV and Count V[1] of the Bureau's Complaint. At no point is it pled he communicated with any of these settlement recipients, nor is it alleged that he ordered or facilitated any of the allegedly underhanded methods used to obtain structured settlement payment rights from any one of the 158 to 190 "victims" at issue in this matter.

Moving Defendant filed a Motion to Dismiss the Bureau's Complaint (D.I. 16, "Motion") on the grounds that Plaintiff's claims constitute an impermissible collateral attack on the final enrolled Maryland State Court Judgments and that the Bureau fails to state a claim upon which relief can be granted. In the alternative, Moving Defendant argued that this Court should apply a *Burford* abstention.

[1] Mislabeled as Count VI.

The Bureau filed an opposition to the Motion (D.I. 23) ("the Opposition") that asserts, *inter alia*, the Complaint has pled sufficient facts to withstand a Motion to Dismiss, that they are not seeking to collaterally attack the final enrolled judgments because their claims do not seek to disrupt Maryland's state court efforts to regulate structured settlements, and that the *Burford* abstention should not apply.

They also contend their claims may go forward without disrupting state efforts with respect to structured settlement transfers, as they seek (1) to permanently enjoin Defendants from participating in the structured settlement transfer industry; and (2) to order Defendants to pay redress to consumers. (D.I. 1, pg. 16). There is no clarification in the Opposition of how the Bureau's requested relief can be achieved at trial without a judicial determination collaterally attacking the final enrolled judgments of the Maryland state courts, that may allow some basis for the Bureau to request an inference of fraud.

The Bureau still cannot put forth sufficient facts in their Complaint to give rise to a plausible claim for relief. The entirety of their Complaint is speculative and notably vague. Therefore, the Complaint should be dismissed.

## II. ARGUMENT

### A. The Bureau Lacks Standing to Collaterally Attack the Final, Enrolled Judgments of the Maryland Circuit Courts

The Bureau requests that this Court enter an order voiding each and every judgment entered by Maryland Circuit Court Judges authorizing the transfer of structured settlement payment rights that involved Access Funding. (Compl. Demand for Relief, subsections (c) and (d)). The Bureau, despite this requested relief, states in the Opposition that "their claims do not, however, implicate the finality of those judgments." (D.I. 23, pg. 11). The Bureau explicitly states that they view the relief sought in the Complaint in way that is contradictory to the demand

presented in the Complaint. The Bureau's Opposition discusses claims at odds with the relief sought in the Complaint. The Complaint must fail. The claim for relief being presented constitutes a collateral attack on over one-hundred fifty final judgments entered by Maryland State Circuit Court Judges.

The Bureau states plainly, without authority, that the remedy for the alleged violations need not be addressed at this time. (D.I. 23, pg. 11). The Bureau can dance around it, but quite simply, what they ask of this Court is to attack the sound judgments of the Maryland Circuit Courts. When a federal court is asked to consider a collateral attack on a state court judgment, it "must look to the law of the rendering state" to determine its propriety. *Yale v. National Indem. Co.*, 602 F.2d 642, 644 (4th Cir. 1979). Thus this Court must look to Maryland law on judgments to determine if it may grant the Bureau's request to undermine over one-hundred fifty final judgments entered, on a case-by-case basis, by several different by Maryland State Circuit Court Judges over a multi-year period.

The bar against collateral attacks of final judgments has long been applied by the Maryland courts, as it is "critical to the effectiveness of the judicial system itself." *Klein*, 40 Md. App. at 20; (citing *Ranoul v. Griffie*, 3 Md. 54 (1888), *Fisher v. DeMarr*, 226 Md. 509 (1961)). "Judgments of a legally organized judicial tribunal, proceeding within the scope of its allotted powers, and *possessing the requisite jurisdiction* over the subject matter of the suit and the parties thereto, whether correct or erroneous, cannot be called in question by the parties or privies in any collateral action or proceeding." *Id.* (emphasis added) (quoting "Freeman on Judgments," 5th Ed., Vol. 1, § 305, pg. 603). Strangers to a judgment have standing to collaterally attack a judgment only if said stranger's interests "would be adversely affected if valid." *Fisher*, 226 Md. at 519.

As stated in Moving Defendant's Motion, none of the judgments challenged in this action affected either the status or the interest of the Bureau, let alone the Federal Government. The Bureau says as much, admitting that they were not a party to the underlying state court proceedings and have different interests than the annuitants. (D.I. 23, pp. 8-11). The Bureau in its Opposition conflates the principles of collateral estoppel and collateral attack. While collateral estoppel involves a party seeking to question of a judgment as it pertains to him, collateral attack prevents a person from "challenging the validity of the existing judgment." *Klein*, 40 Md. App. at 21 (internal quotations omitted). The Complaint clearly states the relief sought will overturn each and every structured settlement transfer. This is a collateral attack. The Bureau provided no authority to support its contentions regarding the collateral attack doctrine. Therefore, its claims must be dismissed.

