## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| CONSUMER FINANCIAL PROTECTION | * | |
| BUREAU | * | |
| | * | |
| v. | * | Civil No. ELH-16-03759 |
| | * | |
| ACCESS FUNDING, LLC, ET AL. | * | |
| | * | |
| | * | |
| ****** | | |

## MEMORANDUM

Plaintiff Consumer Financial Protection Bureau ("CFPB") filed suit against a host of defendants: Access Funding, LLC; Access Holding, LLC; Reliance Funding, LLC; Lee Jundanian; Raffi Boghosian; and Michael Borkowski (collectively, the "Access Funding Defendants"), as well as attorney Charles Smith. CFBB seeks a permanent injunction, damages, disgorgement, payment of redress, civil penalties, and costs based on defendants' alleged violation of various provisions of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481 *et. seq.*, relating to the transfers of structured settlements.[1]

Defendants subsequently filed motions for *Burford* abstention and a stay or, in the alternative, to dismiss. *See* ECF 13; ECF 16. On September 13, 2017, the court (Motz, J.) issued a Memorandum and Order denying the motions for *Burford* abstention and a stay. ECF 27; ECF 28. Moreover, the court granted the motions to dismiss as to Counts I-IV, which were based

---

[1] This case was reassigned from Judge Motz to me on December 7, 2017. *See* Docket.

upon the conduct of Smith, but denied the motions as to Count V, lodged against the Access

Funding Defendants, alleging substantial assistance to Smith's unfair and deceptive acts.[2]

Now pending is plaintiff's motion for leave to file an amended complaint (ECF 37),

which is supported by a memorandum.  ECF 38 (collectively, "Motion").  Defendants oppose the

Motion.  *See* ECF 39 (Smith Opposition); ECF 40 (Access Funding Defendants' Opposition);

ECF 41 (Reply).

No oral argument is necessary to resolve the Motion. *See* Local Rules 105.6. For the

reasons set forth below, I shall grant the Motion.

## I.  BACKGROUND

This dispute involves structured settlement factoring. Structured settlement factoring is

the offering to "recipients of structured settlements the opportunity to transfer a portion of their

future payment streams in exchange for a discounted immediate lump sum."  ECF 1, ¶ 20. The

initial complaint alleged that each of the defendants violated the CFPA by playing part in a

scheme to pursue aggressively structured settlement holders in order to purchase their

settlements on unfair terms.

Maryland has enacted a Structured Settlement Protection Act ("SSPA" or the "Act") in

order to prevent such schemes. *See* Maryland Code, § 5-1101 *et seq.* of the Courts and Judicial

Proceedings Article ("C.J.").  Specifically, the Act is meant to protect structured settlement

holders—individuals who have often suffered long-term physical or cognitive harm—from

entering into transactions that are not in their best interest.  C.J. § 5-1101.1. The Act requires that

a court find that the consumer has consulted with an independent professional advisor ("IPA")

before it can approve a structured settlement transfer. *Id.* at § 5-1102(b)(3). During the relevant

---

[2] Count VI, against the Access Funding Defendants, alleged abusive acts and practices related to advances to consumers.  It was not addressed in ECF 28.

period, the SSPA required that the IPA advise the consumer on the "financial, legal, and tax implications" of a transfer. *Id.* at § 5-1102(b)(3) (2000).

Counts I-IV of the initial complaint were based on Smith's conduct as an IPA. Smith is "a Maryland-based attorney." ECF 1, ¶ 13. The initial complaint alleged that Access Funding used Smith as the IPA for "almost all of its Maryland transactions." *Id.* ¶ 33. Although Smith was supposed to be an independent advisor, he in fact had both personal and professional ties to Access Funding. *Id.* ¶ 34. Specifically, Access Funding paid him $200 for each IPA letter he provided. *Id.* ¶ 39. Access Funding would email Smith, "telling him when and at which phone number to contact consumers," and would "courier[] to consumers prepaid cell phones that Smith used to contact the consumers." *Id.* ¶ 36. Smith would then get on the phone with consumers to provide what was supposed to be "independent professional advice" regarding the "legal, tax, and financial implications" of the transfers. *Id.* ¶ 46. In fact, the calls would last only a few minutes and involved Smith doing little more than reciting the terms of the contract and asking the consumers whether they understood them. *Id.* ¶ 37. Afterwards, Smith would send an affidavit to the consumers for them to sign, which stated that they had been "advised to seek independent professional advice in connection with the transfer" and in fact had received such advice and still desired to proceed with the transfer. *Id.* ¶ 54.

