**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

CONSUMER FINANCIAL PROTECTION *
BUREAU           *
              *
      Plaintiff,    *
              *
v.             *  Case No. 1:16cv03759-ELH
              *
ACCESS FUNDING, LLC, et al.,   *
              *
      Defendants.  *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

Access Funding, LLC ("Access Funding"), Access Holding, LLC ("Access Holding"), Reliance Funding, LLC ("Reliance Funding"), Lee Jundanian ("Jundanian"), Raffi Boghosian ("Boghosian"), Michael Borkowski ("Borkowski") (collectively, "Access Funding Defendants"), and Charles E. Smith ("Smith") (all collectively, "Defendants"), by counsel, and under Federal Rule 56, state as follows in support of their Joint Motion for Partial Summary Judgment on claims for monetary relief filed by the Consumer Financial Protection Bureau (the "Bureau"):

**<u>INTRODUCTION</u>**

By this action, the Bureau seeks, in part, to vindicate the private rights of certain Maryland consumers by obtaining remedies on their behalf for alleged wrongs committed by Defendants in connection with the Maryland consumers' transfer of structured settlement payment rights. Those consumers, save one (Gregory Ramsel ("Ramsel")), have obtained their remedy through a class

action settlement which has been approved by the Maryland Circuit Court.[1]  Accordingly, the Bureau's claim for damages and other remedies on behalf of the class members is barred by the doctrine of *res judicata* and the bar against obtaining a double recovery.

Furthermore, as part of the class settlement, the class members assigned to the defendants in the Class Action,[2] and Smith, all rights to any recovery obtained by the CFPB on their behalf in this case.  Ramsel has done the same.  Accordingly, the CFPB's claims for damages on behalf of the class members and Ramsel is now moot and not justiciable.

This Court should therefore dismiss the Bureau's claims for damages and other relief sought by the Bureau on behalf of the class members and Ramsel.

## LIST OF UNDISPUTED FACTS

1.      The Bureau filed this suit against Defendants in November 2016, seeking damages and other forms of monetary relief and equitable remedies on behalf of Maryland consumers who transferred structured settlement payment rights to Access Funding or its affiliates and their designees pursuant to the Maryland Structured Settlement Transfer Act, Md. Code, Cts. & Jud. Proc. § 5-1101 *et seq.* (the "SSPA") (ECF No. 1).

2.      The Bureau's Amended Complaint seeks the same relief as its original Complaint. (ECF No. 44 at 18-19).

3.      The factual allegations in the Amended Complaint pertain to Access Funding's business operations in Maryland, and more specifically the actions of a Maryland lawyer, Smith,

---

[1] After opting out of the class action settlement, Ramsel later settled his claims with Access Funding and Assoc, LLC, and their affiliates, including Access Holding, LLC, En Cor, LLC, and Reliance Funding, LLC, and their officers and managers, including Jundanian, Boghosian, and Borkowski.

[2] The defendants in the Class Action were Access Holding, LLC, Access Funding, LLC, Assoc, LLC, En Cor, LLC, and Reliance Funding, LLC (collectively, the "Access Funding Entities"), and Charles Smith, and his law firm, CES Law Group, LLC (collectively, "Smith"), and Anuj Sud, and his law firm, Sudlaw, LLC ("Sud").  However, the Class Action did not name Boghosian, Borkowski, or Jundanian as defendants.  These three are collectively referred to as the "Individual Defendants" herein when discussing the Bureau's case because each are named as individual defendants in the Bureau's case.  We do not refer to Sud because the Bureau did not name Sud or his firm as defendants.

who served as an independent professional advisor to persons seeking structured settlement payment rights brokered by the Access Funding Defendants.  (*Id.*).

4.      In July 2016, Crystal Linton and Dimeca Johnson filed a putative class action complaint against essentially the same defendants involved in this case in the Circuit Court for Baltimore City, in the case styled *Crystal Linton, et al. v. Access Funding, LLC, et al.*, Case No. 24-C-16-003894-OT (the "Class Action").[3]  *See* Exhibit 1(A) (Class Action Complaint).

5.      The Class Action was based on the same conduct alleged by the Bureau in its case. *See Id.*

6.      The plaintiffs in the Class Action alleged that they sold their structured settlement payment rights to the Access Funding Entity Defendants and their designees under the Maryland SSPA.  *Id.*

7.      The plaintiffs in the Class Action also alleged that the Access Funding Entity Defendants engaged Smith, among others, to provide allegedly sham independent professional advice to plaintiffs and the class members.  *Id.*  The plaintiffs asserted that the defendants conspired to commit fraud on the courts and to defraud plaintiffs and class members by, among other things, representing that consumers had received independent professional advice before consenting to the transfer of their structured settlement payment rights when that was not the case.  *Id.*

8.      The plaintiffs in the Class Action sought economic and non-economic damages, as well as punitive damages against the defendants.  *Id.*

9.      The defendants to the Class Action agreed in December 2016 to mediate their dispute before the Honorable Carol E. Smith.

---

[3] Defendants refer to several documents from the Class Action in this memorandum.  Defendants attach the affidavit of Charles M. Sims, the attorney for the Access Funding Defendants and Reliance Funding in the Class Action, as Exhibit 1.  Sims' Affidavit, in turn, attaches documents from the Class Action and certifies that these are true and correct copies of the original filings in the Class Action.  Exh. 1 ¶ 4.

