**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

ACCESS FUNDING, LLC, *et al.*,

Defendants.

Case No. 1-16-cv-03759-ELH

**OPPOSITION TO DEFENDANTS'**
**JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

In this motion, Defendants seek a partial summary judgment on the Bureau's "claims for monetary relief."[1] The basis for Defendants' motion is a non-final settlement order in a class-action lawsuit, *Crystal Linton v. Access Funding, LLC*, in which the State of Maryland has intervened and filed an appeal. Defendants argue that, as a result of the *Linton* order, the Bureau's demand for consumer relief in this action to enforce a federal consumer-protection law "is barred by the doctrine of *res judicata* and the bar against obtaining a double recovery."[2]

Notably, Defendants' motion does not claim that the Bureau's claims are barred by *res judicata* for the purpose of holding Defendants liable for their unlawful acts. Nor does the motion claim that the Bureau is barred from seeking disgorgement, injunctive relief, and civil money penalties, or redress for those consumers not covered by the

[1] Defendants' Memorandum in Support of their Joint Motion for Partial Summary Judgment, ECF No. 59 at 1.
[2] *Id.* at 2.

*Linton* case. Rather, the motion focuses entirely on whether the Court may impose redress for consumers who were part of the *Linton* class after it holds Defendants liable. Because the outcome of the *Linton* case remains uncertain, the Court should deny the motion as premature and allow Defendants to refile it later, if necessary. But even if it were to consider the motion, the Court should deny it, as the Bureau's claims for consumer relief are not barred by *res judicata*, the Bureau does not seek a double recovery, and the Bureau's claims for monetary relief are not moot.

## BACKGROUND

### I. The Bureau's Law-Enforcement Action

In November 2016, the Bureau sued Access Funding, its sole managing member, its successor in interest, three of its officers, and an attorney, Charles Smith, who provided an essential service to Access Funding in its business of purchasing structured settlements from consumers, many of whom were lead-paint-poisoning victims. Smith purportedly provided "independent professional advice" (IPA) to Access Funding's customers before their transactions concluded.

Four of the Bureau's five claims relate to this advice—which constitutes "financial advisory services" regulated by the Consumer Financial Protection Act of 2010 (CFPA).[3] These claims allege that Smith violated the CFPA by engaging in unfair, deceptive, and abusive acts or practices in providing his services and that the other defendants violated the CFPA by substantially assisting Smith's violations. Specifically, Smith held himself out as someone who would provide IPA, but he did not tell consumers about his relationship with Access Funding, including his personal and professional relationships

[3] 12 U.S.C. § 5481(15)(viii).

with Defendants and that he was compensated directly by Access Funding for his services. Smith provided virtually no advice to consumers, and he did not take into consideration the consumers' personal circumstances or what would be in their best interests. If consumers had known that Smith was not truly independent, they likely would have known that his advice was insufficient to move forward with their transactions.

The Bureau's fifth claim alleges that Access Funding and its executives violated the CFPA's prohibition on abusive acts or practices by taking unreasonable advantage of consumers' lack of understanding of the material risks, costs, or conditions of advance loans that Access Funding provided consumers. Access Funding required these loans to be repaid regardless of whether the consumers entered into further transactions with Access Funding. In many instances, consumers believed they were obligated to complete the transactions with Access Funding once they received the advance, and indeed completed the transactions, even if that was before they fully understood the terms and implications of the transactions.

The Bureau estimates that, at a minimum, consumers suffered nearly $17 million in harm from Defendants' conduct—the difference between the present value of the structured-settlement payments consumers transferred to Access Funding and the amount of money consumers received from Access Funding in return.

In earlier motions to dismiss, Defendants attacked the Bureau's Complaint on several fronts. They argued that the Court should abstain from hearing this case under the *Burford* abstention doctrine;[4] that issue preclusion barred the Bureau's claims;[5] that

[4] *See* Memorandum Order, ECF No. 27 at 8-11.

the Court lacked jurisdiction under the collateral-attack doctrine;[6] that the Bureau lacked enforcement authority over Smith because he is not a "covered person" under the CFPA;[7] and that the Bureau did not provide "specific enough allegations."[8] Judge Motz rejected all of those arguments, but dismissed without prejudice Counts I–IV because the Court found that the Bureau had not pleaded sufficient facts to overcome the CFPA's practice-of-law exclusion.[9]

The Bureau then moved for leave to amend the Complaint.[10] Over Defendants' objections,[11] the Court granted the Bureau's motion and accepted the Amended Complaint.[12] Defendants Smith and Michael Borkowski then filed new motions to have the claims against them dismissed,[13] and those motions have been fully briefed. Discovery in this matter opened in February 2018 and runs through September 2018. Defendants have not yet agreed to deposition dates and their responses to the Bureau's discovery requests are not yet due.

