**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:16cv03759-ELH |
| ACCESS FUNDING, LLC, et al., | * | |
| Defendants. | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

Access Funding, LLC ("Access Funding"), Access Holding, LLC ("Access Holding"), Reliance Funding, LLC ("Reliance Funding"), Lee Jundanian ("Jundanian"), Raffi Boghosian ("Boghosian"), Michael Borkowski ("Borkowski") (collectively, "Access Funding Defendants"), and Charles E. Smith ("Smith") (all collectively, "Defendants"), by counsel, and under Federal Rule 56, state as follows in reply to the Motion in Opposition filed by the Consumer Financial Protection Bureau (the "Bureau"):

## ARGUMENT

### I. The claims on behalf of the class members are mooted by the assignment.

The Bureau's claims for monetary relief are moot. First, the assignment is valid and the Bureau provides no basis for the Court to hold otherwise. Second, the Bureau misunderstands the relief at issue in this case. While the Bureau seeks monetary damages in this case, those damages

belong to the class members, not the Bureau. By virtue of the assignment, the Bureau lacks any interest – or any right for that matter – to seek further relief on the class members' behalf. [1]

First, the Bureau erroneously questions the assignment itself, commenting that it is "not clear" that a class settlement can assert a binding assignment of "absent class members . . . rights and benefits they may receive in the future, as opposed to merely releasing absent members' claims." Bureau's Br. at 22. However, an assignment is simply a contract between two parties. *Darnestown Valley-WHM Ltd. P'ship. v. McDonald's Corp.*, 102 Md. App. 577, 588, 650 A.2d 1365, 1370 (Md. Ct. Spec. App. 1994). The parties' intent is determined by "what a reasonable person in the position of the parties would have thought it meant." *Id*. (quoting *James v. Goldberg*, 256 Md. 520, 526-27, 261 A.2d 753, 757 (1970)). Furthermore, "if the terms of the assignment are clear and unambiguous, there is no room for construction and the court 'must presume that the parties meant what they expressed.'" *Id*. (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)).

Both the named and absent class members received the Notice explaining the Settlement Agreement, the Release, and the Assignment, and giving each the opportunity to opt-out or object. The Notice also explained that by signing the settlement the class members assigned their right to recovery in both the Division's and the Bureau's cases. All of the class members but Ramsel – who later settled with the same assignment as the other class members – declined to opt out of the settlement. The Bureau does not assert that the terms of the assignment are ambiguous, or that the class members lacked sufficient notice to assign their rights. The Bureau provides the Court no basis to find that the assignment is invalid – aside from the Bureau's *ipse dixit*.

---

[1] The "class members" refers to all members of the *Linton* class as well as the one opt-out, Gregory Ramsel. Mr. Ramsel later signed his own settlement and release following the same terms as those signed by the members of the *Linton* class.

Second, the Bureau argues that the Court can still grant effective relief by ordering Defendants to pay damages to the Bureau which it will then distribute to the class members. The Bureau seems to think that by serving as a middleman for these payments, it somehow changes the nature of the relief itself. The Bureau provides no authority for this position. Nor can it. Whether the Bureau calls the relief restitution, disgorgement, or money damages, if it flows to the class members it is monetary relief sought *on their behalf*. This relief "ultimately belongs to the claimant individuals, not the government." *In re American Investors Life Ins. Co. Annuity Marketing and Sale Practices Litig.*, No. 05-md-1712, MDL No. 1712, 2013 WL 3463503, at *8 (E.D. Pa. Jul. 10, 2013). Thus, the class members held the right to any relief obtained in the Bureau's case – not the Bureau. It was the class members' right to bargain away that right to recovery in exchange for consideration in a Settlement Agreement. They did so in the *Linton* Settlement Agreement, assigning any additional recovery to Defendants. Because the Bureau provides no basis to find this assignment invalid, and because the assignment covers the relief the Bureau now seeks on the class members' behalf, the Court cannot provide such relief in this case, and the Bureau's claims are moot.

