IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CONSUMER FINANCIAL<br>PROTECTION BUREAU,<br>   *Plaintiff*,<br><br>v.<br><br>ACCESS FUNDING, LLC, *et al.*,<br>   *Defendants*. | Civil Action No. ELH-16-3759 |

**MEMORANDUM**

Plaintiff Consumer Financial Protection Bureau (the "Bureau" or "CFPB") filed suit against a host of defendants under the Consumer Financial Protection Act of 2010 ("CFPA" or the "Act"), 12 U.S.C. §§ 5481 *et seq.*, challenging defendants' structured settlement practices. ECF 1 ("Complaint"). In particular, CFPB sued the following defendants: Access Funding, LLC ("Access Funding"); Access Holding, LLC ("Access Holding"); Reliance Funding, LLC ("Reliance"); Lee Jundanian, former Chief Executive Officer ("CEO") of Access Funding; Raffi Boghsian, Chief Operating Officer ("COO") of Access Funding; Michael Borkowski, CEO of Access Funding (collectively, the "Access Funding Defendants"); and Charles Smith, Esquire. Among other things, the Access Funding Defendants allegedly steered consumers to Smith for financial advice with respect to the sale of their structured settlements to the Access Funding Defendants.

This Memorandum resolves the defendants' motion to stay (ECF 113), pending the outcome of two cases. The motion is supported by a memorandum of law (ECF 114) (collectively, the "Motion") and several exhibits. ECF 114-1 to ECF 114-5. The cases on which defendants rely to support their Motion are *Consumer Financial Protection Bureau v. Seila Law LLC*, 923

F.3d 680 (9h Cir. 2019), *cert. granted* __S. Ct. __, 2019 WL 5281290 (Mem) (U.S. Oct. 18, 2019), pending in the Supreme Court, and *Consumer Protection Division v. Linton*, No. 2607, 2019 WL 1770524 (Md. Ct. Spec. App. Apr. 22, 2019), *cert. granted*, 465 Md. 664, 214 A.3d 1194 (2019), pending in the Maryland Court of Appeals. *Seila Law* concerns the constitutionality of the Bureau's appointment structure. ECF 114 at 2-3. Argument in the Supreme Court is scheduled for about two months from now, on March 3, 2020.[1] *Linton* concerns a class-action settlement that, according to defendants, may have preclusive effect on this litigation. ECF 114 at 3-4. Argument is set for January 6, 2020.[2] The CFPB opposes the Motion. ECF 116 (the "Opposition"). Defendants have replied. ECF 117 (the "Reply"). And, they submitted additional exhibits. ECF 117-1 to ECF 117-4.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons discussed below, I shall grant the defendants' Motion for a stay pending the outcome of *Seila Law*.

## I. Background[3]

CFPB initiated suit more than three years ago, on November 21, 2016. ECF 1. In sum, the Bureau has brought an enforcement action against defendants for allegedly unfair, deceptive, and abusive acts under the CFPA. This case is one of several in Maryland lodged against defendants.

---

[1] *See* https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalFebruary2020.pdf.

[2] *See* https://mdcourts.gov/coappeals/schedule/202001schedule.

[3] The factual allegations in this case have previously been discussed by this Court. *See, e.g.*, ECF 66; ECF 87; ECF 118. Accordingly, I need not discuss them at length here.

On May 10, 2016, the State of Maryland, Office of the Attorney General, Consumer Protection Division (the "Division"), filed suit in the Circuit Court for Baltimore City against Access Holding; Reliance Funding; Assoc, LLC; En Cor, LLC; Jundanian; Boghosian; Borkowski; Smith; and Smith's former law partner, Scott Blumenfeld. *See State of Maryland, Office of the Attorney General, Consumer Protection Division v. Access Funding, LLC, et al.*, Case No. 24-C-16-002855.[4] The Division asserted, *inter alia*, state-law violations based on Smith's failure to provide IPA services to Access Funding's customers.

A few months later, on July 6, 2016, Crystal Linton and Dimeca D. Johnson, on behalf of themselves and others similarly situated, filed a class action suit in the Circuit Court for Baltimore City against Access Funding; Reliance Funding; Access Holding; Assoc, LLC; En Cor, LLC (a subsidiary of Access Funding); Smith; Smith's law firm, CES Law Group, LLC; Anuj Sud; and

---

[4] The complaint can be found at http://www.marylandattorneygeneral.gov/News%20Documents/AG_v_Access_Funding_Complaint.pdf.

