

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU | * | |
| | * | SEP 25 2020 |
| Plaintiff, | * | |
| v. | * | Case No. 1:16cv03759-JFM |
| ACCESS FUNDING, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF OPPOSITION TO CFPB MOTION FOR SUMMARY JUDGEMENT AND CROSS-MOTION IN SUPPORT OF MICHAEL BORKOWSKI'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Michael Borkowski (hereinafter referred to as "Mr. Borkowski" or "Moving Defendant"), proceeding pro se, files this Memorandum of Opposition to CFPB Motion for Summary Judgement and Cross-Motion in support of Moving Defendants Motion for Summary Judgement, and states:

## INTRODUCTION AND BACKGROUND

Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") filed a lawsuit on November 21, 2016, in response to a misleading Washington Post article and despite having never received a complaint against Access Funding. The sweeping claims against Defendants: Access Funding, several of its officers and an Independent Professional Advisor ("Attorney Smith") arise out of Access Funding work related to the transfers of "structured settlement payment rights" (the "Complaint"). The transfer of these payment rights were governed by the Maryland Structured Settlement Protection Act ("SSPA") as was in place at that time. Plaintiff alleges violations of various provisions of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481 et seq.

During 2017, Defendants filed motions for *Burford* abstention and a stay or, in the

{DE492096.1}

alternative, to dismiss. By Memorandum and Order of September 13, 2017, Judge Motz denied this motion. But granted the motion to dismiss as to Counts I-IV, which were based upon the conduct of Attorney Smith, citing that "his conduct falls within the "practice of law" exclusion of the CFPA, set forth in §5571(e)." Judge Motz then denied the motion to dismiss as to Count V citing that the *"CFPB's inability to identify specific consumers at this stage is no reason to dismiss the claim".* Judge Motz had earlier in the opinion referenced that *"the CFPB alleges something further. Specifically, the complaint alleges that "consumers who could not otherwise repay the advances were told that they were obligated to move forward with the transfer even if they realized it was not in their best interest"* (Page 27 of Judge Motz Opinion). The CFPB subsequently moved for leave to file an Amended Complaint as to Counts I-IV now claiming that Attorney Smith was not acting in his capacity as a lawyer and by Memorandum and Order of December 13, 2017 this move was granted.

At the core of the original Washington Post Article and the CFPBs Original and Amended Complaint was an unsubstantiated claim suggesting that Access Funding structured settlement transfers were completed at "steeply discounted" rates that typically representing "only about 30% of the present value" (Am. Compl. ¶ 6). However, they fail to provide any explanation or evidence as to how they calculated the "30% of the present value". It can only guess this came from what was quoted in the Washington Post Article, which despite being listed by Plaintiff as an "Other Authority" has no basis in the realities of a fair market value (which takes into account concepts such as liquidity risks, credit risk, time value of money and interest rate risks, etc) or what a Maryland Judge, that routinely examines such transfers, deemed in accordance with the Maryland SSPA as "fair and reasonable" (see Maryland SSPA in effect at that time). In fact, it is now known that the Washington Post calculated their "about 30% of present value" based on the Access Funding disclosure schedule it provided to each customer and that it made part of each and every filing provided to the Maryland Courts. (*see Exhibit 1* for a disclosure schedule provided to a consumer and to the Maryland court). Plaintiff has made no suggestion that Access Funding or its officers made any effort to hide or alter this legally required "present value" calculation from its customers or the courts. The attached transcript of a Structured Settlement transfer being approved in a Maryland Court highlights how the "30% of Present Value" concept is used in actual practice. In the transcript you will note that the judge carefully reads the annuitant the terms of the transfer highlighting the "Present Value" as provided in the disclosure schedule (See *Exhibit 2*, Pg 4: 2-25

and Page 5, 1-12) and then explains to the annuitant that they are not getting the present value, that in fact they are only getting "about 31% percent, a little less than a third of the present value" (See *Exhibit 2*, Pg 6: 8-12). It is an undisputable fact that Maryland Judge Michael Finifter approved this structured settlement transfer at "31% of present value" and in doing so deemed it as "fair and reasonable" under the Maryland SSPA. It is an undisputable fact that the "Present Value" is not representative of "Fair Value". This case was recently provided to the CFPB by Moving Defendant, which might help explain why the CFPBs MSJ has elected to eliminate the notion of the "Present Value" entirely from their MSJ and chose to leave their one reference to "heavily discounted" (on page 1 of the CFPB MSJ) undefined and unexplained.