### B. The Bureau Fails to State a Claim Upon Which Relief May Be Granted, the Complaint Should Be Dismissed as to Moving Defendant Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The standard is well settled: Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops shorts of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are required to plead more than labels and conclusions, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While a Court must construe facts in a light most favorable to the plaintiff, it is not required to accept as true "a conclusion couched as a factual allegation," or "allegations that are

merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Veney v. Wichey*, 293 F.3d 726, 730 (4th Cir. 2002). A Court must decide if the factual allegations in the complaint are "above the speculative level." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (internal quotations omitted).

In its Motion, Moving Defendant outlined how Count IV of the Bureau's Complaint must fail. The claims are contingent upon pleading a viable claim against Smith, and, the transfer of Structured Settlement Payment Rights (SSPR) does not constitute a "consumer financial product or service" under the CFPA. (D.I. 16, pp. 7-8). In its Opposition, the Bureau once again provides contradictory statements without going beyond speculation. The Bureau's arguments are unpersuasive, and, at times, contradictory, in one breath stating their Complaint does not allege that Defendants "extended credit or serviced loans" (D.I. 23, pg. 13) and then in the next breath stating "Access Funding Defendants and Borkowski extended credit in the form of the advances they provided consumers." (*Id.*, pg. 14). The Bureau does nothing to substantially challenge Moving Defendant's arguments regarding statutory construction, providing no case law or statutory authority other than the conclusory allegations of unfair and deceptive trade practices in the CFPA. Nothing in the Bureau's Opposition operates to challenge the argument put forth by Moving Defendant: that nothing in the CFPA enumerates that the purchase of structured settlement or annuity payments falls under the purview of 12 U.S.C. § 5481(15). Moving Defendant reiterates its stance that, if Congress saw fit to grant the Bureau authority to regulate the transfer of structured settlement payments, it would have explicitly done so. Therefore, the Bureau has not sufficiently stated a claim for relief, and Count IV must be dismissed.

For Count VI of the Complaint, Moving Defendant reiterates that the Bureau has not put forth any factual support for even just an inference that the activities alleged fall within the umbrella of the Bureau's enforcement powers. The Bureau has pled broad, sweeping, conclusory allegations against Moving Defendant that do not satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, and therefore should be dismissed.

### C. Due to the Pending State Action by the Maryland Attorney General in the Circuit Court for Baltimore City, the Bureau's Claim for Equitable Relief Should Be Dismissed and Claims for Damages Should be Stayed

The Bureau's arguments against abstention are unpersuasive. The Bureau states Defendants did not argue that this area of law (i.e., SSPR) has been typically the subject of *Burford* abstention. (D.I. 23, pg. 4). State statutes pertaining to structured settlement transfers are relatively new. As noted in its Motion, Moving Defendant outlined how Maryland's General Assembly has enacted statutes governing the proper transfer of SSPR, which is clearly a state concern for Maryland, subject to state regulation. Moreover, the Bureau's stance that this suit would not disrupt state policy is not credible. Moving Defendant once again points out that the remedies sought by the Bureau effectively undercut the Maryland Courts, by attacking judgments and ignoring Maryland statutes.

Moving Defendant hereby adopts arguments, and incorporates, herein by reference, presented by Defendant Access Funding, LLC's Memorandum (D.I. 14) and its Reply Memorandum related to the *Burford* abstention doctrine.

## CONCLUSION

For all the foregoing reasons, Moving Defendant respectfully requests that this Court dismiss the Bureau's Complaint, in its entirety, with prejudice, or, in the alternative, this Court

should abstain from deciding equitable claims for relief and dismiss that portion of the Complaint related to the equitable relief sought and stay any further action under the *Burford* doctrine.

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**

*/s/ Michael T. Hamilton*
Michael T. Hamilton, Esquire
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
600 Baltimore Avenue, Suite 305
Towson, MD 21204
(410) 339-6880
*Attorney for Defendant Michael Borkowski*

DATED: March 27, 2017

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of March, 2017, a copy of the foregoing Memorandum in Support of Michael Borkowski's Motion to Dismiss was sent via first-class mail, postage prepaid to:

Megan Sherman Carter, Esq.
Christina Coll, Esq.
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Consumer Financial Protection Bureau*

Gregg E. Viola
Eric M. Rigatuso
Eccleston & Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
*Attorneys for Defendant Charles E. Smith*

Charles E. Sims, Esq.
O'Hagan Meyer, PLLC
2560 Huntington Avenue, Suite 204
Richmond, VA 23219
*Attorney for Defendants Access Funding, LLC, Assoc, LLC, Encor, LLC, Access Holding, LLC, Reliance Funding, LLC, Lee Jundanian, and Raffi Boghosian*

Jason B. Hutt
Bracewell Law, LLP
2001 M Street, NW, Suite 900
Washington, DC 20036-3310
*Co-Counsel for Defendant Michael Borkowksi*

*/s/ Michael T. Hamilton*
Michael T. Hamilton, Esquire