On September 13, 2017, the court dismissed Counts I-IV of the complaint because "the CFPA contains a provision that excludes lawyers from the scope of the statute's coverage" (ECF 27 at 22) and, "accepting each of the allegations in the complaint as true, it is clear that Smith gave consumers legal advice and therefore was engaged in the practice of law." *Id.* at 23. The court noted that "there are two exceptions to the practice of law exclusion under which the CFPA may apply to the conduct of lawyers." *Id.* at 25. But, it found that "Smith's conduct does not

fall within the first exception to the exclusion," *id.*, and "clearly does not fall within the second exception." *Id.* at 26.

On October 3, 2017 the CFPB filed a motion for leave to amend its complaint in order to revive Counts I-IV.  ECF 39.

## II. STANDARD

According to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the leave  of court. The court should freely grant leave when justice so requires."  Notably, "[t]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Fourth Circuit has interpreted the grant of discretion in Rule 15 to mean that proposed amendments should be permitted unless the opposing party would be prejudiced, the amendment is sought in bad faith, or the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). A proposed amended complaint would be futile where it would not be able to withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Applegate, LP v. City of Frederick, Maryland*, 179 F. Supp. 3d 522, 527 (D. Md. 2016). Where the underlying facts or circumstances relied upon in the amended complaint may be a proper subject of relief, however, the plaintiff should be afforded an opportunity to test its claim on the merits. *Foman*, 371 U.S. at 182.

# III.   DISCUSSION

Counts I-IV of the initial complaint alleged violations of the CFPA.  ECF 1. As indicated, the CFPA contains a "practice of law exclusion." According to 12 U.S.C. § 5517(e)(1), "[e]xcept as provided under paragraph (2), the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of the state in which the attorney is licensed to practice law." Paragraph (2) sets forth two exceptions to the "practice of law exclusion." The first exception is for conduct "that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship." 12 U.S.C. § 5517(e)(1). The second exception is for conduct "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service." 12 U.S.C. § 5517(e)(2).

Judge Motz dismissed Counts I-IV, finding that if each of the allegations in the complaint were true, Smith was practicing law and his conduct did not fall within either of the exceptions. ECF 27 at 22-26.  He concluded that the first exception—for conduct that, although undertaken by an attorney practicing law, takes place "outside the scope of the attorney-client relationship"—did not apply. *Id.* at 25-26. The court reasoned that if the allegations were true, "both Smith and the consumers manifested the intent necessary to form an attorney-client relationship." *Id.* at 26.

CFPB acknowledges that because Smith was engaged in the practice of law, he would normally be subject to the "practice of law exclusion." *See* ECF 41 at 1 (stating that "this Court previously ruled that Smith provided legal advice to Access Funding's consumers—a conclusion the Bureau does not presently seek to relitigate"). However, it claims Smith's conduct falls

within the first exception to the exclusion because it did not take place within the scope of the attorney-client relationship. *See* ECF 38 at 2. It argues that the new allegations in the amended complaint clarify that the consumers never manifested the intent to form an attorney-client relationship with Smith. *Id.* at 5.

The sole question now before the court is whether the proposed amendments to the complaint would alter the court's finding that "Smith and the consumers manifested the intent necessary to form an attorney-client relationship."

For purposes of identifying attorney-client relationships, Maryland has adopted the Restatement (Third) of the Law Governing Lawyers ("Restatement"). *Att'y Grievance Comm'n v. Stillwell*, 434 Md. 248, 276-77, 74 A.3d 728, 745 (2013) (Adkins, J., concurring, and citing *Att'y Grievance Comm'n of Maryland v. Shoup*, 410 Md. 462, 490, 979 A.2d 120, 136 (2009)). Section 14 of the Restatement (Oct. 2017 Update) provides:

A relationship of client and lawyer arises when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either

(a) the lawyer manifests to the person consent to do so; or

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or

(2) a tribunal with power to do so appoints the lawyer to provide the services.