10.     The Bureau was invited to attend the mediation but declined.

11.     Following the mediation, the parties agreed to the terms of a class settlement and executed a Class Action Stipulation of Settlement.  *See* Exhibit 1(B) (Stipulation of Class Action Settlement).

12.     The parties to the Class Action then moved the Court for preliminary approval of the Class Action Settlement on March 28, 2017.  *Id.*

13.     By letter dated April 4, 2017, the defendants to the Class Action provided the Bureau and the State of Maryland, Office of the Attorney General, Consumer Protection Division ("the Division"), notice of the proposed settlement of the Class Action.[4]

14.     The Division intervened as plaintiff in the Class Action and opposed the Settlement. *See* Exhibit 1(C) (Order Granting the Maryland Consumer Protection Division's Motion to Intervene).  The Bureau did not seek to intervene.

15.     The Maryland Circuit Court entered an order preliminarily approving the Class Action Settlement (*See* Exhibit 1(D) (Preliminary Order Approving Class Action Settlement), and the Court approved the Notice of Class Action Settlement.  *See* Exhibit 1(E) (Notice of Class Action Settlement).

16.     The Notice informed the putative Class Members that the Division and the Bureau had filed suit against certain of the Access Funding Defendants, including Smith, and the Notice informed the Class Members that both the Bureau and the Division sought to recover damages and equitable remedies on behalf of the putative class members as part of their respective cases.  *Id.*

---

[4] The notice was provided pursuant to the Class Action Fairness Act of 2005 ("CAFA"), although CAFA is not applicable to the Class Action.  Given the pendency of the Bureau's case, and the action pursued by the Division in the Circuit Court for Baltimore City, Case No. 24-C-16-002855 (ECF No. 14-1), the parties to the Class Action agreed in the Stipulation of Settlement to provide the Bureau and the Division notice of the proposed settlement "that meets the requirements of" CAFA.  Exh. 1(B) at ¶ 6.5.

17.     The Notice to the putative Class Members stated that the "Bureau seeks an award of damages and disgorgement of allegedly 'ill-gotten' profits by the Access Funding Defendants for the benefit of the allegedly affected consumers." *Id*. at 4.

18.     The Notice also informed the putative Class Members that the "settlement precludes class members from receiving any financial benefit from the lawsuits brought by the Division or the Bureau.  Under the terms of the settlement, Class Members release their claim for entitlement to any remedy that may be obtained on their behalf by the Bureau or the Division in their respective lawsuits, and they agree to assign to the Defendants any such remedies obtained on their behalf." *Id*. at 5.

19.     The Notice informed the putative Class Members that they had the right to opt-out of the settlement by choosing to be excluded from the settlement.  *Id.* at 7.  They were also informed that if they "choose to be excluded, [they] . . . will retain the right to retain any remedies that the Division or the Bureau may obtain for [them] in their respective lawsuits . . ." *Id*. at 7.

20.     Only one out of one hundred putative Class Members, Ramsel, opted out of the settlement.  Ramsel later entered into a Settlement Agreement with the Access Funding Defendants that contained the same release terms and assignment of rights provided by the Class Members in the class settlement.  *See* Exhibit 1(F) (Ramsel Release and Assignment).  Collectively we refer to the Class Members' Release and Assignment (Exh. 1(B)) and the Ramsel Release and Assignment (Exh. 1(F)) as the "Release and Assignments."

21.     On February 8, 2018, the Circuit Court in the Class Action entered a Final Approval Order, whereby the Court overruled the Division's objection to the settlement and approved the Class Action Settlement.  *See* Exhibit 1(G) (Order Approving Class Action Settlement).

22.     In approving the Class Action Settlement, the Circuit Court certified the following class as the Settlement Class:

> All natural persons who were or are Maryland residents, and who had a structured annuity arising out of the settlement of a lead paint claim or a structured annuity arising out of the settlement of a non-lead pain personal injury claim (the "Annuity"), and who between January 1, 2012 and July 6, 2016, transferred all or a portion of their structured settlement payment rights under the Annuity to Access Funding, LLC, Assoc LC, En Cor, LLC, Access Holding, LLC, or Reliance Funding, LLC, or any of their designees.

Exhibit 1(G) at 8.

23.     The Court ruled that "Plaintiffs and each Class Member are deemed to have, and by operation of this Court's Final Approval Order shall have, fully, finally, and forever granted Defendants the Release as provided in paragraph 3.1 of the Settlement Agreement and are permanently barred from initiating, asserting or prosecuting any and all Released Claims against any of the Released Defendants, as defined in the Settlement Agreement, in any federal or state court or in any tribunal, including arbitration." *Id.* at 28.

24.     The Class Action Settlement approved by the Court's Final Approval Order also provided that the Class Members "irrevocably assign and transfer to the Defendants any and all benefits or recoveries, including only recovery based on equitable remedies of restitution, disgorgement of profits or damages obtained by [the Bureau] in the [Bureau's] Action . . . for the benefit of each Settlement Class Member." *Id.* at 11.

25.     After entering the Final Approval Order, the Circuit Court dismissed the Class Action with prejudice. *See* Exhibit 1(H) (Order Dismissing the Class Action with Prejudice).