## II. Maryland's Law-Enforcement Action

In May 2016, the State of Maryland sued Defendants for state-law violations based Smith's failure to provide IPA services to Access Funding's customers.[14] Defendants have filed seven dispositive motions in the Maryland action, five of which

---

[5] *See id.* at 11-14.
[6] *See id.* at 14-17.
[7] *See id.* at 18-22.
[8] *See id.* at 26-28.
[9] *Id.* at 22-26 (citing 12 U.S.C. § 5517(e)).
[10] ECF No. 37.
[11] ECF Nos. 39-40.
[12] ECF Nos. 42-44.
[13] ECF Nos. 46, 48.
[14] Consumer Protection Division's Opposition to Defendants' Motions for Summary Judgment Based on *Res Judicata*, May 11, 2018, attached as Exhibit A (Ex. A) at 4.

have been denied and two of which remain pending.[15] Defendants have now also attempted to use the *Linton* order to move for summary judgment in Maryland's case.[16] Maryland responded to that motion on May 11, 2018, arguing that the *Linton* settlement does not preclude Maryland from seeking restitution and other equitable remedies.[17]

## III. The Private Class-Action Settlement

In July 2016, two individuals filed a putative class action—*Linton v. Access Funding*—against the Access Funding companies and Charles Smith in Maryland state court. They alleged violations of state law in connection with Access Funding's purchase of structured-settlement payments from them. The *Linton* plaintiffs also sued another attorney, Anuj Sud, and his law firm, Sud Law, LLC. Notably, the *Linton* plaintiffs did not sue the three Access Funding executives—Lee Jundanian, Raffi Boghosian, or Borkowski—whom the Bureau has sued in this case.

The *Linton* complaint alleges negligence, misrepresentation, and fraud claims stemming from Access Funding's "various illegal and deceptive ways in order to have [consumers] cash in their structured settlement annuity contracts for a single, inadequate, lump sum payment."[18] Because the defendants moved to compel arbitration, discovery was initially stayed. Without conducting any discovery and with little prospect of actually litigating their case in court, the named plaintiffs in *Linton* reached a proposed class settlement with the defendants in February 2017, which occurred before the court had certified the class. Maryland moved to intervene in the *Linton* action in April 2017, arguing that (1) the proposed settlement could not be

---

[15] *Id.* at 8.
[16] *See id.*
[17] *Id.*
[18] *Linton v. Access Funding*, Complaint, ECF No. 59-1 at 19.

sustained because it contained extensive factual findings for which no evidence was ever submitted, (2) the settlement amount was inadequate because the $770,000 in compensation for class members covered only 4% of the financial harm that those individuals suffered, (3) the settlement was unfair because it diverted $330,000 in potential compensation for consumers to plaintiffs' counsel, and (4) the settlement contained unlawful terms, including the "release" of the defendants from claims brought by Maryland and the Bureau.[19] In February 2018, over Maryland's objection, the *Linton* court certified the class and approved the proposed settlement. Maryland appealed that order, and that appeal remains pending in the Maryland Court of Special Appeals.[20] Significantly for this motion, the order is not final until all appeal rights are exhausted or have expired.[21]

If it survives appeal, the *Linton* order would provide the class less than $770,000, which consumers would receive pro rata. Some consumers would receive as little as $1,000.[22] In approving this minimal recovery for class members, the *Linton* court appeared to give great weight to the parties' assertions that the *Linton* defendants lacked resources to pay a potential judgment and determined that the settlement should be limited to the amounts available under the defendants' insurance policies.[23] The

---

[19] Consumer Protection Division's Motion to Intervene, April 13, 2017, attached as Exhibit B.
[20] Ex. A at 3.
[21] *See Linton* Stipulation of Settlement, ECF No. 59-1 at 69.
[22] *See* Final Approval Order, ECF No. 59-1 at 160.
[23] *See, e.g.*, *id.* at 140-41 ("Finally, there is a substantial risk that Plaintiffs will not be able to recover any damages should they prevail against Defendants at trial because of the lack of resources available to pay a judgment. Based on the . . . realization that the insurance policies will most likely be depleted long before all the lawsuits are resolved," the settlement is "fair, reasonable, and adequate. . . ."); *id.* at 160 (citing "the uncertainty

*Linton* court did not consider the assets of the Access Funding executives in considering the fairness of the settlement amount because they were not parties to that action.[24] The *Linton* order provided $330,000 to the plaintiffs' attorneys in "fees and expenses."[25]

As stated above, the *Linton* order provided consumers pennies on the dollar for the harm they suffered, required the defendants to pay nothing beyond what their insurance covered, and granted to the plaintiffs' attorneys about one-third of that amount. But then the *Linton* order went one step further: it attempted to prevent the Bureau and Maryland from obtaining any additional relief for consumers in their separate law-enforcement actions. The *Linton* order not only requires the class members to release their claims against the defendants, but it also purports to release claims for relief that the Bureau or Maryland could obtain and purports to enjoin consumers from receiving or accepting from the Bureau or Maryland any benefit related to any of their claims.[26] The order further purports to create an assignment, whereby class members transfer to the *Linton* defendants the rights to any money they may receive in the future from the Bureau or Maryland.[27]

---

of Defendants' ability to pay a substantial damages award" as a factor that leans "heavily towards a finding that the settlement is fair and adequate").