## II. ***Res judicata* applies and bars the Bureau's claims for monetary relief on behalf of the class members.**

*Res judicata* applies to the Bureau's claims for monetary relief on behalf of the class members. The Bureau is in privity with the class members for purposes of its claims for monetary relief on their behalf. Ignoring the class members' release would allow them a double-recovery as well as violate the federal Full Faith and Credit statute. Moreover, the Bureau lacks a concrete interest in seeking private relief on behalf of the consumers in this case.

### A. **<u>The Bureau's claims for monetary relief seek to vindicate *private* rights and would permit a double-recovery.</u>**

The *res judicata* analysis, in this case, narrows to a single question: are the Bureau's claims for monetary relief seeking to vindicate *private* or *public* rights. There is an important "delicacy to determining whether government agencies are representing private individuals." *In re American*, 2013 WL 3463503 at *7. Importantly, actions to vindicate *private* rights "seek[ ] individualized benefits . . . for particular grievants," *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 496 (3d Cir. 1990), which "inure solely to the benefit" of individual citizens. *New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1346, 1353 (D.N.M. 2013). While private citizens generally can bargain away their *private* rights, the Bureau asserts that its claims for monetary relief on behalf of the class members serve a *public* purpose, which the class members could not bargain away. The Bureau is incorrect.

Defendants have identified consistent caselaw from several federal courts which hold that private litigants can release claims that seek monetary relief on their behalf. This is because such claims vindicate *private* rights, which *private* citizens are free to bargain away in exchange for consideration. The core reason is that this relief – even if brought in the name of a government agent – seeks money that "ultimately belongs to the claimant individuals, not the government." *In re American*, 2013 WL 3463503 at *8. In other words, it is the individual's money to bargain with based upon the individual's interests.

Class action approval procedures ensure that an individual's choices to bargain away his private rights comport with principles of fairness. Entities such as the state and federal government can – and indeed the Division did – object to these choices.[2] But once they are approved by a

[2] Notably, the Bureau received the same notice of settlement – and thus had the same opportunity to intervene and object – as did the Division. *See* Notice Letter, attached as **Exhibit A**. This fact

court, the government has no interest to protect. Indeed, post-judgment demands for additional restitution on behalf of individual claimants are simply "post-negotiation collateral attacks on the settlement" which hold "the potential for disruption to the settlement." *Id*. These attacks undermine the guarantees of preclusion, which in turn gives defendants "little incentive to agree to any settlement," and leaves plaintiffs "with no leverage" with which to settle. *California v. IntelliGender, LLC*, 771 F.3d 1169, 1180-81 (9th Cir. 2014).

Nonetheless, the Bureau argues that its restitution claims relate to its public (or national) interests in the uniform application of federal law (i.e., the Consumer Financial Protection Act ("CFPA")) and deterring future violations of federal law. As described below in subpart (C), the interests at stake in this case implicate Maryland law, not federal law. Moreover, the CFPA's penalty provisions serve the purposes of deterrence. The Bureau's effort to seek monetary relief on behalf of the class members, however, only serves the private interests of the class.

As discussed in the Defendants' Memorandum in Support, numerous courts have held that a government agent – though precluded from seeking money damages on behalf of class members – can still seek remedies such as injunctions and civil penalties. *Id*. at 1182; *In re American*, 2013 WL 3463503 at *8. These courts have held that such remedies provide the government with sufficient deterrents to protect public interests. Moreover, due to the extensive litigation in this matter, Access Funding has gone out of business. It would seem that the Bureau has "accomplished the [purported] public policy goal" of deterring Access Funding from committing future alleged violations. *See U.S. EEOC v. Balt. Cnty.*, 202 F. Supp. 3d 499, 520 (D. Md. Aug.

---

undermines that Bureau's argument that Defendants "would impose an onerous and extensive burden upon the [government] to monitor private litigation." Bureau's Br. at 13. That assertion falls flat because the Bureau – like the Division – received advance notice of the settlement and was given the opportunity to intervene or object.

24, 2016) (denying additional monetary relief for the EEOC where it instituted an action regarding allegedly discriminatory pension rates for Baltimore union members, but the unions and the County entered into a joint consent order adjusting the rates to remove the discriminatory rates).