A court "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 6367 F.3d 462, 466 (4th Cir.), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, a court may do so only if the facts are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." For example, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the nonmovant. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

Sudlaw, LLC.[5] ECF 59-1 at 8-50 ("Linton Complaint"). The suit concerned structured settlements in lead paint litigation. The Linton Complaint asserted claims of negligence, misrepresentation, fraud, and civil conspiracy under Maryland law. *Id.* at 39-49. But, the plaintiffs did not sue the three Access Funding executives named by the Bureau in this case: Jundanian, Boghosian, and Borkowski. *Id.* at 8-50.

On March 28, 2017, the parties in *Linton* filed a "Joint Motion for Preliminary Approval of Class Action Settlement" (ECF 59-1 at 52-60), with a proposed "Stipulation of Settlement." *Id.* at 61-83 (the "Settlement Agreement"). The settlement class consisted of "all natural persons who were or are Maryland residents, . . . and who between January 1, 2012 and July 6, 2016, transferred all or a portion of their structured settlement payment rights . . . to Access Funding, LLC, Assoc, LLC, En Cor, LLC, Access Holding, LLC, or Reliance Funding, LLC, or any of their designees." *Id.* at 70-71, ¶ 2.1. The parties estimated a Settlement Class of about 100 persons covering 163 transactions. *Id.* at 71, ¶ 2.2.

The Settlement Agreement provides, in relevant part, ECF 59-1 at 73:

3.2  Upon the Effective Date, each Settlement Class Member who has not opted out of the proposed settlement shall be permanently enjoined and barred from filing, commencing, intervening (as class members or otherwise) or receiving any benefits from any lawsuit or arbitration proceeding arising out of or related to any of the Released Claims.

3.3  Upon the Effective Date, each Settlement Class Member who has not opted out of the proposed settlement shall irrevocably assign and transfer to the Defendants any and all benefits or recoveries, including any recovery based on the equitable remedies of restitution, disgorgement of profits or damages obtained by the Bureau in the Bureau's Lawsuit or the Division in the Division's Lawsuit for the benefit of each Settlement Class Member.

---

[5] Mr. Sud was a lawyer, but he has been disbarred. *See Att'y Grievance Comm'n of Maryland v. Sud*, 457 Md. 395, 178 A.3d 1240 (2018).

4

The term "Effective Date" is defined as "the date on which the Judgment finally approving this Stipulation and Settlement becomes Final. The Effective Date shall be, if there are no timely objections to the Settlement, thirty (30) days after entry of the Court's order granting final approval of the settlement." *Id.* at 68-69, ¶ 1.11. And, "'Final' means the date [on] which all appellate rights with respect to the Judgment have expired or have been exhausted in a manner to affirm the Judgment, and when no further appeals are possible, including review by the United States Supreme Court." *Id.* at 69, ¶ 1.12. Moreover, paragraph 1.1 defines the "Bureau's Lawsuit" as the case sub judice. *Id.* at 67. And, paragraph 1.9 defines the "Division's Lawsuit" as the Division's suit pending in the Circuit Court for Baltimore City: Division, Case No. 24-C-16-002855. *Id.* at 68.

The Division moved to intervene as a plaintiff on April 13, 2017 (ECF 64-2 at 2-10), arguing that (1) the settlement amount was inadequate because the $770,000 in compensation for class members covered only 4% of the financial harm that those individuals suffered; (2) the settlement was unfair because it diverted $330,000 of the settlement amount to plaintiffs' counsel; (3) the settlement appears to draw exclusively on insurance money, requiring none of the defendants to make a direct contribution to the settlement fund; and (4) the settlement purports to "release" the defendants from claims brought by the Bureau in federal court. *Id.* at 5-8.

Shortly thereafter, the *Linton* Court granted the Division's motion to intervene. ECF 59-1 at 102-06. The circuit court preliminarily approved the Settlement Agreement on September 22, 2017. *Id.* at 108-16. On February 9, 2018, over the Division's objections, the Circuit court entered a "Final Approval Order," *id.* at 135-62, approving the Settlement Agreement and ordering the parties to comply with its terms. And, on the same date, the court dismissed the case, with prejudice. *Id.* at 164 (the "Order").