To further the evidence supporting the notion that Access Funding provided its consumers with "fair market value", an analysis was prepared of the ~1,700 Maryland structured settlement transfers conducted across the industry during the time Access Funding was in business and it was noted that the industry average discount rate was 16.89% (*see Exhibit 3*, Pg 5, #24) and that the Access Funding Average discount rate was lower than the industry average at 15.61% (*see Exhibit 3*, pg 7, Chart). It is an undisputed fact that Access Funding provided consumers with better than industry average discount rates and that the Maryland courts reviewed these rates and approved each Access Funding transaction as "fair and reasonable" in accordance with the Maryland SSPA.

## MEMORANDUM OF OPPOSITION TO CFPB MOTION FOR SUMMARY JUDGEMENT

In the CFPB MPSJ, Arguments and Authorities I (regarding count V of the Amended Complaint), the CPFB makes the claim "there is no factual dispute that Access Funding told customers, both orally and in writing that by taking advances the consumers would be obligated to transfer Access Funding their future structured settlement payments." (see CFPB MSJ, Pg 12) Moving Defendant disputes this claim and notes the lack of evidence indicating that Mr. Borkowski was ever engaged in or was aware of any situation in which a consumer was informed they were obligated to transfer Access Funding their future structured settlement payments.

In regards to the CFPBs MSJ, Arguments and Authorities II (regarding counts I-IV of the Amended Complain), at "B." the CFPBs claims that Borkowski "substantially assisted Smith" and "knew that having an IPA contact in their pocket was essential to Access Funding's business

strategy". This statement is disputed by Moving Defendant and by the CFPBs own lack of supporting evidence and depositional testimony indicating Mr Borkowski assisted Smith in his role as an IPA or was of the opinion that an IPA was essential to the Access Funding business strategy. There were no questions in the Mr Borkowski deposition (or any other consumer or Access Funding employee deposition) regarding Mr Borkowski knowledge of or involvement in the IPA function. In fact, during the deposition of Attorney Smith, the CFPB did not ask a single question of Attorney Smith about Mr Borkowski having any involvement or knowledge of the role of the IPA.

Moving Defendant disputes Plaintiff's MSJ citing the lack of evidence that suggests Mr. Borkowski personally engaged in, had knowledge of or provided substantial assistance to the allegations cited by Plaintiff in their MSJ. Furthermore, there is no evidence suggesting that Mr Borkowski actions represented "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *C.F.P.B. v. Universal Debt & Payment Solutions, LLC*, No. 1:15-cv-00859, 2015 WL 11439178, at *7 (N.D. Ga. Sept. 1, 2015) (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985)). As can be gleamed in the Amended Complaint and Motion for Summary Judgement, Plaintiff has merely made sweeping unsubstantiated allegations of wrongdoing by Attorney Smith and Access Funding and then simply swept in Mr. Borkowski by title and made reference to random documents that provide no indication of any known or reckless substantial assistance (*See, e.g.*, Am. Compl. ¶¶103, 166). As a matter of law, Plaintiffs MSJ against Mr Borkowski should be denied.

## CROSS-MOTION IN SUPPORT OF MICHAEL BORKOWSKI'S MOTION FOR SUMMARY JUDGMENT

This Motion for Summary Judgment relates to Mr Borkowski and Counts IV and V (originally IV in the original complaint) against him as an individual as outlined in the Amended Complaint (*See, e.g.*, Am. Compl. Count IV and V).

### Motion for Summary Judgment Standard or Review

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Furthermore, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, where there are cross-motions for summary judgment, the standard of review does not differ from that applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not

disputed. <u>Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)</u>. The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Id.

## Legal Argument

### I.  Mr. Borkowski did not knowingly or recklessly provide substantial assistance to Attorney Smiths alleged violations.

Under Count IV, Mr Borkowski is being accused of "knowingly or recklessly providing substantial assistance to Smith's unfair, deceptive and abusive acts or practices, in violation of §§ 1031 and 1036(a)(3) of the CFPA. 12 U.S.C. §§ 5531, 5536(a)(3). The two components are broken down as follows.