Because no tribunal appointed Smith to provide legal services, any attorney-client relationship would have been formed under the requirements of paragraph 1. It requires mutual intent to form an attorney-client relationship on the part of both the attorney and the client.

Beyond the requirement of mutual intent, there are no set criteria for determining when an attorney-client relationship exists. *See, e.g. Att'y Grievance Comm'n v. Shaw,* 354 Md. 636,

650-51, 732 A.2d 876, 883 (1999) (stating that "an attorney-client relationship may be found to exist even when the services performed by the attorney are not strictly legal in character" and "does not depend on there being a formal fee arrangement"); *see also Stillwell*, 434 Md. at 260, 74 A.3d at 735 (stating that the existence of an attorney-client relationship does not depend on "payment for the services rendered"); *Att'y Grievance Comm'n v. Parker*, 306 Md. 36, 43, 506 A.2d 1183, 1187 (1986) (recognizing that an attorney-client relationship may exist even where "neither attorney nor client thought so and there was no formal retainer or agreement as to fee").

Notably, a formal or explicit contract is not required to form an attorney-client relationship. *Shoup*, 410 Md. at 489, 979 A.2d at 136. Indeed, "the facts and circumstances of each particular case are critical in determining whether an attorney-client relationship exists." *Id.*, 979 A.3d at 135 (citing *Shaw*, 354 Md. at 650-51, 732 A.2d at 883).

In Judge Motz's Opinion of September 13, 2017, he found that the allegations in the initial complaint, if true, demonstrated the existence of an attorney-client relationship. The court focused on two particular allegations: (1) Smith is a Maryland-based attorney and (2) the consumers relied on Smith to give them legal advice about whether to transfer their structured settlements. ECF 27 at 25-26. The court reasoned that where an individual relies on a lawyer to give her legal advice she manifests the intent to enter into an attorney-client relationship with that lawyer. *Id.*

The allegations in the amended complaint are largely more specific versions of the allegations in the initial complaint. However, the amended complaint contains three new allegations. First, it contains a conclusory statement that there was no attorney-client relationship between Smith and the consumers because the consumers never intended to enter into such a relationship. ECF 37-1 at ¶ 13. Second, it contains an allegation that the consumers were

unaware that Smith was an attorney, because neither Access Funding nor Smith shared that fact with them. ECF 37-1 at ¶¶ 39-40. Third, it contains an allegation that the consumers never received anything in writing or signed any document that evidenced an attorney-client relationship with Smith. ECF 37-1 at ¶ 51.

Most of the amended complaint does nothing to alter the court's analysis. For instance, the added specificity with which certain allegations are stated is irrelevant. Likewise, the first and third new allegations are each irrelevant. The first new allegation is a bare assertion of a legal principle rather than a new factual allegation. The third new allegation offers nothing new, as the initial complaint implied that consumers never received anything in writing or signed any document evidencing an attorney-client relationship.

The second new allegation, however, does alter the court's analysis. When the initial complaint alleged that the consumers relied on Smith, a Maryland-based attorney, to provide them with legal advice about transactions, the court presumed the consumers knew Smith was an attorney. Indeed, it had no reason to suspect that the consumers were unaware of that fact. According to the proposed amended complaint, however, the consumers were unaware that Smith was an attorney, because no one apprised them of that fact.

It is logically impossible for a "client" to form an attorney-client relationship with someone she does not know is an "attorney." Therefore, accepting each of the allegations in the proposed amended complaint as true, Smith and the consumers did not form an attorney-client relationship, which means Smith's alleged conduct falls within the § 5517(e)(2)(A) exception to the "practice of law exclusion." For this reason, the proposed amended complaint would not be futile. Accordingly, I shall grant CFPB leave to file the amended complaint.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint is granted. An Order follows.

December 13, 2017                                    /s/
Date                                                Ellen Lipton Hollander
                                                    United States District Judge