## ARGUMENT

### I.    Legal Standard.

 "Summary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Wollard*

*v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).    This does not

mean that any alleged dispute of fact defeats summary judgment.  *Montgomery Cnty., Md. v.*

*Managed Care Innovations, LLC*, 261 F. Supp.3d 567, 573 (D. Md. 2017) (citing *v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986)).  "Rather, 'the requirement is that there be no *genuine* issue of

*material* fact.'"  *Id.* (emphasis in original).  The relevant inquiry is "whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Duff v. Porter*, 665 Fed. Appx. 242, 243 (4th Cir. 2016) (quoting

*Anderson*, 477 U.S. at 251-52).

## II.    <u>Res Judicata Bars the Bureau's Claims for Relief on Behalf of the Class Members.</u>

In this case, the Bureau seeks private relief on behalf of consumers (i.e., the Class

Members) who already have received compensation for, released, and assigned to certain

Defendants their right to any recovery obtained by the Bureau on their behalf for damages

allegedly caused by Defendants' conduct in consummating the Class Member's transfer of their

structured settlement payment rights.   Because the Bureau is in privity with the Class Members,

to the extent that the Bureau seeks to enforce the Class Member's private rights for monetary and

equitable relief, the doctrine of *res judicata* bars the Bureau's claims for monetary relief on behalf

of the Class Members.  To hold otherwise would not only ignore long-standing principles of *res*

*judicata*, but would also permit the Class Members and Ramsel to obtain a double recovery.

### a.  Maryland Law on Res Judicata.

Where a federal court assesses *res judicata* based on a prior proceeding in Maryland state

court, the court will apply Maryland preclusion principles.  *Williams v. 21st Mortgage Corp.*, No.

PX 16-1210, 2017 WL 1133706, at *7 (D. Md. Mar. 27, 2017) (citing *Migra v. Warren Cty. School*

*Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  The doctrine of *res judicata*, or claim preclusion,

prevents "the same parties from litigating a second lawsuit on the same claim, or any other claim

arising from that same transaction or series of transactions and that could have been—but was not—raised in the first suit." *Anne Arundel Cnty. Bd. of Ed. v. Norville*, 887 A.2d 1029, 1037 (2005) (citation omitted).  This protects the courts and parties from "the attendant burdens of relitigation," and "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Id*. at 1037 (citation and internal quotation marks omitted).  To establish *res judicata* a party must show that:  (1) the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) the claim presented in the current action is identical, in that it arises out of the same transaction or occurrence, to the one determined in the prior adjudication; and, (3) there has been a final judgment on the merits of that claim.  *Id*.

### b.   The Parties are the Same.

#### 1.   CFPB is in Privity with the Class Action Plaintiffs.

The Bureau is in privity with the Class Members to the extent that it seeks to obtain private remedies for their benefit.  Privity "generally involves a person so identified in interest with another that [the person] represents the same legal right." *Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 744 (Md. 2017) (citation and internal quotation marks omitted).  Because the Bureau seeks damages and other relief for the benefit of the Class Members and not the public at large, the Bureau is asserting the same legal rights as the Class Members.

Numerous courts have found a government agency to be in privity for the purpose of *res judicata* when the government seeks to obtain relief for consumers that have been released through settlements of private actions.  *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1179-82 (9th Cir. 2014) (enjoining an action by a state Attorney General seeking restitution on behalf of previously-settled plaintiffs); *In re American Investors Life Ins. Co. Annuity Mktg. and Sales*

*Practice Litig.*, No. 05-md-172, 2013 WL 3463503, at *5-9 (E.D. Pa. Jul. 10, 2013) (same); *New Mexico ex rel. King v. Capital One Bank (US) N.A.*, 980 F. Supp. 2d 1346, 1354-56 (D.N.M. 2013) (barring a state Attorney General's attempt to vindicate the private rights of previously-settled class members and noting that the action would result in double-recovery); *Rex, Inc. v. Manufactured Housing Comm. of State of N.M. Manufactured Housing Div.*, 892 P.2d 947, 954-56 (N.M. 1995) (holding that private releases barred an agency's right to vindicate private benefits, but not public benefits); *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 496 (3d Cir. 1990) (applying *res judicata* to EEOC actions brought on behalf of individuals who previously settled or lost trials on the same claims); *F.T.C. v. AMREP Corp.*, 705 F. Supp. 119, 124-125 (S.D.N.Y. 1988) ("While the Commission correctly states that private parties cannot release public rights, private parties can release the right to have an action brought on their behalf by a representative."); *Brooks v. Stroh Brewery Co.*, 382 S.E.2d 874, 884 (N.C. Ct. App. 1989) ("[W]hen the scope of the relief sought by the Commissioner is for private, individual benefit, we see no reason for the action not to be barred by the employee's acceptance of an award in the collective bargaining grievance process.").[5]

An overriding consideration for these courts concerned the nature of the remedy the government seeks.  The courts draw a clear line between government actions seeking to enforce *public* rights and those seeking to enforce *private* rights.  Resolution of a private claim does not preclude subsequent government actions regarding *public* rights.  It does, however, preclude subsequent government action to vindicate *private* rights.