[24] *See* Final Approval Order, ECF No. 59-1 at 155-56 (observing that there was "no basis for determining whether [the Access Funding executives] have assets" because they were not parties to the lawsuit).

[25] *Id.* at 160.

[26] *Id.* at 144-45.

[27] *Linton* Stipulation of Settlement, ECF No. 59-1 at 73 (providing that "each Settlement Class Member who has not opted out of the proposed settlement shall irrevocably assign and transfer to the Defendants any and all benefits or recoveries, including any recovery based on the equitable remedies of restitution, disgorgement of profits or damages obtains by [the Bureau or the Division]"); *see also* Final Approval Order, ECF No. 59-1 at 145.

## ARGUMENT

### I. The Court should deny the motion as premature.

Defendants argue that the *Linton* order precludes the Bureau's demand for consumer redress with respect to those consumers who were *Linton* class members. It would be premature for the Court to decide this question. When presented with similar requests to foreclose certain remedies before liability has even been established, federal courts routinely defer.[28] Courts also regularly defer decisions on questions of preclusion.[29] This Court should do the same here.

Deferral is especially warranted here for at least three reasons. First, the *Linton* order is still on appeal and subject to reversal. Were the Court to bar the Bureau's request for consumer redress based on the *Linton* order, and were Maryland to succeed in its appeal of the *Linton* order, this Court would then have to revisit its decision to bar the Bureau's claims for consumer relief. If an appellate decision invalidating the *Linton*

[28] *See, e.g.*, *United States v. Philip Morris USA, Inc.*, 319 F. Supp. 2d 9, 12 (D.D.C. 2004) (holding that the defendants had put "the 'cart before the horse'" by arguing, "[w]ithout the requisite predicate finding of . . . liability," that the court should grant summary judgment because the government would not be entitled to relief even if it were to ultimately prevail); *see also City of Bangor v. Citizens Commc'ns Co.*, Civ. 02-183-B-S., 2004 WL 1572612, at *10 (D. Me. July 6, 2004) (Kravchuck, M.J.) ("At this state of the litigation, it strikes me as premature to be trying to foreclose remedies when liability has not even been established."); *cf. Lovelace v. Lee*, 472 F.3d 174, 192 n.6 (4th Cir. 2006) ("It is premature and unnecessary to evaluate any remedy at this juncture because liability has not yet been considered, let alone decided . . . .").

[29] *See Stevens v. Stover*, 702 F. Supp. 302, 303 (D.D.C. 1988) ("Although the Court finds defendants' issue preclusion arguments persuasive, the Court will defer ruling on defendants' motion to dismiss or, in the alternative, for summary judgment until after the completion of plaintiff's appeal ... in order to avoid the risk of the Court granting or denying relief on the basis of findings that may be subsequently overturned."); Restatement (Second) of Judgments § 13 comment f (1982) (noting that the pendency "of an appeal from a judgment ... is relevant in deciding whether the question of preclusion should be presently decided in the second action" and may make it "appropriate to postpone decision of that question").

order were to come too late for this Court to revisit its ruling, some of the consumers harmed by Defendants' unlawful conduct could potentially receive no redress at all—an unjust result.

Second, because the *Linton* order is still on appeal and therefore not final, it does not presently bind the *Linton* defendants to pay any consumer redress; indeed, Defendants may terminate it at any time. Specifically, the *Linton* Stipulation of Settlement provides that "[e]ach of the Defendants shall have the right in each of their sole discretion to terminate the settlement if either the Bureau or [Maryland] does not provide, in writing, its agreement to dismiss its respective lawsuit with prejudice upon a Final Approval Order or [Maryland] or the Bureau opposes the Court's Final Approval of the Settlement."[30] Because the Bureau and Maryland have not agreed to dismiss their respective lawsuits and Maryland has opposed the settlement, the *Linton* defendants, including several of the Defendants in this case, are free to terminate the order. The Court should not spend resources to determine the preclusive effects of a potential award of relief while that award is still so uncertain.

Finally, denying the motion would not adversely affect Defendants because they would gain little even if the Court were to grant the motion. The Bureau would still be entitled to build its case through discovery, developing facts to support Defendants' liability and to provide a basis for the Court to order disgorgement, injunctive relief, and civil money penalties, as well as redress for those consumers *not* covered by the *Linton* case. There will be ample time later, once discovery is complete, for the parties to debate the proper remedies for Defendants' violations, and there will be a better record on

[30] ECF No. 59-1 at 79.

which to do so. Moreover, the Court might then have greater clarity as to whether the *Linton* order has become final and binding on the *Linton* defendants.