**B. <u>The claims are the same for purposes of *res judicata* and failure to enforce the *Linton* judgment would violate 28 U.S.C. § 1738.</u>**

The Bureau argues that the Release does not bar the Bureau's CFPA claims, and *res judicata* does not apply, because those claims "could not have been brought in the *Linton* action because [the class members] had no right of action to assert such claims." Bureau's Br. at 16. Essentially, the Bureau argues that claimants in state court proceedings may not release claims that could not have been brought in the state court action. The Supreme Court rejected this argument in *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 372-73 (1996).

In *Epstein*, a class of plaintiffs sued MCA and its directors based on purely state law claims arising from a tender offer. That ultimately settled, before it did, another set of plaintiffs (some of whom were also members of the Delaware class) brought a second putative class action against MCA in federal court in California. The putative California class asserted securities claims under the Exchange Act which could only be brought in federal court. The district court dismissed the California action and those plaintiffs appealed. Before the Ninth Circuit heard the appeal, however, the Delaware class settled its claims against MCA and executed a global release which purported to release all class members claims arising from MCA's tender offer. The release specifically included "state or federal [claims], including but not limited to claims arising under the federal securities laws . . . and . . . Claims asserted in the California Federal Actions." *Id*. at 371-72 (internal citation omitted).

During the appeal before the Ninth Circuit, MCA's attorneys argued that the federal Full Faith and Credit statute (28 U.S.C § 1738) applied to the Delaware state court judgment and barred

further prosecution of the putative California class' federal securities claims. The Ninth Circuit disagreed, holding that § 1738 did not apply because the Delaware plaintiffs could not have brought the federal Exchange Act claims in the Delaware state court action. *Id*. at 373.

The Supreme Court reversed. It held that state court judgments approving class action settlements are entitled to full faith and credit, and may extinguish exclusively federal claims if (1) the state's courts would give preclusive effect to state court class action judgments extinguishing purely federal claims, and (2) there is no indication that the federal statute at issue explicitly or implicitly creates an exception to § 1738.[3] The Supreme Court noted that the Delaware Supreme Court had "manifested its understanding that when the Court of Chancery approves a global release of claims, its settlement judgment should preclude *on-going or future* federal court litigation of *any released claims*." *Id*. at 377 (emphasis added). Further, while the Court noted that the Exchange Act sought to "achieve greater uniformity of construction and more effective application of" federal securities laws, it found that "[w]hen a state court upholds a settlement that releases claims under the Exchange Act, it threatens neither of these policies." *Id*. at 383.

This Court should reach the same conclusion. As to the first prong of the analysis, in *Shenker v. Polage*, 226 Md. App. 670, 130 A.3d 1171 (2016), the Court of Special Appeals affirmed a state court's judgment approving a class action settlement which – among other things – released some of the class members' federal securities claims. 226 Md. App. at 681-690, 130 A.3d at 1177-1183. Thus, there is Maryland precedent for enforcing settlements in state court

[3] Justice Thomas recognized that often a state's courts may not have had occasion to determine the preclusive effect of a state judgment on a purely federal claim. *Id*. at 375. In that case the court may look to general state law on the preclusive force of settled judgments. *Id*. at 375-76.

actions which also release federal claims. As to the second prong of the analysis, there is no indication that the CFPA contains an exception to § 1738.[4]

As Justice Thomas noted in *Epstein*, "there is nothing sacred about the approval of settlements of suits arising under state law, even where the parties agree to release exclusively federal claims." *Id*. at 384 (citations omitted). Here, the *Linton* class members released their claims for monetary damages against Defendants. They had the right to do so because these damages ultimately belonged to them. *In re American*, 2013 WL 3463503. Accordingly, this Court should enforce the *Linton* judgment – and corresponding Release – because both are entitled to full faith and credit.

**C. <u>The Bureau is in privity with the class members regarding claims for monetary relief brought on their behalf.</u>**

The Bureau claims it is not in privity with the *Linton* class members because the class members are not capable of "addressing past violations" and "deterring future violations" of the CFPA. Bureau's Br. at 12. The Bureau argues that the CFPA vests it alone with these responsibilities and, because the CFPA addresses issues of national import, the traditional rules of *res judicata* do not apply. The Bureau is wrong for several reasons.