5

In February 2018, the Division noted an appeal to the Maryland Court of Special Appeals. *See Linton*, Case. No. 24-C-16-003894-OT, Docket No. 77. On April 22, 2019, the Court of Special Appeals reversed the lower court's approval of the settlement, on the ground that the settlement agreement "thwarts the Division's ability to combat unjust enrichment" and to seek restitution, as opposed to damages. *Consumer Protection Division v. Linton*, No. 2609, 2019 WL 1770524 (Md. Ct. Spec. App. April 22, 2019). The court explained that "the Class Members, as individuals, each had the right to pursue damages against Access and the other defendants, and were free to agree, individually or collectively, not to pursue those claims. The right to seek restitution, however, lies with the Division, and the Class Members never had a restitution claim to settle (they had a damages claim instead)."

Defendants in *Linton* sought certiorari in the Maryland Court of Appeals. ECF 114 at 4. The Maryland Court of Appeals granted certiorari on August 26, 2019. *Linton v. Consumer Protection Division*, 465 Md. 664, 214 A.3d 1194 (2019). As noted, the case is scheduled for argument imminently, on January 6, 2020.

In the federal case, the Access Funding Defendants previously sought summary judgment on the basis of *Linton*. ECF 58. They argued that, in light of the litigation in State court, the Bureau's claims are barred by res judicata. ECF 59 at 7. I denied the summary judgment motion, without prejudice. For one thing, the settlement is not yet final. And, I noted that defendants could renew the motion in the event that the settlement becomes final. ECF 87 at 20-23, 26; ECF 88.

Recently, I denied the Bureau's request to file a second amended complaint due, in part, to the prejudice to defendants in further delay of the litigation. *See* ECF 118. And, I recently approved a modification of the Scheduling Order, with summary judgment motions due on January 10, 2020. ECF 121.

## II. Discussion

### A.

A district court has broad discretion to stay proceedings as part of its inherent power to control its own docket. *Landis v. North American*, 299 U.S. 248, 254 (1936). But, that discretion is not without limits. *In re Sacramento Mun. Utility Dist.*, 395 Fed. App'x. 684, 687 (Fed. Cir. 2010). A court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *see also United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

In particular, the court must consider "the length of the requested stay, the hardship that ... the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." *In re Mut. Funds Litigation*, JFM-04-1274, 2011 WL 3819608, *1 (D. Md. Aug. 25, 2011). In order to issue a stay, a court must be satisfied that a "pressing need" exists, and that "the need for a stay outweighs any possible harm to the nonmovant." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015).

### B.

In *Consumer Financial Protection Bureau v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019), the Ninth Circuit addressed a challenge by a law firm to a civil investigative demand it received from the Bureau. The panel affirmed the district court's determination upholding the constitutionality of the CFPB's provision concerning removal of the Director. It said, *id.* at 683:

> The CFPB is led by a single Director, appointed by the President with the advice and consent of the Senate. § 5491(b). The Director serves for a term of five years

that may be extended until a successor has been appointed and confirmed. § 5491(c)(1)–(2). The Director may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." § 5491(c)(3). A provision of this sort is commonly referred to as a "for cause" restriction on the President's removal authority.

Seila Law argued that this structure violates the separation of powers doctrine because "an agency with the CFPB's broad law-enforcement powers may not be headed by a single Director removable by the President only for cause." *Id.* Relying on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Morrison v. Olson*, 487 U.S. 654 (1988), the Ninth Circuit concluded that the "for-cause removal restriction protecting the CFPB's Director does not 'impede the President's ability to perform his constitutional duty' to ensure that the laws are faithfully executed." *Id.* at 684 (quoting *Morrison*, 487 U.S. at 691).