### The §§ 1031 Analysis

Mr Borkowski is being sued as "any person" who "knowingly or recklessly" provides "substantial assistance" to a covered person or service provider in violation of §§ 1031 who shall be "deemed to be in violation of that section to the same extent as the person to whom such assistance is provided." The first legal argument is that Mr Borkowski can only be held in violation to §§ 1036(a)(3) in count IV to the extent Attorney Smith is determined to be in violation of §§ 1031. It is our understanding that Attorney Smith is filing a separate Motion for Summary Judgment to be dismissed and to the extent such motion is approved as a matter of Law Moving Defendant should be dismissed from this Count IV.

### The §§ 1036(a)(3) Analysis

To the extend that Attorney Smith's motion is denied, Moving Defendant asks the court to dismiss this Count IV against Mr Borkowski as the CFPB has failed to provide evidence of Mr Borkowski "knowingly or recklessly" providing "substantial assistance" to Attorney Smith. Mr Borkowski must have committed acts constituting "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *C.F.P.B. v. Universal Debt & Payment Solutions, LLC*, No. 1:15-cv-00859, 2015 WL 11439178, at *7 (N.D.

Ga. Sept. 1, 2015) (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985)). The Bureau fails to meet this standard.

The CFPB claims that Mr Borkowski was "responsible...for ensuring that structured settlement transferors received independent professional advice in states where the SSPA required it" (Amended Complain #90). However, there is no evidence suggesting that Mr Borkowski had any responsibility or involvement in the IPA process. The IPA function was something administered by internal and external lawyers that processed each transaction and ensured that they met the standards as established by the Maryland SSPA. This administrative component of the transaction never rose to the level of Mr Borkowski. The CFPB must know this as they provide no evidence that Mr Borkowski was involved with or had any responsibilities related to the process of consumers obtaining Independent Professional Advice from Attorney Smith. The CFPB did not ask a single question of Attorney Smith about Mr Borkowski having any involvement or of even knowledge of Attorney Smiths role as IPA for Access Funding Customers. The CFPB did ask Attorney Smith what he thinks Mr Borkowski role was at the company. Attorney Smith indicated, "I thought maybe he was an owner, an investor. I don't know with certainty" (*See Exhibit 4*, Smith Deposition pg 184, line 3-8).

In all the CFPBs evidence provided within their amended complaint and MSJ, there is not one reference to Mr Borkowski having any knowledge that Smith provided IPA services to Access funding consumers and there were no questions in deposition that indicate Mr Borkowski "knowingly or recklessly" provided "substantial assistance" to Attorney Smith in his role as IPA to Access Funding consumers.

There is no evidence suggesting that Mr Borkowski was responsible for the Maryland IPA requirement. That responsibility was in the hands of numerous internal and external lawyers that processed the transactions including: i) Access Funding external legal counsel, and long time industry expert (Attorney Earl Nesbitt) who Access Funding paid $1,500 per transaction to underwrite each transaction and ensure it met the standards to be filed in state court. The CFPB deposition indicates that Mr Nesbitt had a direct conversation with Mr Baghosian about Smith being the IPA for Access Funding Customers "I Spoke to Earl Nesbitt about Charles Smith, disclosed that we were friends. He said that there is no problem with that. In fact, that's the way

it's done. And when you look at the public record, that's what I was talking about, 70 percent of the IPAs (for the industry) were done by the same five people for the time we were in business" (*See Exhibit 5*, Boghosian Deposition, pg 56 line 1-24); ii) <u>Access Funding internal Attorney's</u> – Access Funding had as many as four internal attorneys on staff at the same time that were responsible for processing each structured settlement transfer "Nothing involving any IPA or anything like that would have every been done without approval from an attorney. Just like Smith's invoices were signed by attorneys, Earl Nesbitt, Ryan, Tom Friedrick, with prior industry experience. So there is four internal attorneys that would have been looking at this" (*See Exhibit 6*, Boghosian deposition Pg 144, 24-25 & pg 145, 1-6). It is undisputable that: i) Mr Borkowski was not involved in the role of the IPA with Access Funding consumers; ii) that both internal and external attorneys understood Attorney Smiths role as an IPA with Access Funding consumers; and that iii) Attorney Smiths role as and IPA with Access Funding consumers was never flag as an issue and brought to Mr Borkowski attention by any attorney or employee of Access Funding.