---

[5] The Baltimore Circuit Court relied upon these cases in rejecting the Division's argument that the Class Action Settlement Agreement is illegal because the Settlement released the Class Members claims against the Defendants without the Division's consent. Exh. 1(G) at 24.  In so doing, the Court reasoned that "[n]umerous courts have approved class action settlements notwithstanding that a state regulatory agency may also have a regulatory remedy against the class action defendants." *Id.* (citations omitted).  The Court stated "[t]o the extent that the Division seeks recovery of equitable remedies or damages on behalf of the Class Members, it is pursuing the private rights of the Class Members, not public rights, and thus, the Class Members retain the right to settle their claims with the Defendants." *Id.*

The District Court's decision in *New Mexico ex. Rel. King,* 980 F. Supp. 2d 1346, addressed circumstances like those presented here.  In that case, private plaintiffs sued Capital One alleging various consumer protection violations related to the bank's payment protection plans.  *Id*. at 1349. The plaintiffs settled their claims and signed a release of all past and future claims against Capital One.  *Id*. at 1349-50.  The New Mexico Attorney General later filed suit against Capital One seeking civil enforcement remedies, equitable relief, and restitution for New Mexico residents, some of whom were members of the class action.  Capital One moved to dismiss the restitution claims, asserting that they were barred by *res judicata*. *Id*. at 1350.  The court agreed and dismissed the Attorney General's claims for monetary relief.  Regarding privity, the court noted that the Attorney General was "representing exclusively private interest[s]" because "[c]ompensation for the individual consumers would inure solely to the benefit of the consumers."  *Id*. at 1353 (internal citation and quotation marks omitted).

The Ninth Circuit came to the same conclusion regarding privity between private class members and a government agency in *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014).  In that case, private plaintiffs settled a class action lawsuit and then a state Attorney General brought an action seeking restitution for the class members.  Addressing privity, the Ninth Circuit held that when "a government entity sues for the same relief that 'plaintiff [has] already *pursued* then the requisite closeness of interests for privity is present.'" *Id*. at 1179 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006)).  The court held that the Attorney General was in privity with the class members and applied *res judicata* principles to bar the Attorney General's claims for restitution.  *Id*. at 1180.

The *IntelliGender* and *Capital One* cases apply with equal weight here.  The Bureau's claims for monetary relief seek to vindicate the private rights of the Class Members.  The damages

and other relief sought by the Bureau would inure to the benefit of the affected consumers, who are Class Members, and not the public at large.  In that respect, the Bureaus is in privity with the Class Members. *IntelliGender*, 771 F.3d at 1179; *In re New Mexico ex rel.*, 980 F. Supp. 2d at 1353-54.[6]

Moreover, the Bureau now seeks to improperly obtain additional recovery, i.e., a double recovery, for the Class Members based on the same alleged conduct by Defendants.  In so doing, the Bureau is "so identified in interest with" the class members that the class members represented "the same legal right" in the class action, *Georg*, 175 A.3d at 747.  Thus, the Bureau is in privity with the class members.

The Bureau's interest in furthering the private rights of the Class Members to obtain damages is wholly different from what this Court found lacking when considering the Access Funding Defendants' Motion for Burford Abstention and Stay, or in the Alternative, to Dismiss ("Motion to Dismiss")(ECF No. 14).  The Access Funding Defendants moved to dismiss certain of the Bureau's claims on the basis that the Full Faith and Credit Act, 28 U.S.C. § 1738, barred the Bureau's collateral attack on the legal and factual conclusions embodied within the Maryland courts judgments approving the transfer of structured settlement payment rights at issue in this case. (ECF No. 14, at 17).  In denying the Access Funding Defendants' Motion to Dismiss (ECF No. 27), Judge Motz applied the standard for issue preclusion under Maryland law and found the

---

[6] The fact that the Bureau purports to bring the claim under a different statute than the Class Members does not defeat application of *res judicata* principles.  Functionally, the CFPB's claim for monetary damages allegedly suffered by the Class Members has a "representative nature" and is "essentially derivative" of the claims the class members brought in the Class Action.  *See In re Baldwin-United Corp.*, 770 F.3d 328, 341-42 (2d Cir. 1985) ("[T]he invocation of such a restitutionary remedial provision does not cause the claim to lose its remedial character.  Although only the state can act under the statute its claim is essentially derivative.  Any recovery would . . . ultimately [go] to the plaintiffs-investors in the federal action, who are the real parties in interest.").

Bureau was not in privity with the consumers in the underlying cases approving the transfer of structured settlement rights. (*Id.*).

The Court reasoned that the Bureau and the consumers did not share the same interest in the proceedings approving the transfers of the structured settlement rights.  The Bureau "has an incentive to curb consumer fraud by ensuring that financial advisors do not take advantage of potentially vulnerable consumers." (*Id.* at 13).  In contrast, Judge Motz noted that both Access Funding and the consumers were parties to the state cases approving the transfers. (*Id.*).   Judge Motz found that the "consumers came before the court as willing participants in the prospective settlement transfers, whose primary incentive was to have those transfers approved." (*Id.*).