Simply put, Defendants' motion for partial summary judgment on redress is both legally and factually premature. The Court should deny it for those reasons alone.

## II. Res judicata does not bar the Bureau's demand for consumer redress.

If the Court decides to consider the merits of Defendants' motion, the Court should deny it, as *res judicata* (i.e., claim preclusion) does not bar any of the Bureau's claims. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."[31] In Maryland, claims are barred by *res judicata* when "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation."[32] Defendants' *res judicata* request fails each of these requirements.

### A. The Bureau is not in privity with the *Linton* plaintiffs.

At the outset, Defendants' attempt to invoke claim preclusion fails because the Bureau was not a party to the *Linton* case, nor is it in privity with the *Linton* plaintiffs. It is a "well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates

---

[31] *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984).
[32] *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

both public and private interests."[33] The CFPA, which the Bureau enforces here, undeniably serves a "public-interest purpose[.]"[34] This is evident from the statute itself: "The Bureau shall seek to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive."[35]

Recognizing that the Bureau's action enforces a federal law implicating the public interest, Defendants apparently concede that the Bureau is not in privity with the *Linton* plaintiffs, and therefore is not bound by the settlement in that case, for purposes of its claims for disgorgement, injunctive relief, or civil penalties. Rather, Defendants contend that the Bureau is precluded only from seeking redress for the consumers injured by Defendants' practices because (in their view) this seeks merely to "enforce private rights."[36]

This Court should reject that contention. When the Bureau seeks consumer redress, it is not merely representing the private interests of those consumers who would receive the redress; it is also vindicating the *public* interest in effective law enforcement. Obtaining "full and ample restitution . . . serve[s] distinct deterrence

[33] *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1425 (11th Cir. 1998); *accord Wilmington Shipping Co. v. New Eng. Life Ins.*, 496 F.3d 326, 340 (4th Cir. 2007) ("[I]n light of the overarching national interest in ensuring the financial stability of pension plans and the inability of private plaintiffs to adequately represent this interest, the Secretary of Labor is not bound by the results reached by private litigants in ERISA suits.").
[34] *CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *16 (S.D.N.Y. Dec. 2, 2016).
[35] 12 U.S.C. § 5511.
[36] ECF No. 59 at 9.

functions that are vital to the national public interest."[37] Even though restitution or other redress would benefit particular individuals, the Bureau's action to obtain that redress also vindicates the important public interest in addressing past violations of the law and deterring future violations. As the Supreme Court has recognized in another context, when a government agency acts, "albeit at the behest of and for the benefit of specific individuals"—for example, by obtaining damages or back pay—"it acts also to vindicate the public interest in preventing" unlawful conduct.[38] Indeed, a government agency may reasonably conclude, notwithstanding a private settlement, that "only a larger settlement (or award) will deter violations" of the law "by the present defendants or similarly situated" parties.[39]

Consistent with this understanding, numerous courts have held that the government is not in privity with private plaintiffs and is not bound by judgments in those plaintiffs' cases, even when it seeks relief for those individuals' benefit.[40] This

---

[37] *CFTC v. Comm. Hedge Servs., Inc.*, 422 F. Supp. 2d 1057, 1061 (D. Neb. 2006) (quotations omitted).
[38] *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980).
[39] *EEOC v. Dayton Tire & Rubber Co.*, 573 F. Supp. 782, 787 (S.D. Ohio. 1983).
[40] *See, e.g.*, *Herman*, 140 F.3d at 1422-26, 1428 (concluding that class settlement did not bar Secretary of Labor from pursuing ERISA claims for relief including "recission[] and restitution of Plan losses"); *Comm. Hedge Servs.*, 422 F. Supp. 2d at 1061 ("[W]hen private parties settle their disputes without the approval or consent of the Commission, those settlements cannot preclude the Commission from later seeking additional or more full restitution or any other remedy."); *FTC v. Hornbeam Special Situations, LLC*, --- F. Supp. 3d ----, 2018 WL 1870094, at *8 (N.D. Ga. Apr. 16, 2018); *EEOC v. DHL Exp. (USA), Inc.*, No. 10-6139, 2011 WL 1326941, at *4-5 (N.D. Ill. Apr. 7, 2011); *cf. also Senich v. American-Republican, Inc.*, 215 F.R.D. 40, 44 (D. Conn. 2003) (concluding that, in light of recent Supreme Court case, Second Circuit precedent "no longer supports prohibiting the EEOC from seeking victim-specific relief on behalf of those who sign a waiver or release"); *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 536 (D. Md. 2007) (permitting "EEOC to seek monetary relief for its retaliation claim" even though affected individual had previously released claim in private litigation); *EEOC v. Dayton Tire & Rubber Co.*, 573 F. Supp. 782, 787 (S.D. Ohio 1983) (holding that EEOC

Court should follow this line of cases and conclude that the Bureau's claims for redress, like its claim for disgorgement, injunctive relief, and civil penalties, serve the public interest in effective law enforcement. Consequently, this Court should hold that the Bureau cannot be bound by private litigation to which it was not a party.