First, the Bureau cites several cases brought by the Department of Labor pursuant to ERISA, and cases brought by both the CFTC and EEOC under their respective statutory authorities. The Secretary of Labor, CFTC, and EEOC each possess a direct mandate from Congress to ensure the uniform application of a *federal* statutory scheme. The Bureau has not cited a case in which a state or federal court has held that the "vital national interest" in enforcing

[4] In *Epstein*, Justice Thomas noted the "rarity" with which the Court has discovered implied exceptions to § 1738, and stated that there must be an "irreconcilable conflict" between the two federal statutes at issue. *Epstein*, 516 U.S. at 381 (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 468 (1982)). There is no irreconcilable conflict between § 1738 and the CFPA.

the CFPA's statutory scheme warrants a departure from the normal rules of *res judicata* regarding victim-specific relief. And even if it could, that would not warrant departing from the norms of *res judicata* here, because this case arises not from the CFPA's statutory scheme, but from Maryland state law.

The Bureau alleges that Defendants violated Maryland's Structured Settlement Transfer Act, Md. Code, Cts. & Jud. Proc. § 5-1101, *et seq.* ("SSPA"). *See* Defs.' Br. at 2-3, ¶¶ 1-6 (stating that this case arose from transfers under the SSPA and that the Bureau's claim is based on the same conduct under the SSPA alleged in the *Linton* case – facts the Bureau did not dispute in its opposition). Historically, states led the way in developing and enforcing legislation regarding the transfer of structured settlement rights. *See e.g.* D. Hindert & C. Ulman, *Transfers of Structured Settlement Payment Rights*, 44 No. 2 Judges' J. 19 (2005) (discussing the history of structured settlement legislation). Indeed, 30 states – including Maryland – enacted legislation regulating structured settlement transfers before Congress got involved. *Id.* at *21, n.16. Congress acted in 2002 by adding a provision to the Internal Revenue Code. 26 U.S.C. § 5891. Section 5891 imposed an excise tax equal to 40% of any factoring discount a party received in a transaction not first approved by a court. *See* 26 U.S.C. § 5891. Even then, the core goal of the federal legislation was to ensure uniform application of the *state* court approval processes, which in turn focused on *state* law issues such as the best interests of the payee.

As such, Section 5891 merely "gave teeth to *state* laws governing structured settlement factoring transactions." *Stevens Law Office v. Symetra Assigned Benefits Service Co.*, 172 A.2d 793, 797 (Vt. 2017) (emphasis added); *Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, No. H-05-3167, 2007 WL 114497, at *35 (S.D. Tex. Jan. 10, 2007) ("State legislatures . . . have already determined that it is in the public interest to condition a proposed [transfer] on *state-court* findings

that there has been sufficient disclosure and that the transfer is in the annuitant's best interests.") (emphasis added). To the extent Section 5891 demonstrates the federal government's interest in the uniform enforcement of structured settlement laws, that interest lies with the Internal Revenue Service, not the Bureau. Moreover, that interest would lie in imposing the 40% federal excise tax on those who violate a state's structured settlement transfer statute, not seeking monetary relief on behalf of individual payees as the Bureau does here.

The Bureau argues that it possesses a broad public (or national) interest in pursuing monetary, victim-specific relief on behalf of the class members. Thus, it claims, the class members had no right to bargain these claims away because they implicate public interests. This is simply incorrect. First, as shown above, the government seeks to vindicate private rights when it seeks victim-specific relief in the form of monetary damages. Second, as shown above, this case lacks a federal nexus upon which the Bureau can claim an interest. If any party has an interest in the "uniform application" of the SSPA it would be the state of Maryland, not the federal government. Congress has limited the federal role in structured settlement transactions to punitive excise taxes. Even then, it is the IRS, not the Bureau, that maintains an interest in enforcing these taxes. Thus, the Bureau's claimed interest in this case is illusory.