Seila Law filed a petition for certiorari with the Supreme Court. Seila Law asked: "Whether the vesting of substantial executive authority in the Consumer Financial Protection Bureau, an independent agency led by a single director, violates the separation of powers." ECF 114-2 at 3. In response, CFPB asked, ECF 114-3 at 3: "Whether 12 U.S.C. [§] 5491(c)(3) violates the separation of powers by prohibiting the President from removing the Director of the [CFPB] except for 'inefficiency, neglect of duty, or malfeasance in office.'" On October 18, 2019, the Supreme Court granted certiorari in *Seila Law LLC v. Consumer Protection Bureau*, No. 19-7, __ S. Ct. __, 2019 WL 5281290 (Mem) (U.S. Oct. 18, 2019). In addition to the questions presented by the parties, the Supreme Court directed the parties "to brief and argue the following question: If the Consumer Financial Protection Bureau is found unconstitutional on the basis of the separation of powers, can 12 U.S.C. § 5491(c)(3) [the removal provision] be severed from the Dodd-Frank Act?" ECF 114-1 at 2.

8

## C.

As noted, in determining whether to stay this case, I must weigh the interests of judicial economy, the hardship to the movants if the stay is not granted, and the burden on the nonmovant if the stay is granted.

Defendants argue: "The central issue to be resolved by the Supreme Court in *Seila Law, LLC* is whether the Bureau's existence and functions are constitutional, and if not, whether it can be saved by severing the unconstitutional removal provision applicable to its Director." ECF 114 at 6–7. According to defendants, the Supreme Court's decision on this issue "will determine whether the Bureau has the statutory authority to prosecute this case." *Id.* at 7.

Further, defendants observe that one federal district court has already found that the removal provision was unconstitutional and not severable from the rest of the Act. *Id.*; *see Consumer Financial Protection Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784-85 (S.D.N.Y. 2018). They also point out that a judge on the D.C. Circuit has stated, albeit in dissent, that the "CFPB violates Article II and should be invalidated from top to bottom." ECF 114 at 7; *PHH Corp. v. Consumer Financial Protection Bureau*, 881 F.3d 75, 163-64 (D.C. Cir. 2018) (Henderson, J., dissenting). Determining the removal provision's severability, defendants posit, will require the Supreme Court to assess whether "Congress would have passed Dodd-Frank had it known that the Bureau's director would be subject to removal by the President at will." ECF 117 at 4. According to defendants, if the removal provision is not severable, the Bureau would not have standing to prosecute them. *See id.* at 3.

Similarly, defendants argue that, if the Maryland Court of Appeals upholds the settlement in *Linton*, the Bureau will be precluded from obtaining relief from defendants under the terms of the *Linton* settlement agreement. *See* ECF 114 at 3–5. They point out that the settlement contains

a provision "whereby the class members agreed to release and assign their rights to any remedy obtained on their behalf by the Division or the Bureau. . . in consideration for the cash provided by the settlement." *Id.* at 3. Defendants contend that, if the settlement is approved, "the Bureau would be precluded from obtaining remedies on behalf of the settling class members in this case, thereby drastically reducing the amount of claimed damages." *Id.* at 7.

Both cases, in defendants' view, will control the disposition of the case sub judice. *Id.* at 5. In their view, a stay "advances the policy behind judicial economy and will cause no prejudice to the Bureau." ECF 117 at 7. Rather, a stay would spare the litigants of "the full costs of litigating summary judgment" in the event either pending case results in a ruling dispositive of this case. ECF 114 at 7.

In its Opposition, the Bureau asserts: "[T]he mere theoretical possibility that the decision in *Seila Law* could prevent this action from proceeding does not support a stay, much less create a 'pressing need' for one." ECF 116 at 9. It also argues that it is "exceedingly unlikely" that the Supreme Court will invalidate "the Bureau's entire organic statute," and therefore a stay on that basis would "almost certainly do nothing to conserve resources." ECF 116 at 7. Although "the Bureau agrees that the restriction on removing the Bureau's director unconstitutionally infringes on the President's powers under Article II," it asserts: "There is every reason to expect that the Supreme Court" will sever the removal restriction. *Id.* at 4, 8.

The Bureau points to a case from 2010, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), to support its position. In that case, the Supreme Court severed the Public Company Accounting Oversight Board's unconstitutional removal restriction, but did not invalidate the entire Board. ECF 116 at 8. Further, the Bureau points out that its organic statute "contains an express severability clause providing that if any provision 'is held to be

10

unconstitutional, the remainder of this Act. . . shall not be affected thereby." *Id.* at 8–9 (quoting 12 U.S.C. § 5302). And, the Bureau notes that then Judge Brett Kavanaugh, while on the D.C. Circuit, advocated for severance of the removal restriction from the CFPB's organic statute, so as to allow it to continue to operate as an executive agency. *See PHH Corp.*, 881 F.3d at 200 (2018) (en banc) (Kavanaugh, J., dissenting).