The CFPBs brief unsubstantial references to Mr Borkowski and Attorney Smith are completely unrelated to Attorney Smiths role as an IPA for Access Funding consumers and do not substantiate the CFPBs claim in count IV that Mr Borkowski <u>knowingly</u> or <u>recklessly</u> provided <u>substantial assistance</u> to Smiths alleged unfair deceptive and abusive acts or practices in violation of violation of §§ 1031 and 1036(a)(3) of the CFPA. 12 U.S.C. §§ 5531, 5536(a)(3). Furthermore, there is no evidence suggesting that Mr Borkowski actions represented "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *C.F.P.B. v. Universal Debt & Payment Solutions, LLC*, No. 1:15-cv-00859, 2015 WL 11439178, at *7 (N.D. Ga. Sept. 1, 2015) (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985)). Accordingly, as a matter of law the claims of violations in count IV should be dismissed against Mr Borkowski, because it has not been established that there is sufficient evidence that Mr. Borkowski knowingly or recklessly providing substantial assistance to Attorney Smith. Therefore, this Court should grant summary judgment should be granted and Mr. Borkowski should be dismissed from Count IV.

## II.  Mr. Borkowski's did not Personally Engage in Unfair, Deceptive or Abusive Act of Practice and did not take Unreasonable Advantage of Consumers.

Under Count V, the CFPB specifically does not rely on §§ 1036(a)(3) and instead alleges that Mr Borkowski personally engaged in activity to take "unreasonable advantage of consumers' lack of understanding of the material risks, costs, or conditions of the advance loans" in violation of §§ §§ 1031(d)(2)(A) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(d)(2)(A), 5536(a)(1)(B). By placing the allegations against Mr Borkowski under both §§ 1031(d)(2)(A) and 1036(a)(1)(B) the CFPB has taken on the additional burden of providing that the individual defendant himself engaged in unfair, deceptive, or abusive acts or practices rather than knowingly or recklessly providing substantial assistance to the accused acts or practices (as would be the case under §§ 1036(a)(3)). The CFPB themselves draw this distinction in Section I.B of their Arguments and Authorities in their Motion for Summary Judgement in which they claim the Mr. Borkowski "Engaged in" the claimed abused act. However, neither the CFPBs Amended Complaint or Motion for Summary Judgement make mention of any specific allegations that Mr Borkowski was "engaged in" telling customer (directly or indirectly) that they are obligated to go forward with a transaction because of an advance. In fact, there is no indication or suggestion that Mr Borkowski was even aware of any instances of such claimed activity. In this context it is also important for this court to recognized the September 13, 2017 opinion as issued by Judge Motz, which as it relates to Count V of the complaint allowed further *"discovery in order to allow the CFPB the opportunity to prove that customers who could not otherwise repay the advances were told that they were obligated to go forward with the transactions..."* (See Judge Motz Opinion, Pg 28)

Not only are there no specific allegations in the complaint that Mr Borkowski personally committed any of the allegations laid out in Claim V as may be required under §§ 1031(d)(2)(A) and 1036(a)(1)(B), Mr Borkowski is not aware of any document or deposition that suggests Mr Borkowski participated in or was aware of any instance in which a customer was informed that if they "could not repay an advance they were obligated to move forward with a transactions". Additionally, there is no evidence that suggests a pattern of Access Funding employees informing individuals that they had to move forward with transactions nor is there any indication that Mr Borkowski, personally, knew of, encouraged or directly/indirectly participated in any such

practice. The CFPB must know this, in reviewing the depositions conducted by the CFPB of Access Funding consumers and employees, the CFPB did not ask a <u>single question</u> linking (directly or indirectly) Mr Borkowski to any instance in which a customer was supposedly told or even felt that they were obligated to move forward with a transaction because of an advance.

In the CFPB motion for summary judgement, they merely provide a reference to an email in which they attempt to link Mr Borkowski to Count V by making the claim that: Mr Borkowski "established, controlled and monitored Access Funding policies and practices, including the practice of providing advances to customers" (*see CFPB MSJ*, Pg, 14 & 15). However, the irony of the email is that it directly contradicts their own recast claim of "IPA services being provided after an advance". The email used by the CFPB clearly indicates that the advance is being provided <u>after</u> having the required IPA "*After speaking with Lee we have agree upon a $1,000 advance for my client...we have also obtained the necessary IPA for this client as well so everything is good to go*" (*see CFPB MSJ*, Pg, 15 footnote reference 94 to their Exhibit 22 (a copy of which is attached to this motion *see Exhibit 6*).