Unlike the situation with the court orders approving the transfers of the structured settlement payment rights, the Access Funding Entity Defendants and Smith were on opposite sides of the case from the Class Members.  The Class Members were adequately represented by Class counsel, and they had every incentive to obtain as large a judgement of damages as possible against the defendants to compensate the Class Members for alleged harm caused by Defendants' conduct in the transfer of the structured settlement rights.  The Bureau's interest to obtain private remedies on behalf of the Class Members was and remains wholly aligned with the Class Members and their counsel.[7]  Accordingly, the Bureau's interest in advancing and protecting the Class Members' private right to obtain an award of damages from the Defendants was directly at interest in the Class Action, and that interest received actual and efficient protection through the actions of Class Counsel, the adversarial system, and the Maryland Court's approval of the Class Action settlement.

---

[7]The Bureau did not seek to intervene or otherwise oppose the Class Action Settlement.

12

### 2.     The Defendants are the Same.

The Access Funding Entities and Smith were parties to the Class Action, and thus, there can be no question that they are the same parties as those named as defendants in this case.  The Class Action did not name Jundanian, Boghosian, and Borkowski (the "Individual Defendants"), however, those persons are in privity with the Access Funding Entities and were released by the Maryland Circuit Court's Final Approval Order approving and confirming the Class Action Settlement.

Maryland Courts hold that privity exists where "a person [is] so identified in interest with another that [the first person] represents the same legal right." *FWB Bank v. Richman*, 354 Md. 472, 498, 731 A.2d 916, 930 (1999).  Privity also applies where the parties "share[d] the same incentive" in both cases. *Bank of New York Mellon v. Georg*, 456 Md. 616, 658-59, 175 A.3d 720, 747 (2017) (quoting *Warner v. German*, 100 Md. App. 512, 520-21, 642 A.2d 239, 243 (1994) (brackets in original)).  The Court of Special Appeals explained privity in the *res judicata* context, not only includes the parties of record, but also "all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine witnesses, and appeal if an appeal lies." *Douglas v. First Security Fed. Savings Bank, Inc.*, 101 Md. App. 170, 183, 643 A.2d 920, 927 (1994) (citations omitted).  Thus, "where persons, although not formal parties of record, *have a direct interest in the suit,* and in the advancement of their interest take open and substantial control of its prosecution, *or they are so far represented by another that their interests receive actual and efficient protection,* any judgment rendered therein is conclusive upon them to the same extent as if they had been formal parties." *Id.* (emphasis in original).

Under the circumstances of this case, there is no question that the Individual Defendants have a direct interest in Class Action.  The resolution of that case resulted in releases that barred

the Class Members from pursuing the same claims against them.   Moreover, the Individual

Defendants took open and substantial control of the defense of the Class Action.   Even had they

not done so, they were so far represented by the defense of the Access Funding Entity Defendants

that their interests received actual and efficient protection in the Class Action.

     The Individual Defendants shared a direct interest with the Access Entity Defendants in

the Class Action.   While neither individual was named in the case, each understood that the facts

at issue in the Class Action case were the same as those in the Bureau's case.   *See* Affidavit of Lee

Jundanian, attached as Exhibit 2, ¶ 13; Affidavit of Raffi Boghosian, attached as Exhibit 3, ¶ 13,

Affidavit of Michael Borkowski, attached as Exhibit 4, ¶ 12.   They understood that while the Class

Action ascribed blame to the Access Funding Entities for certain alleged acts, the Bureau's case

blames those acts directly on the Individual Defendants as the individuals who controlled the day-

to-day operations of the Access Entity Defendants.   *See* Exh. 2 ¶ 13; Exh. 3 ¶ 13; Exh. 4 ¶ 13; *see*

*also* Amended Complaint (ECF No. 44) at ¶¶ 14-17, 58, 60, 84-99.   Accordingly, the Individual

Defendants understood that the outcome of the Class Action could have legal implications for their

defense of the claims made in the Bureau's case, and vice versa.   Exh. 2 ¶ 18; Exh. 3 ¶ 18; Exh.   4

¶ 15.   Thus, the Individual Defendants' interests and incentives aligned with those of the Access

Entity Defendants.

     In an effort to protect those interests, the Individual Defendants exercised control over the

litigation strategy in the Division's case, the Class Action, and the Bureau's case.   Boghosian and

Jundanian were responsible for interviewing and retaining lead counsel for the Access Funding

Defendants in the Division's case, for the Access Entity Defendants in the Class Action, and

finally, for the Access Entity Defendants and themselves in the Bureau's case.   Exh. 2 ¶¶ 7-8, 12;

Exh. 3 ¶¶ 7-8, 12.   They have served as the principal contacts for the Access Funding and Access

Entity Defendants in all three cases.  Exh. 2 ¶ 21; Exh. 3 ¶ 21.  In the Bureau's case, they have made all strategic litigation decisions in consultation with Borkowski, as well as provided comments to all the pleadings and responses to all discovery requests propounded on the Access Funding Defendants.  Exh. 2 ¶¶ 20, 22-23; Exh. 3 ¶¶ 20, 22-23; Exh. 4 ¶ 17.[8]

Likewise, in the Class Action, Boghosian and Jundanian attended the mediation conference, negotiated the terms of the class action settlement, approved the terms of that settlement on behalf of the Access Funding Defendants, and attended the fairness hearing.  Exh. 2 ¶ 24; Exh. 3 ¶ 24.  Borkowski, through his counsel, was involved in the strategic decisions involved in litigating and settling the Class Action.  Exh. 4 ¶ 14.  Borkowski had discussions, through counsel, with the Access Funding Entities' counsel regarding the mediation, and he reviewed and provided comments to drafts of the proposed settlement agreement.  *Id.*  Boghosian and Jundanian communicated regularly with lead counsel for the Access Funding Entity Defendants regarding the facts, analysis, and strategy related to the defense of the claims against them individually and the Access Funding Entities and Reliance Funding in all cases arising out of the transfer of structured settlement payment rights.  Exh. 2 ¶ 26; Exh. 3 ¶ 26.  Similarly, Borkowski's counsel, pursuant to the Joint Defense and Common Interest Agreement, has been in regular and constant contact with counsel for the Access Funding Entities and Reliance Funding regarding the defense of the Access Funding Entities and Reliance Funding in all litigation arising out of the transfer of structured settlement payment rights.  Exh. 4 ¶ 17.