Although the Bureau is aware of no precedent addressing the issue of government preclusion under the Maryland law applicable here (and Defendants have cited none), the Bureau's position is consistent with general Maryland-law preclusion principles. Under Maryland law, nonparties are in privity with the parties to a prior lawsuit, and are therefore bound by any judgment in that suit, where they "have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection."[41] The Bureau did not participate in the *Linton* suit, let alone "take open and substantial control of its prosecution."

Nor should the Bureau have had to intervene in the *Linton* lawsuit to protect its law-enforcement interests. Such a requirement "would impose an onerous and extensive burden upon the [government] to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention."[42] Courts have accordingly recognized that it would be "unreasonable and unwise" to require the government to intervene to avoid preclusion.[43] Requiring intervention to avoid preclusion, moreover, would be "inconsistent with the language of

---

suit seeking victim-specific relief "exceed[ing] that which [victim] received in settlement" was "a proper exercise of vindicating the public interest").

[41] *Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 745 (Md. 2017) (quotations omitted).

[42] *United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979).

[43] *Herman*, 140 F.3d at 1426.

the Maryland Rules of intervention," which "does not place an affirmative duty on [parties] to intervene."[44]

The Bureau also was not "so far represented by" the *Linton* plaintiffs that its "interests receive[d] actual and efficient protection." Again, the Bureau's interests in obtaining consumer redress transcend the interest in obtaining relief for these particular individuals—and the *Linton* plaintiffs "did not adequately represent, nor were they charged with representing, the broader national interests in law enforcement and fair dealing in the marketplace, which have been entrusted by Congress to" agencies such as the Bureau.[45] Private plaintiffs understandably have "their own, private interests when they release[] [defendants] from their claims, and these potentially r[u]n counter to" a law-enforcement agency's "broader interest in deterrence, full recompense, and enforcement of the law."[46] For these reasons, the Bureau's interests did not "receive actual and efficient protection" in the *Linton* litigation—and there is accordingly no basis to hold that the Bureau was in privity with the *Linton* plaintiffs.[47]

In contending otherwise, Defendants cite cases holding that private litigation can preclude certain other government agencies from pursuing redress for injured individuals.[48] None of those cases involved the Bureau or the CFPA, nor did any involve Maryland law. Thus, none of those cases is controlling here. Those cases allow preclusion against other agencies based on a conclusion that, when those agencies sought redress for injured individuals, they were "*not* trying to 'vindicate broader

---

[44] *Warner v. German*, 642 A.2d 239, 245 (Md. App. 1994).
[45] *Hornbeam Special Situations*, --- F. Supp. 3d ----, 2018 WL 1870094, at *8.
[46] *Id.*
[47] *Bank of N.Y. Mellon*, 175 A.3d at 745.
[48] *See* ECF No. 59 at 8-9.

governmental interests by, for example, seeking an injunction,' but [were] instead trying to recoup plaintiff's personal economic loss."[49] Whatever the merits of those cases were on the particular facts before them (which this Court need not decide), those decisions should not be followed here—particularly in light of the Supreme Court's acknowledgement that the government "may be seeking to vindicate a public interest ... even when it pursues entirely victim-specific relief."[50] The Bureau's action for redress seeks to vindicate the public interest in preventing unfair, deceptive, and abusive practices that harm consumers and the consumer-financial marketplace. Because this was not the *Linton* plaintiffs' aim, there is no basis for the Court to hold that there is privity between those plaintiffs and the Bureau.

### B. The Bureau's claims are different from the *Linton* plaintiffs' claims.

To establish their *res judicata* defense, Defendants must also show that "the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation."[51] Under Maryland law, "if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously," which means that "[a]ll matters which were litigated or *could* have been litigated in the earlier

[49] *California v. IntelliGender, LLC*, 771 F.3d 1169, 1178 (9th Cir. 2014) (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 923 (9th Cir. 2003)); *see also, e.g.*, *New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1346, 1353 (D.N.M. 2013) (concluding that, with respect to "consumer relief claims," state attorney general was "representing an exclusively private interest" and not "advancing public interests").
[50] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002); *see also id.* at 297 (noting that it is an "open question whether a settlement ... would affect the validity of the EEOC's claim or the character of relief the EEOC may seek").
[51] *R & D 2001*, 938 A.2d at 848.

case are conclusive in the subsequent proceeding."[52] Defendants cannot make this showing.