**III. Summary Judgment is appropriate.**

Despite the legal principles illuminated above, the Bureau argues that summary judgment – even if appropriate at some point – is inappropriate at this time. The Bureau argues that this Court should defer its decision on preclusion, but does so based on inapposite case law. It also erroneously argues that the *Linton* judgment is not final and/or the Division's pending appeal arrests the effect of *res judicata*. Both arguments are incorrect.

### A. The Court should not delay a decision on Defendants' Motion.

The Bureau cites several cases to show that (1) courts regularly defer on summary judgment motions regarding remedies where the Court has yet to establish liability, and (2) that courts routinely defer decisions on questions of preclusion. None of these cases, however, involved a class action. Nor did any involve a settlement by class members that included a release of claims against specific defendants for specific relief, which was approved by a court and reduced to a final judgment. Moreover, none of the cases concern a situation where an assignment renders the action moot and non-justiciable. In sum, the Bureau's cases are inapplicable to the present case.

First, both *United States v. Phillip Morris*, 319 F. Supp. 2d 9 (D.D.C. 2004), and *City of Bangor v. Citizens Comms. Co.*, No. Civ. 02-183-B-S, 2004 WL 1572612 (D. Me. Jul. 6, 2004), involved defendants seeking a full dismissal of the plaintiff's suit. By contrast, the Defendants only ask this Court to dismiss those claims seeking a double-recovery for the class members. The Bureau's claims for injunctive relief and penalties remain untouched.

Second, both *Phillip Morris* and *City of Bangor* involved unique circumstances where the court found good cause to defer or reject dismissal. In *Phillip Morris*, the government brought RICO claims against then-defunct research organizations that once served the tobacco industry. The defendant entities sought dismissal arguing that – since they were now defunct – the government could not make a *prima facie* showing that the entities were likely to commit future RICO violations. *Phillip Morris*, 319 F. Supp. 2d at 11. However, there was still an issue of fact as to whether the entities might be liable for their pre-dissolution activities and those of their alleged co-conspirators. *Id*. Thus, it was still unclear whether the entities may be liable for the acts (past and future) of other entities. In a similar vein, in *City of Bangor* the defendant sought

dismissal of the plaintiff's injunctive action because the injunction – as pled – would require the defendant to commit a trespass, making it an impermissible equitable remedy. *City of Bangor*, 2004 WL 1572612 at *12. The court rejected this argument because there was a separate statutory claim which could independently support the injunction without resorting to equitable principles. *Id*.[5]

Third, the only case the Bureau cites dealing with preclusion is distinguishable. In *Stevens v. Stover*, 702 F. Supp. 302 (D.D.C. 1988), a federal court chose to defer its decision on collateral estoppel until the plaintiff completed an appeal of an administrative body's decision. *Stevens* involved a police officer's suit against her own department stemming from her arrest and subsequent termination from the force. The Department's Adverse Action Panel ("AAP") made several findings of fact adverse to the plaintiff. The plaintiff appealed the findings to another administrative body. Meanwhile, the defendants in the federal case asked the court to apply preclusive effect to the AAP findings. The district court, which had already been overturned once by the D.C. Circuit in the case, held that it was appropriate to wait until the appeal was complete. The court noted that the appeals court "warned this Court that entering a judgment based upon *administrative findings* that are being appealed 'risks denying relief on the basis of a judgment that is subsequently overturned.'" *Id*. at 306 (quoting *Martin v. Malhoyt*, 820 F.2d 237, 264-65 (D.C. Cir. 1987) (emphasis added)). It also noted that deferral was appropriate "*particularly* where

[5] The Bureau also relies on the statement in *Lovelace v. Lee*, 472 F.3d 174, 192 n.6 (4th Cir. 2006), that "[i]t is premature and unnecessary to evaluate any remedy at this juncture because liability has not even been established." However, this was in reference to the dissenting judge's concern that the Court's ruling could lead to a change in prison policies which might, in turn, violate the Establishment Clause. *Id*. at 216. This has nothing to do with deferring a decision on *res judicata* or on the appropriate timing of a motion for summary judgment. The majority in *Lovelace* made this opinion to counter the dissenting judge's concern that the long-term effect of the court's ruling might be to spawn an Establishment Clause issue. This case is inapplicable to the one at bar.

appeals from *administrative adjudications* are in progress." *Id*. (emphasis added). Thus, the Court seemed particularly concerned about giving preclusive effect to *administrative* findings of fact when those findings were on appeal.[6]

This cases case poses no such issues. The Bureau provides no basis to question the validity of the Settlement Agreement. There is no ambiguity regarding the assignments in the Settlement Agreement. Further, while it is true that the Division has appealed the Settlement Agreement – as discussed below – Maryland law is clear that this has no effect on the application of *res judicata*. Accordingly, the Bureau has not provided good cause for the Court to defer its ruling on Defendants' Motion, and the Court should rule on the Motion.