In the CFPB's view, a stay "would further delay ultimate resolution of this case." ECF 116 at 9. Moreover, a stay "would mean more time in which Defendants are not subject to the injunction the Bureau seeks for the public's protection." *Id.* And, during that period, defendants' assets could be depleted. *Id.* The Bureau asserts, *id.*: "There is no reason to delay these proceedings on the extreme off-chance that the Supreme Court will invalidate the entire statute and shut down the Bureau." *Id.*

In addition, the Bureau argues that the Maryland Court of Appeals's decision in *Linton* "should not affect the outcome of this case." *Id.* at 10. In the CFPB's view, if that court were to approve the *Linton* settlement, it "would not affect the liability determination or the Bureau's claims for an injunction, disgorgement, civil penalties, or redress for consumers not covered by the *Linton* class." *Id.* at 11. It adds that this Court "will have to resolve [summary judgment] motions eventually, whether this case is stayed pending the resolution of *Linton* or not." *Id.* Thus, a stay "would not promote judicial economy." *Id.*

And, the Bureau points out that, even if the Maryland Court of Appeals approves the *Linton* settlement by the end of its 2020 term, the settlement will not become "final" until the "date [on] which all appellate rights with respect to the Judgment have expired or have been exhausted in a manner to affirm the Judgment, and when no further appeals are possible, including review by the

United States Supreme Court." *Id.* at 12. This could extend the stay for a year or more, which is far too long, according to CFPB. *Id.*

**E.**

In my view, a stay is not appropriate based on *Linton*. To be sure, argument is imminent. But, it is not known when the case will be decided. If the Maryland Court of Appeals approves the settlement, and if no party seeks review from the Supreme Court, finality could be achieved 90 days after the mandate issues. But, if review is sought in the Supreme Court, that would extend the time by an unknown length. And, if the Maryland Court of Appeals affirms the Maryland Court of Special Appeals, the case would be remanded to the Circuit Court for Baltimore City for further proceedings. In effect, that would render finality indeterminate.

Additionally, the extent to which the settlement is preclusive is not clear. Defendants argue that the settlement, once approved, will constrain the Bureau in this case, but this is exactly the aspect of the settlement that is disputed on appeal. And, during a stay, the Bureau suffers the burden of being unable to pursue its enforcement powers against the defendants. This Court is not prepared to stay this case indefinitely in anticipation of a ruling from the Maryland Court of Appeals that is *possibly* preclusive.

However, a stay in anticipation of the Supreme Court's decision in *Seila Law* is reasonable. As noted, argument is scheduled for March 3, 2020, and the Court will certainly issue its decision no later than June 2020. Thus, any stay would be relatively short.

When the Supreme Court granted certiorari in *Seila Law*, it ordered additional briefing on a question that could be dispositive of this case. I cannot speculate on the likelihood of the outcome of *Seila Law*, as the Bureau seems to urge. But, if the removal provision is unconstitutional and cannot be severed from the Act, then the Bureau's entire organic statute will be struck down. If

12

the Bureau is not successful, this could render it unable to prosecute this case. Should that happen, the defendants will have been put to considerable, unnecessary expense. Likewise, the Court will have expended unnecessary resources.

Given that an answer will be forthcoming in just a few months as to the validity of the statute, it seems prudent to await the Supreme Court's decision.

### III. Conclusion

A stay on the basis of the pendency of *Linton* in the Maryland Court of Appeals is not appropriate. Even if the Maryland Court of Appeals in *Linton* reverses the Maryland Court of Special Appeals, the parties will still need to litigate here the settlement's preclusive effect.

Conversely, a stay based on *Seila Law* is warranted. This is because one of the Supreme Court's paths in *Seila Law* may render the CFPB unable to prosecute this action; the stay would not be lengthy; and the interests of judicial efficiency and potential harm to the movants justify the stay.

For the aforementioned reasons, I will grant the Motion. I will stay the case pending the Supreme Court's decision in *Seila Law LLC v. Consumer Protection Bureau*.

A separate Order follows.

Date: December 23, 2019                         /s/
                                                Ellen L. Hollander
                                                United States District Judge