While the CFPBs MSJ attempts to pivot away from Judge Motz focus of "*customers who could not otherwise repay the advances were told that they were obligated to go forward with the transactions...*" the CFPB should not be allowed to recast its claims on a motion for summary judgment. *See McElvy v. Nationstar Mortgage, LLC,* No. 2:12cv502, 2013 WL 12146733, *2 (E.D. Va. Apr. 29, 2013) (the "Court does not consider any claim not referenced in the Complaint, for a litigant may not modify a Complaint through briefing..."). The purpose of a complaint is to provide the defendant "illumination as to the substantive theory under which [plaintiff] [is] proceeding, which is the function of the pleadings under the Federal Rules." *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 717 (4th Cir. 1983) (citation, ellipsis and quotation marks omitted). "Accordingly, a case may not proceed to trial on 'an unpleaded theory of recovery' without the 'express or implied consent of the parties.'" *Lee v. Certainteed Corp.*, 123 F. Supp.3d 780, 794 (E.D. N.C. 2015) (quoting *Pinkley, Inc. v. City of Fredricksburg, Md.*, 191 F.3d 394, 401 (4th Cir. 1999)). Had Mr Borkowski's attorney been aware of this new claim at the time of discovery and during deposition(s) they would have reviewed documents available in discovery to investigate and would have asked different questions during the depositions to address these new claims.

By holding Mr Borkowski personally liable under both §§ 1031(d)(2)(A) and 1036(a)(1)(B), the CFPB has taken on the burden of providing that the individual defendant himself "engaged in" unfair, deceptive, or abusive acts or practices. But even if the court shows less distinction between §§ 1031(d)(2)(A), 1036(a)(1)(B) and the less specific §§ 1036(a)(3) there is still <u>no evidence</u> that Mr Borkowski knowingly or recklessly providing substantial assistance to the alleged activity under both the context of this Court's ruling on the Defendants motion to dismiss the amended complaint and under the CFPBs newly casted claims in its motion for summary judgement. Furthermore, there is no evidence suggesting that Mr Borkowski actions represented "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *C.F.P.B. v. Universal Debt & Payment Solutions, LLC*, No. 1:15-cv-00859, 2015 WL 11439178, at *7 (N.D. Ga. Sept. 1, 2015) (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985)).

Because the complaint neither alleges wrongdoing with specificity on the part of Mr Borkowski nor provides evidence that Moving Defendant knowingly or recklessly providing substantial assistance to any alleged unfair, deceptive or abusive acts under count V, he cannot be held personally liable. Therefore, this Court should grant summary judgment and dismiss Mr. Borkowski from Count V.

## CONCLUSION

Accordingly, and for the reasons discussed above, Defendants ask that the Court grant their Motion for Summary Judgment and dismiss the Moving Defendant.

September 25, 2020                    Respectfully submitted,
                                      Michael Borkowski

                                      */s/ Michael Borkowski*

                                      6900 Wisconsin Ave, #30780

                                      Bethesda, MD 20815

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September 2020, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MICHAEL BORKOWSKI'S MOTION FOR SUMMARY JUDGMENT was served upon the court via hand delivery and was served to the counsel of record via first class mail and email:

Christina Coll, Esq.
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff Consumer Financial Protection Bureau*
Christina.Coll@cfpb.gov

Gregg E. Viola, Esq.
Eccleston & Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
*Attorneys for Defendant Charles E. Smith*
Viola@ewmd.com

Alison Duffy
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, VA 22303
Telephone: (703) 775-8606
Email: aduffy@ohaganmeyer.com

and

Charles M. Sims, *specially admitted*
C. Quinn Adams, *specially admitted*
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
Telephone: (804) 403-7111
Email: csims@ohaganmeyer.com
Email: cadams@ohaganmeyer.com
*Attorneys for Access Funding, LLC, Access Holding, LLC, Reliance Funding, LLC, Raffi Boghosian, and Lee Jundanian*

/s/ Michael Borkowski

{DE492096.1}                    12