Thus, the Individual Defendants have directed and controlled the defense of the Access Funding Entity Defendants in all three cases arising from the sale of structured settlement payments.  They selected counsel, acted as the point of contact with counsel for the Access Funding

---

[8] The Individual Defendants exercised similar control over the Division's case, which arises out of the same facts and circumstances as the Division's case and the Class Action.  Exh. 2 ¶ 25; Exh. 3 ¶ 25.

Entity Defendants, responded to discovery, commented on pleadings, negotiated, and accepted settlement terms, and drove litigation strategy.  In so doing, the Individual Defendants also insured that – while not parties to the Class Action  – their "interests receiv[ed] actual and efficient protection" in that case.  *Douglas*, 101 Md. App. at 183, 643 A.2d at 927 (citations and quotation marks omitted).  Accordingly, the Individual Defendants are in privity with the Access Funding Entity Defendants, and thus, the parties to Class Action case and this case are the same.

     **c.**  **The Bureau Asserts the Same Claims as those Asserted in the Class Action.**

The Class Action arose from the same facts and circumstances which have given rise to the claims the Bureau asserts in the instant case.  While the plaintiffs in the Class Action sought relief based on different theories than those asserted in this case, this is inconsequential regarding the application of *res judicata*, because Maryland applies the "transactional approach" to determine whether claims are the "same."  *Norville*, 887 A.2d at 1038.

"Under the transactional approach, if the two claims or theories are based on the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously."  *Id*.  "Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions."  *Id*.   Thus, "[e]ven if 'a number of different legal theories casting liability on an actor may apply to a given episode, [they do] not create ... multiple claims' depriving a prior judgment of its preclusive bar."  *Id.* at 1039 (citing *Lockett v. West*, 914 F. Supp. 1229, 1233 (D. Md. 1995) (quoting Restatement (Second) of Judgments § 24, cmt. c (1982)).   "'This remains true although the several legal theories depend on different elements of facts.'"  *Id.* (quoting *Lockett*, 914 F. Supp. at 1233).  "Once a set of facts has been litigated, *res judicata* generally prevents the application of a different legal theory to that same set of facts,

assuming that the 'second theory of liability existed when the first action was litigated.'" *Id.* (quoting *Gertz v. Anne Arundel County*, 661 A.2d 1157, 1162 (Md. 1995)).

To assess whether the claims in one case are the same as those asserted in the other case, Maryland courts consider whether the facts in both cases are "related in time, space, origin, or motivation," as well as other factors including "convenience to the trial courts, the parties' expectations, and business usage." *Patel v. HealthPlus, Inc.*, 684 A.2d 904, 917 (Md. 1996).[9]  The Bureau's claims are *directly related* in time, space, and origin with those asserted in the Class Action.  Indeed, they arise out of the same transactions and occurrences – the solicitation of, advice related to, and sale of the Maryland consumers' structured settlement rights to Access Funding. Further, the Bureau and the class members share the same incentive – restitution for the class members.  Accordingly, the Bureau's claims are the same as those of the class members under the "transactional test."

### d.  The Settlement was a Final Judgment in the Class Action.

It is axiomatic that *res judicata* applies where there is a final judgment in a prior case. *Norville*, 887 A.2d at 1037.  A final judgment has three attributes: "(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2-602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2-601."  *Rohrbeck v. Rohrbeck*, 566 A.2d 767, 773 (1989); *Smith v. Lead*, 871 A.2d 545, 550 (2005).

---

[9] The latter factor – the parties' "business usage" – is applicable in cases involving a contract or other commercial claim, but not claims like the one in this case.  *See e.g.*, *Shum v. Gaudreau*, 317 Md. 49, 58-60, 562 A.2d 707, 712-13 (1989) (finding *res judicata* should not apply where the parties would not have treated "as a unit both rent and other contract claims arising out of lease.")

While most civil cases end by a court's order on a dispositive motion or final judgment following a trial on the merits, class actions are unique because a class settlement can operate as a final judgment on the merits.  As Professor Rubenstein states "[t]he process by which a class action settlement is approved has the effect of turning the private settlement into a judicial ruling, a judgment."  6 Newberg on Class Actions § 18:19 (5th ed.) (citing Fed. R. Civ. P. 23(e)).[10]

The settlement in the Class Action has all three attributes of a final judgment under Maryland law.  The court entered an unqualified order intended as the final disposition of the class members' claims and did so in accordance with Maryland Rule 2-601.  Exh. 1(G).  It meant to dispose of all the claims in the case – shown by the Final Order dismissing the plaintiffs' claims with prejudice.  *See* Exh. 1(H).[11]

### e.  If the Court Refuses to Enforce the Release and Assignments, the Class Members and Ramsel Would Receive a Double Recovery.