The *Linton* plaintiffs could not have brought the CFPA claims that the Bureau asserts here because, as this Court recently held, "there is no private right to enforce" the CFPA.[53] Defendants correctly note that a new theory of liability, if based on the same underlying facts, does not necessarily constitute a different claim for *res judicata* purposes.[54] A plaintiff generally cannot bring new claims that "arise out of the same set of facts" because, "[b]y splitting theories applicable to the same case," plaintiffs would get a "second bite at the apple."[55] But "[n]ewly articulated claims based on the same transactional nucleus of facts" are precluded only "if the claims could have been brought in the earlier action."[56] The CFPA claims that the Bureau asserts here could not have been brought in the *Linton* action because those plaintiffs had no right of action to assert such claims. The *Linton* plaintiffs therefore did not "split[] theories applicable to [their case]" that they "could have" and should have brought in their litigation.[57] *Res judicata* therefore does not apply here for this independent reason.

Defendants cite a number of cases in which government claims for restitution were precluded by the earlier litigation of private claims that were intended to benefit the same persons. But in all but two of these cases, the government claims were brought

---

[52] *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005) (emphasis in original, citation and internal quotation marks omitted).
[53] *McCray v. Bank of Am., Corp.*, No. ELH-14-2446, 2017 WL 1315509, at *16 (D. Md. Apr. 10, 2017) (Hollander, J.); *see also Kalisz v. Am. Express Centurion Bank*, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D. Va. Apr. 5, 2016) ("The CFPA does not provide a private right of action.").
[54] ECF No. 59 at 16-17.
[55] *Norville*, 887 A.2d at 1039-40.
[56] *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).
[57] *Norville*, 887 A.2d at 1040.

under the very same statute that the private plaintiffs had or could have invoked.[58] These cases therefore all involve claims that the private plaintiffs "could have" brought, or in fact did bring, themselves. The remaining two cases do not explain why a claim was precluded even though it could not have been brought in the earlier litigation, and those cases accordingly offer no useful guidance here.[59] Because the CFPA claims in this case could not "have been raised and determined in the prior litigation," those claims would not be precluded even if Defendants could establish the other elements for preclusion (which they cannot).[60]

### C. The *Linton* order is not a final judgment.

Defendants' *res judicata* defense also fails because, by its own terms, the *Linton* order is not yet effective or final. The stipulation that the *Linton* defendants entered into defines the order's effective date as "the date on which the Judgment finally approving this Stipulation and Settlement becomes Final."[61] The stipulation defines "Final" as "the date which all appellate rights with respect to the Judgment have expired or have been

[58] *IntelliGender*, 771 F.3d 1169 (California unfair competition law); *In re American Investors Life Ins. Co. Annuity Mktg. and Sales Practice Litig.*, No. 05-md-172, 2013 WL 3463503 (E.D. Pa. Jul. 10, 2013) (Pennsylvania Unfair Trade Practices and Consumer Protection Law, which provides a private right of action); *New Mexico ex rel. King v. Capital One Bank (US) N.A.*, 980 F. Supp. 2d 1346, 1354-56 (D.N.M. 2013) (New Mexico Unfair Practices Act and federal Truth In Lending Act, both of which provide private rights of action); *Rex, Inc. v. Manufactured Housing Comm. of State of N.M. Manufactured Housing Div.*, 892 P.2d 947, 950 (N.M. 1995) (describing the plaintiff's arbitration as involving the same regulation, N.M. Manufactured Hous. Div. Reg 207, as that invoked by the state government agency in the subsequent proceeding); *EEOC v. U.S. Steel Corp.*, 921 F.2d 489 (3d Cir. 1990) (Age Discrimination in Employment Act).

[59] *FTC v. AMREP Corp.*, 705 F. Supp. 119, 123 n.8 (S.D.N.Y. 1988) (asserting, without explanation, that FTC Act action and class action "were predicated on the same claims" even though the class plaintiffs could not have brought FTC Act claim); *Brooks v. Stroh Brewery Co.*, 382 S.E. 2d 226, 237-40 (N.C. 1989) (not addressing issue).

[60] *See R & D 2001*, 938 A.2d at 848.

[61] *Linton* Stipulation of Settlement, ECF No. 59-1 at 68-69.

exhausted in a manner to affirm the Judgment, and when no further appeals are possible, including review by the United States Supreme Court."[62] Maryland is currently challenging the *Linton* order on appeal,[63] so the *Linton* order is neither effective nor "final."