**B. The Release is enforceable because there was a final judgment in the *Linton* case and the Division's appeal does not suspend *res judicata*.**

The Bureau argues that the Release is not enforceable because the Release gives the Defendants the right to terminate the settlement agreement if the Bureau or the Division refuse to dismiss their respective lawsuits with prejudice upon a final approval order, or if either opposed the Maryland court's final approval of the settlement. The Bureau also argues that the Settlement Agreement itself does not become final until all appeal rights are exhausted or have expired. These statements, while correctly reciting the language of the Settlement Agreement, misunderstand its application.

First, the Settlement Agreement does not change the meaning of a final judgment. The terms of the Settlement Agreement set forth the timing of disbursement of payments to the class members, not the finality of a court's order. However, even if the Settlement Agreement purported

---

[6] Notably, the AAP's findings were also subject to *de novo* review at the reviewing body's discretion. *Id*. at 306. While the court noted that this did not undermine the preclusive effect of the administrative body's findings, *id*., it nonetheless seemed to emphasize that it would be inappropriate to rely on *administrative* findings while those findings were on appeal.

to set a timeline for a final judgment, it could not do so. Private parties cannot alter the meaning of a final judgment under Maryland law.

Under Maryland law, a judgment is final when "(1) intended by the court as an unqualified, final disposition of the matter in controversy, (2) … it … adjudicate[s] or complete[s] the adjudication of all claims against all parties, and (3) the clerk … make[s] a proper record of it in accordance with Md. Rule 2-601." *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989). Furthermore, "a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has the effect of putting the parties out of court, [it] is a final appealable order." *Horsey v. Horsey*, 392 Md. 392, 401, 620 A.2d 305, 310 (Md. 1993) (internal citation and quotation marks omitted). The key question is whether the order "terminates the litigation in a particular court." *Deer Auto. Group, LLC v. Brown*, 454 Md. 52, 65, 163 A.3d 176, 183-84 (Md. 2017) (quoting *Brewster v. Woodhaven Bldg. and Development, Inc.*, 360 Md. 602, 611, 759 A.2d 738, 742 (Md. 2000)). Maryland courts have deemed other orders final, even though they did not settle the underlying dispute, where the order nonetheless terminated the action in *that court*. *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 241, 768 A.2d 620, 624 (Md. 2001) (noting that orders compelling arbitration are final judgments under Maryland law); *Brewster*, 360 Md. at 615-16; 759 A.2d at 745 (holding that an order transferring a case is a final appealable order).

The *Linton* court approved the Settlement Agreement, addressed outstanding fee issues, dismissed the claims in the case with prejudice, and entered an order in accordance with the Maryland rules. This was a final order. Indeed, the Division's appeal *itself* is evidence that this was a final order, because a party may generally only appeal from a final judgment. *See* Md. Cts. & Jud. Proc. § 12-301. There are three exceptions to this final judgment rule for (1) appeals of

interlocutory orders allowed by statute; (2) appeals when a court enters judgment under Md. Rule 2-602(b); and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine. *Deer Auto. Group, LLC*, 454 Md. at 64, 163 A.2d at 183 (citation omitted). Neither the Division nor the Bureau claims that the *Linton* order falls within any of these exceptions. Thus, the only way the Division could appeal the *Linton* order is that it is, in fact, a final judgment.