The cases described above put significant weight upon the concern over double-recovery. Courts are wary of giving plaintiffs a second chance at recovery through a subsequent government action.  That is why courts across the country consistently apply the public-private distinction regarding remedies.  Courts protect government's right to enforce its statutory mandates, seek equitable relief, and generally protect the rights of the public *writ large* through mechanisms such as injunctions. *See Capital One*, 980 F. Supp. 2d at 1353 (rejecting the state's argument that *res judicata* would interfere with its ability to seek civil enforcement actions and/or injunctions); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 923 (9th Cir. 2003) (applying *res judicata* where "the

---

[10] Because Maryland's rule for approving class action settlements (Rule 2-231) does not provide specific standards for approving the settlement, Maryland's courts will look to cases interpreting Federal Rule 23 for guidance. *Shenker v. Polage*, 226 Md. App. 670, 682, 130 A.3d 1171, 1178 (2016).

[11] The Division appealed the court's approval of the settlement.  However, a pending appeal does not preclude *res judicata*. *Bryan v. State Farm Mut. Auto. Ins. Co.*, 45 A.3d 936, 604-05 (Md. 2012) (holding that a pending appeal does not preclude the application of *res judicata*); *Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) (finding that to preclude the application of *res judicata* pending appeal would be "laughable.")

Secretary seeks only to recoup [an individual's] economic loss, not to vindicate broader governmental interests by, for example, seeking an injunction.").

Those same courts, however, apply the doctrine of *res judicata* to bar subsequent government actions seeking to vindicate private rights.  The core reason is that courts must prevent double recovery by plaintiffs in separate actions based on the same alleged conduct.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("As we have noted, it 'goes without saying that the courts can and should preclude double recovery by an individual.'") (citation omitted); *U.S. v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003) ("The one wrong, one recovery rule precludes a party from double recovery for a single injury."); *Capital One*, 980 F. Supp. 2d at 1356 ("the class members who received compensation for their damages arising out of Defendants' allegedly unfair trade practices . . . should not be allowed to receive double recovery.") (internal quotation marks omitted); *In re Baldwin-United Corp.*, 770 F.2d at 341-42 (precluding state attorneys general from bringing actions for restitution on behalf of previously settled class members "because doing so would allow Class members to double recover.").

The Bureau's action seeks double recovery for the Class Members and Ramsel.  The Class Action complaint sought compensatory and punitive damages on behalf of the class members. Exh. 1(A) at 41-42.  The class members, and Ramsel, entered into settlements in which they exchanged compensation for the release of their claims and assignment of their rights to collect any recovery in the Division's or the Bureau's cases.  *See* Exhs. 1(B) and 1(H).  The Bureau's action seeks essentially the same type of damages in the form of monetary relief on behalf of the same consumers.  (ECF No. 44 at 18).  While the Bureau's civil penalties and injunction remedies purport to vindicate public rights, monetary relief for consumers who have already litigated, released, assigned, and been compensated for those same claims, does not.

Accordingly, the Release and Assignments affirmatively bar the Bureau from asserting claims for monetary relief.  The only remaining question is whether the Bureau's claims fall within the ambit of the Release and Assignments.

> **f.  The Bureau's Claims For Monetary Relief Are Covered By The Release and Assignments.**

The Fourth Circuit follows the so-called "identical factual predicate" test to determine the preclusive effect of a release.  *In re MI Windows and Doors, Inc. Products Liability Litig.*, 860 F.3d 218, 225 (4th Cir. 2017); *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015).  Professor Rubenstein likens the "identical factual predicate" test to the "common nucleus of operative fact" analysis for *res judicata*.  Newberg, *supra* at § 18:19 ("courts have generally fallen back on the broad conclusion that the test requires only 'a common nucleus of operative fact,' and hence have equated the test with the normal transactional test underlying the scope of claim preclusion itself.")  Thus, the Release and Assignments will bar any of the Bureau's claims which are (a) covered by their language, and (b) share an identical factual predicate – alleged fraud in obtaining the enrolled judgments transferring the class members' structured settlement payments to Access Funding.  The Class Action Release and Assignment – which shares the nearly identical language as the Ramsel Release and Assignment – reads as follows:

> (i) A full release from further liability, which means the Defendants cannot be sued again for the transfer of structured settlement payments; (ii) an irrevocable assignment and transfer to the Defendants of any and all benefits or recoveries, including any recovery based on the equitable remedies of restitution, disgorgement of profits or damages obtained by the Bureau in the Bureau's lawsuit or the Division in the Division's Lawsuit for the benefit of each Settlement Class Member.

Exh. 1(B) at 6; *see also* Exh. 1(H) at 3 (stating the same release and irrevocable assignment).

The Release and Assignments cover any claims (i) brought by, or on behalf of, the class members or Ramsel, (ii) for restitution, disgorgement, or damages of any kind, and which (iii) arise from the transfer of the class members' or Ramsel's structured settlement payments to the

Defendants.   The Bureau's claims for monetary relief fall squarely within this language. Moreover, the Bureau's claims arise from the "identical factual predicate" as those in the Class Action – alleged fraud by the Defendants leading to the transfer of the class members' structured settlement rights.  Thus, the Release and Assignments bar the Bureau's claims for monetary relief.