In their motion, Defendants argue that Maryland's appeal does not preclude application of *res judicata*.[64] Defendants cite to *Warwick Corporation v. Maryland Department of Transportation* for the proposition that a court may apply *res judicata* while a case is on appeal.[65] In *Warwick*, the plaintiff filed a nearly identical complaint in federal court after a state court dismissed his claims and while he was appealing the state-court decision.[66] *Warwick* did not involve a settlement that, by its terms, had not become final. In addition, *Warwick* involved a disgruntled litigant seeking a do-over in another forum. What the *Warwick* court sought to prevent was a litigant filing an identical case in another trial court while an appeal of its original, already rejected, case was pending.[67] *Warwick* is easily distinguishable on that basis as well, as the Bureau's action was filed well before the Maryland court issued the *Linton* order, and the Bureau was not a party to the *Linton* case.

Moreover, the *Linton* defendants can still escape the order without consequence, which distinguishes the *Linton* order from a typical order on appeal. As noted above, the *Linton* stipulation provides that "[e]ach of the Defendants shall have the right in each of their sole discretion to terminate the settlement if [the Bureau] does not provide, in

---

[62] *Id.* at 69.
[63] Ex. A at 3.
[64] ECF No. 59 at 18, fn. 11.
[65] 573 F. Supp. 1011 (D. Md. 1983).
[66] *Id.* at 1012.
[67] *Id.* at 1014.

writing, its agreement to dismiss its respective lawsuit with prejudice upon a Final Approval Order."[68] Because the Bureau has not made any such agreement, each *Linton* defendant has an ongoing right to "terminate the settlement," further demonstrating that the *Linton* order is not final.

Finally, the release in the *Linton* settlement is also not yet effective. Defendants' assertions ignore the language in the *Linton* order that ties each release to the order's effective date.[69] The order is not presently effective, so the class members have not released their claims, assigned any potential benefits, or received any recovery for the harm Defendants and others caused them.

### D. The Individual Defendants who were not parties to the *Linton* case cannot assert claim preclusion.

Even if the Bureau's claims for consumer redress would otherwise be precluded (which they are not, for all the reasons explained above), three of the Defendants—Jundanian, Boghosian, and Borkowski (collectively, the Individual Defendants)—could not benefit from that preclusion. The Individual Defendants were not parties to the *Linton* case and cannot assert claim preclusion on the basis of the order in that case. If the *Linton* litigation had ended in an adverse judgment against the defendants there, the Individual Defendants—who were not named as defendants in *Linton*—would have faced no liability. Having faced no risk themselves, the Individual Defendants cannot now claim the benefits of the resolution of that case largely in favor of their company.

The Individual Defendants contend that they can invoke claim preclusion here because (1) they are "so identified in interest with" the *Linton* defendants that those

---

[68] *Linton* Stipulation of Settlement, ECF No. 59-1 at 79.
[69] *Id*. at 72-73.

defendants "represent[ed] the same legal right" and (2) they exercised control over the defense in *Linton*.[70] Both contentions fail.

First, Fourth Circuit case law establishes that, under federal law, a new defendant in a subsequent case does not "represent 'precisely the same legal right'" as a previous defendant where the new defendant did not face potential liability in the previous suit.[71] And this Court has held that the rule is the same under the Maryland law applicable here.[72] In particular, in *Andrews v. Daw*, the Fourth Circuit explained that a defendant sued in his personal capacity could not assert claim preclusion where a plaintiff had already brought a suit against him in his official capacity and lost.[73] This was in part because, in the official-capacity suit, "a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets."[74]

That is similar to the situation here. Because the *Linton* plaintiffs did not name the Individual Defendants, they could not have recovered damages from the Individual Defendants. Indeed, in concluding that the proposed settlement was fair, the *Linton* court specifically noted that, because the Individual Defendants were not parties to the class action, there was "no basis for determining whether [they] have assets" that could be used to satisfy a judgment.[75] Unable to consider the assets of the Individual Defendants, the court found there to be "a substantial risk that Plaintiffs will not be able

[70] ECF No. 59 at 13 (quoting *FWB Bank v. Richman*, 731 A.2d 916, 930 (Md. 1999)).
[71] *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000).
[72] *Haskins v. Hawk*, No. ELH–11–2000, 2013 WL 1314194, at *14 (D. Md. Mar. 29, 2013) (Hollander, J.).
[73] 201 F.3d at 525.
[74] *Id.*
[75] *See* Final Approval Order, ECF No. 59-1 at 155-56.

to recover any damages should they prevail against Defendants at trial because of the lack of resources available to pay a judgment"—and on that basis deemed the settlement fair.[76] The defendants whose assets were at stake in *Linton* did not "represent the same interest" as the Individual Defendant whose assets were not in jeopardy.