The Bureau also suggests that the Settlement Agreement is not effective because the Division appealed the *Linton* judgment to the Maryland Court of Appeals. This flies in the face of established Maryland law. First, Maryland courts have been unequivocal that a pending appeal does not preclude the application of *res judicata*. *See Bryan v. State Farm Mut. Auto. Ins. Co.*, 205 Md. App. 587, 946-47, 45 A.3d 936, 604-05 (2012) (holding that a pending appeal does not preclude the application of *res judicata*); *Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) (finding that to preclude the application of *res judicata* pending appeal would be "laughable.") The Court of Special Appeals stated that to hold otherwise would "undermine[ ] the very purpose of the doctrine of res judicata. . . ." *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 524, 852 A.2d 1029, 1040 (Md. Ct. Spec. App. 2004).

The Bureau argues that *Warwick* is distinguishable. Even assuming that *Warwick* is inapplicable – an incorrect assumption[7] – the Bureau completely ignores the *Bryan* and *Campbell* cases cited in Defendants' brief. In *Campbell*, the Court of Special Appeals cited significant authority for its conclusion that "a broad consensus has emerged that the pendency of an appeal should not suspend the operation of a judgment for purposes of res judicata or collateral estoppel."

[7] While it is true that *Warwick* involved different circumstances than those in this case, this does not change the basic principles of *res judicata*. The *Warwick* court also cited Wright & Miller for the basic principle that "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." *Warwick*, 573 F. Supp. at 1014 (quoting Wright & Miller, *Federal Practice and Procedure*, § 4433 at 308 (1981)).

*Campbell*, 852 A.2d at 1040.[8] Despite competing authority in other jurisdictions, the *Campbell* court concluded that this was "[t]he better view." *Id*. (quoting Restatement (Second) of Judgments § 13(f) (1982)).

The *Campbell* court also went on to explain that the contrary position would encourage litigants to "file meritless appeals to obtain a second chance to relitigate the same issue or delay the imposition of a valid judgment." *Id*. at 1041. That is exactly what the Division is doing with its appeal. The Division delayed prosecuting its own case against Defendants. Once it saw that the *Linton* Settlement Agreement might extinguish its claims, it intervened. Yet, it failed to press its claims in that case and it failed to convince the *Linton* court that the settlement was improper. Now, the Division (and the Bureau) are using the pending appeal to stave off the effect of *res judicata* on their claims in their own cases. This Court should follow the rules set down in *Warwick*, *Bryan*, and *Campbell* and proceed to decide the Motion in this case.[9]

## IV. <u>The Individual Defendants can assert *res judicata*.</u>

The Bureau claims that what it characterizes as the "Individual Defendants" (i.e., Boghosian, Jundanian, and Borkowski) cannot assert *res judicata* because they were not parties to the *Linton* action.[10] However, the Bureau bases this argument on a misunderstanding of the law.

---

[8] Indeed, the *Campbell* court went on to say that the way to avoid "the danger that an erroneous judgment will affect the rights of the parties in subsequent and related litigation," is to stay the second proceeding. *Id*. at 1041.

[9] On June 7, 2018, the Court of Special Appeals issued an Order to Show Cause, giving the Division until June 22 to show cause that the appeal should not be dismissed for failure to order the transcripts necessary to pursue the appeal. The Division filed its response on June 14. The Court of Special Appeals has yet to decide whether it will allow the Division to proceed with its appeal.

[10] The Bureau's characterization is inaccurate because Charles Smith is also an individual person who is a defendant. However, the Bureau does not dispute that Mr. Smith was a party to the *Linton* action and the instant case. As such, the Bureau seemingly does not, and frankly cannot, suggest that this argument applies to Mr. Smith. For ease of reference, Defendants use the same terminology of "Individual Defendants" used by the Bureau, recognizing it refers only to Messrs. Boghosian, Jundanian, and Borkowski, and does not refer to Mr. Smith.

The key question here is one of privity, namely: were the Individual Defendants in privity with the Defendants in the *Linton* case? The Bureau says no because it believes a current defendant cannot represent the "same legal right" as defendants in prior litigation unless the current defendant faced potential liability in the first action. Bureau's Br. at 20. It bases this conclusion primarily upon the Fourth Circuit's decision in *Andrews v. Daw*, 201 F.3d 521 (4th Cir. 2000). The *Daw* case involved a unique area of law – immunity for individuals sued in their official and personal capacities – and implicated federal *res judicata* principles, not those of Maryland. This seems to be the only place where the Bureau finds this "faced potential liability" analysis.