## III.    The Bureau's Claims for Monetary Relief are Moot.

The Bureau's claim for monetary relief on behalf of the Class Members and Ramsel is also moot.  By the very terms of the Release and Assignments, both the class members and Ramsel assigned to the defendants in the *Linton* Class Action "all benefits or recoveries, including any recovery based on the equitable remedies of restitution, disgorgement of profits or damages obtained by the Bureau in the Bureau's lawsuit. . . ."  Exh. 1(B) at 6; Exh. 1(H) at 3.  Thus, the Court cannot provide effective relief to the consumers on whose behalf the Bureau seeks to recover damages.

### a.  The Mootness Doctrine.[12]

The mootness doctrine limits federal courts' jurisdiction by excluding cases which do not present an actual case or controversy.  *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted).  A case is moot if it lacks one or more of the three elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability.  *Townes v. Jarvis*, 577 F.3d 543, 546-47 (4th Cir. 2009) (citation omitted).  The Bureau's claim for damages on behalf of the Class Members and Ramsel lacks the essential element of redressability, which requires that it be "likely, as opposed

---

[12] Because this case involves federal question – and not diversity – jurisdiction, the Court must apply the federal mootness doctrine, which differs from the same doctrine as applied in Maryland.  *Thana v. Bd. of License Comm'rs for Charles Cty.*, 130 A.3d 1103, 1111, cert. denied, 136 A.3d 818 (Md. 2016) ("Unlike the Article III constitutional constraints on the federal courts, ... [Maryland's] mootness doctrine is based entirely on prudential considerations that do not constitutionally bar us from reaching the merits of a moot action.") (citations and internal quotation marks omitted).

to merely speculative, that the injury will be redressed by a favorable decision." *Townes*, 577 F.3d at 547 (citation and internal quotation marks omitted).

A change in circumstances during a case may affect redressability and implicate the mootness doctrine. *Porter*, 852 F.3d at 363 ("When a case or controversy ceases to exist – either due to a change in the facts or the law – 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'") (quoting *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015)).  One such change occurs where the claimant receives the relief he or she sought to obtain through the claim, *Simmons v. United Mortg. And Long Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)), or when "there is no effective relief available in federal court that [the plaintiff] has not already received." *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) (quoting *Friedman's, Inc.*, 290 F.3d at 197).  As the Fourth Circuit said: "when a state court orders the same relief sought by the plaintiff in a parallel federal action, there is no longer a live controversy and the parallel federal claim is moot." *Friedman's, Inc.*, 290 F.3d at 197 (citing cases).

### b.  The Assignments Prevent the Court from Entering Effective Relief.

Because the class members and Ramsel accepted the Access Funding Defendants settlement offers, they are bound by the terms of the Release and Assignments.  Both settlement agreements state that the releasing parties "irrevocably assign[ ] and transfer[ ] to the Access Funding Parties any and all benefits or recoveries obtained for or on [their] behalf, including any recovery based on equitable remedies of restitution, disgorgement of profits or damages by the Bureau or in the Bureau's Lawsuit . . . ."  Exh. 1(B) at 6; Exh. 1(H) at 3.

Even if the Bureau succeeds on its claim for monetary relief, this Court cannot provide effective relief to the class members or to Ramsel.  Instead, any and all recovery will flow back to the Access Funding Defendants.  Because the Court lacks the ability to provide effective relief to the consumers on whose behalf the Bureau brings this action, the Bureau's claims for damages and other relief on behalf of the Class Members and Ramsel lack redressability under Article III. Accordingly, the Bureau's claims for monetary relief are moot and should be dismissed.

## **CONCLUSION**

For the reasons set forth above, this Court should grant this Motion for Partial Summary Judgment and dismiss the Bureau's claims for monetary relief because they are barred by *res judicata*, or in the alternative, because they are moot.

Respectfully submitted,

DEFENDANTS


*/s/ Andrew J. Chiang*
Andrew J. Chiang
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, VA 22303
Telephone: (703) 775-8602
Email: achiang@ohaganmeyer.com

      and

Charles M. Sims, *specially admitted*
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
Telephone: (804) 403-7111
Email: csims@ohaganmeyer.com

*Counsel for Defendants Access Funding, LLC, Assoc, LLC, En Cor, LLC, Access Holding, LLC, Reliance Funding, LLC, Lee Jundanian, and Raffi Boghosian*

*/s/ Gregg. E. Viola*
Gregg E. Viola, Esq.
Eric M. Rigatuso, Esq.
Eccleston & Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378

*Counsel for Defendant Charles E. Smith*

*/s/ Michael T. Hamilton*
Michael T. Hamilton, Esq.
Marks, O'Neill, O'Brien, Doherty, & Kelly, P.C.
600 Baltimore Avenue, Suite 305
Towson, MD 21204

*Counsel for Defendant Michael Borkowski*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April 2018, a copy of the foregoing *Memorandum in Support of Defendants' Joint Motion for Partial Summary Judgment* was served upon on counsel of record via the Court's electronic filing system:

Christina Coll, Esq.
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Consumer Financial
Protection Bureau*

*/s/ Andrew J. Chiang*
Andrew J. Chiang