Second, the Individual Defendants cannot benefit from claim preclusion on the ground that they purportedly exercised control over the defense in *Linton*. In support of their argument, Defendants cite to a case holding that a judgment "is conclusive upon"—that is, binds—someone who took control of prior litigation.[77] In that case, claim preclusion barred a plaintiff from asserting certain claims where that plaintiff had controlled prior litigation to which he was not a party.[78] In other words, that plaintiff's control of earlier litigation meant that claim preclusion could be asserted *against him*. Defendants cite to no case permitting a defendant to *invoke* claim preclusion *against an adversary* on the ground that the defendant exercised control over earlier litigation to which it was not a party. And Defendants do not explain why a person's control over prior litigation should allow him to assert claim preclusion to avoid liability—particularly where, as here, he faced no potential liability in the earlier action.

## III. The Bureau does not seek "double recovery."

Defendants argue that the Court should grant their motion to prevent the Bureau from obtaining "double recovery" for consumers who stand to benefit from the *Linton* class action (should the *Linton* order survive appeal and no defendant opt out of it). To be clear, the Bureau does not seek to recover more for consumers than the extent of the

---

[76] *Id*. at 141.
[77] ECF No. 59 at 13 (citing *Douglas v. First Sec. Fed. Savings Bank, Inc.*, 643 A.2d 920 (Md. App. 1994)).
[78] *Douglas*, 643 A.2d at 182–87.

harm Defendants caused them. To the extent that some of the Defendants in this case would have already paid redress to some consumers as a result of the *Linton* class action, those Defendants would be entitled to a setoff equal to the amounts they already paid.[79] But the Court should not allow Defendants to escape millions of dollars in potential consumer redress in a case brought by a federal law-enforcement agency simply because they paid (or might pay) a fraction of that amount to settle a private lawsuit.

## IV. The Bureau's claims for monetary relief are not moot.

Defendants also cannot escape liability by claiming that the *Linton* settlement renders the Bureau's claims for consumer redress moot. Defendants contend that these claims are moot because the *Linton* class members have assigned to Defendants any benefits or recoveries obtained on their behalf, including any recovery obtained by the Bureau.[80] According to Defendants, this means that the Court cannot "provide effective relief."[81] Defendants are mistaken.

To begin, the *Linton* class members' potential recoveries have not yet been assigned to Defendants because, as explained above, the class settlement that includes the potential assignment is not final or effective. In any event, it is not at all clear that a class settlement can, consistent with due process, bind absent class members to assign rights and benefits they may receive in the future, as opposed to merely releasing absent class members' claims. And even if it could, that would not render the Bureau's claims

[79] *Cf. LA Weight Loss*, 509 F. Supp. 2d at 536 ("permit[ting] the EEOC to seek monetary relief for its retaliation claim," but "offset[ting] any such award by the monetary relief" the victim received under previous settlement agreement); *EEOC v. Continental Airlines Inc.*, No. , 2006 WL 3505485, at *2 (N.D. Ill. Dec. 4, 2006) (similar).
[80] ECF No. 59 at 22-23.
[81] *Id.* at 23.

moot. The Court could still grant effective relief by ordering Defendants to pay redress to the Bureau, and the Bureau could distribute that money to the injured consumers. That Defendants might ultimately seek to obtain that money by attempting to enforce their purported rights under the assignment does not render this case moot—and Defendants cite to no authority for their assertion that it does. Defendants point to cases holding that a claim becomes moot where a plaintiff has received all the relief he or she seeks.[82] Those cases have nothing to do with assignments. And, besides, the plaintiff here—the Bureau—has not obtained any remedies at all. Finally, even the class members who would ultimately receive any redress that the Bureau obtains have not received *full* relief, and "the prospect of partial relief is sufficient to defeat mootness."[83]

* * *

The Court should deny Defendants' Joint Motion for Partial Summary Judgment.

Respectfully submitted,

*/s/ Christina S. Coll*
CHRISTINA S. COLL (Fed. Bar No. 806530, CA Bar No. 250712)
MEGHAN SHERMAN CATER (Fed. Bar No. 806212, NY Bar No. 4473120)
JAMES MEADE (Fed. Bar No.803044, DC Bar No. 414732)
1700 G Street, NW
Washington, D.C. 20552
Telephone (Coll): 202-435-7843
Telephone (Sherman Cater): 202-435-9165
Telephone (Meade): 415-645-6616
Facsimile: 202-435-7722
e-mail: christina.coll@cfpb.gov
e-mail: meghan.sherman@cfpb.gov
e-mail: james.meade@cfpb.gov
Attorneys for Plaintiff
Bureau of Consumer Financial Protection

---

[82] ECF No. 59 at 22.
[83] *Cf. United States v. Under Seal*, 853 F.3d 706, 723 (4th Cir. 2017) (quotation marks omitted).

**CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, I served the Consumer Financial Protection Bureau's Opposition to Defendants' Joint Motion for Partial Summary Judgment on all parties of record using the Court's CM/ECF system.

*Christina S. Coll*
Christina S. Coll