However, that is not the standard for privity under Maryland law. As this court explained in *Haskins v. Hawk*, the scope of privity includes "persons who have a direct interest in the subject matter of the suit . . . have the right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies . . . and in the advancement of their interests take open and substantial control of [the suit's] prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties." No. ELH-11-2000, 2013 WL 1314194, at *12 (D. Md. Mar. 29, 2013) (citations omitted) (emphasis added). Under Maryland law, courts are not concerned with a defendant's liability exposure in the first suit, but rather, his interest in and level of control over the first suit. As described in detail in Defendants' opening brief, the Individual Defendants meet the Maryland standard for privity. *See* Defs.' Br. at 13-16 (detailing the Individual Defendants' substantial control over Defendants' strategy in all the *Linton*, Division's, and Bureau's cases).

The Bureau tries to sidestep this fact of Maryland law by saying that there is no authority for a defendant using preclusion against an adversary on the ground that the defendant controlled

(though he was not a party to) prior litigation. This impermissibly narrows the scope of privity under Maryland law. Control is a key factor, but courts also assess the individual's interests in the prior suit. On this note, Maryland courts have found that employees – though not parties to a prior suit against their employer and apparently exercising no control over the prior suit – can be in privity with their employers when sued individually in a second suit because their interests align with those of their employer. *See Patel v. HealthPlus, Inc.*, 112 Md. App. 251, 281-82, 684 A.2d 904, 919-20 (Md. Ct. Spec. App. 1996) (finding that an employee was in privity with her employer where the second suit was based on the same conduct – and thus constituted the same claim – as alleged against the employer in a prior action); *deLeon v. Slear*, 328 Md. 569, 581, 616 A.2d 380, 386 (Md. 1992) (same). These courts appear to have found *res judicata* based on an alignment of interests alone, and cited no evidence that the employees controlled the prior litigation.

Thus, the Individual Defendants present an even more compelling case of privity. Their individual interests aligned with those of the entities in the *Linton* case. *See* Defs.' Br. at 14 ("the Individual Defendants understood that the outcome of the Class Action could have legal implications for their defense of the claims made in the Bureau's case. . . ."). Furthermore, the Individual Defendants have controlled the litigation strategy in all three cases involving Access Funding. *Id*. at 14-15. Accordingly, there is a sufficient nexus of both interest and control to find that the Individual Defendants were in privity with the defendants in the *Linton* case, and can assert *res judicata*.

## CONCLUSION

For the reasons set forth above, this Court should grant Defendants' Motion and dismiss the Bureau's claims for monetary relief.

Respectfully submitted,

DEFENDANTS

*/s/ Andrew J. Chiang*
Andrew J. Chiang
Charles M. Sims, *specially admitted*
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, VA 22303
Telephone: (703) 775-8602
Email: achiang@ohaganmeyer.com
Email: csims@ohaganmeyer.com
*Counsel for Defendants Access Funding, LLC, Assoc, LLC, En Cor, LLC, Access Holding, LLC, Reliance Funding, LLC, Lee Jundanian, and Raffi Boghosian*

*/s/ Gregg. E. Viola*
Gregg E. Viola, Esq.
Eric M. Rigatuso, Esq.
Eccleston & Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
*Counsel for Defendant Charles E. Smith*

*/s/ Michael T. Hamilton*
Michael T. Hamilton, Esq.
Matthew R. Hindley, Esq.
Marks, O'Neill, O'Brien, Doherty, & Kelly, P.C.
600 Baltimore Avenue, Suite 305
Towson, MD 21204
*Counsel for Defendant Michael Borkowski*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of June 2018, a copy of the foregoing *Reply in Support of Defendants' Joint Motion for Partial Summary Judgment* was served upon on counsel of record via the Court's electronic filing system:

Christina Coll, Esq.
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Consumer Financial Protection Bureau*

*/s/ Andrew J. Chiang*
Andrew J. Chiang