THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | |
| Plaintiff, | Case No. 1-16-cv-03759-ELH |
| v. | |
| ACCESS FUNDING, LLC, *et al.*, | |
| Defendants. | |

ELH  [~~PROPOSED~~] **STIPULATED FINAL JUDGMENT AND ORDER**

The Consumer Financial Protection Bureau ("Bureau") commenced this civil action on November 21, 2016, to obtain injunctive and monetary relief and civil penalties from Access Funding, LLC, Access Holding, LLC, Reliance Funding, LLC, Lee Jundanian, Raffi Boghosian, Michael Borkowski, and Charles Smith. The Bureau filed an Amended Complaint ("Complaint") on December 13, 2017. The Complaint alleges violations of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536, in connection with unfair, abusive, and deceptive practices related to the transfer of consumers' future structured-settlement payments in exchange for immediate lump-sum payments.

The Bureau and Defendant Smith agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged against Defendant Smith in the Complaint.

## FINDINGS

1. Charles Smith is an attorney who provided purportedly independent professional advice for almost all Maryland consumers who made structured-settlement transfers with Access Funding, LLC.

2. This Court has jurisdiction over the Bureau and Defendant Smith and the subject matter of this action.

3. Defendant Smith neither admits nor denies the allegations in the Complaint or the Findings in this Order, except that Defendant Smith admits the facts necessary to establish the Court's jurisdiction over him and the subject matter of this action.

4. The amount of harm suffered by the Affected Consumers is the amount of the total Discounted Present Values of the transferred structured-settlement payments, less the total of the Gross Advance Amounts paid to Affected Consumers by Access Funding, LLC.

5. Defendant Smith waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. The Bureau and Defendant Smith agree to bear their own costs and expenses, including, without limitation, attorneys' fees.

6. Entry of this Order is in the public interest.

## DEFINITIONS

7. "Affected Consumer" means any consumer who completed a Transaction with Access Funding, LLC between December 1, 2012, and November 21, 2016, for whom Defendant Smith acted or purported to act as an independent professional advisor.

8. "Assist[ing] Others" includes, but is not limited to:

   a. consulting in any form whatsoever;

   b. providing paralegal or administrative support services;

   c. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

   d. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

   e. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

   f. providing names of, or assisting in the generation of, potential customers;

   g. performing marketing, billing, or payment services of any kind; and

  h. acting or serving as an owner, officer, director, manager, or principal of any entity.

9. "Defendants" means—individually, collectively, or in any combination—Lee Jundanian, Raffi Boghosian, Michael Borkowski, and Charles Smith, and each of them by any other names by which they might be known; and Access Funding, LLC (d/b/a Assoc LLC and En Cor LLC), Access Holding, LLC, and their successors and assigns.

10. "Disclosure Statement" means the document provided to Affected Consumers that summarizes the number, timeframe, and amount of structured-settlement payments to be transferred, the value of payments to be transferred, and the amount Affected Consumers were to receive in exchange for the transfer.

11. "Discounted Present Value" means the amount identified on an Affected Consumer's Disclosure Statement as the current value of the transferred structured-settlement payments at the time of the Affected Consumer's Structured-Settlement Transaction.

12. "Effective Date" means the date on which this Order is entered by the Court.

13. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

14. "Gross Advance Amount" means the amount paid to or for the benefit of an Affected Consumer at the time of his or her Structured-Settlement Transaction.

15. "Related Consumer Action" means a private action by or on behalf of one or more Affected Consumers or an enforcement action by another governmental agency *brought* against Defendant Smith based on substantially the same facts as described in the Complaint.

16. "Structured-Settlement Transaction" means the purchase, acquisition, or transfer of the right to payments under a structured settlement.

## CONDUCT PROVISIONS

### I.

### Prohibited Conduct

**IT IS ORDERED that:**

17. Defendant Smith and all other persons in active concert or participation with him who have actual notice of this Order, whether acting directly or indirectly, may not violate §§ 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B).

18. Defendant Smith and all other persons in active concert or participation with him who have actual notice of this Order, whether acting directly or indirectly, in connection with Structured-Settlement Transactions, may not misrepresent, expressly or impliedly, the relationship between any Defendant and any provider or purported provider of independent professional advice.

19. Within 7 days of the Effective Date of this Order, Defendant Smith shall provide the Maryland Office of Attorney General a copy of this Order.

20. Defendant Smith, whether acting directly or indirectly, shall not:

    a. participate or Assist Others in participating in any Structured-Settlement Transaction;

    b. own, be employed by, or serve as agent of any structured-settlement-factoring company;

    c. provide any advice concerning any Structured-Settlement Transaction, including providing or purporting to provide independent professional advice to any persons seeking to sell structured-settlement payment rights.

## II.

## Customer Information

**IT IS FURTHER ORDERED that:**

21. Defendant Smith and all other persons in active concert or participation with him, who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from an Affected Consumer's information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to an Affected Consumer's account (including a credit card, bank account, or other financial account), that Defendant Smith obtained before the Effective Date in connection with any Structured-Settlement Transaction. *However*, an Affected Consumer's information may be disclosed if requested by a government agency or required by law, regulation, court order, or as required in an administrative or regulatory proceeding.

6

## MONETARY PROVISIONS

## III.

### Order to Pay Disgorgement

**IT IS FURTHER ORDERED** that:

22. A judgment for disgorgement is entered in favor of the Bureau and against the Defendant Smith in the amount of $40,000.

23. Within 30 days of the Effective Date, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $40,000 in full satisfaction of the judgment as ordered in Paragraph 22 of this Section.

24. The Bureau shall deposit these funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

### Civil Money Penalty

**IT IS FURTHER ORDERED** that:

25. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in Counts I, II, and III of the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant Smith must pay a civil money penalty of $10,000 to the Bureau.

26. Within 10 days of the Effective Date, Defendant Smith must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

27. The civil money penalty will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

28. Defendant Smith must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant Smith may not:

    a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

29. Defendant Smith agrees that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to him, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## IV.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED that:**

30. In the event of any default on Defendant Smith's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

31. Defendant Smith relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law, and no part of the funds may be returned to him.

32. The facts alleged in the Complaint will be taken as true solely for the purposes noted herein and will be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation only by or on behalf of the Bureau in a proceeding to enforce its rights to any payment or monetary judgment under this Order such as a nondischargeability complaint in any bankruptcy case.

33. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant Smith, even in such Defendant's capacity as debtor-in-possession.

34. Under 31 U.S.C. § 7701, Defendant Smith, unless he has already done so, must furnish to the Bureau his taxpayer-identification number, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

35. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendant Smith must notify the Bureau of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant Smith paid or is required to pay to Affected Consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money

penalty in any Related Consumer Action, Defendant Smith may not argue that he is entitled to, nor may he benefit by, any offset or reduction of any monetary remedies *imposed in the* Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant Smith based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant Smith must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

36. Under § 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 1681b(a)(1), any consumer-reporting agency may furnish to the Bureau a consumer report concerning Defendant Smith, and any such report may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS

### V.

### Reporting Requirements

**IT IS FURTHER ORDERED that:**

37. Defendant Smith must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence

of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant Smith; or a change in Defendant Smith's name or address. Defendant Smith must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

38. Within 7 days of the Effective Date, Defendant Smith must:

   a. designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant Smith;

   b. identify all businesses for which Defendant Smith is the majority owner or which Defendant Smith directly or indirectly controls that are engaged in offering or providing consumer-financial products or services or other practices subject to this Order, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

   c. describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales; and

   d. identify all of Defendant Smith's telephone numbers and all email, Internet, physical, and postal addresses, including all residences.

39. Defendant Smith must report any changes in the information required to be submitted under Paragraph 37 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

40. Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant Smith must submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report), which, at a minimum:

    a. lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of this Order; and

    b. attaches a copy of each Order Acknowledgment obtained under Section VI, unless previously submitted to the Bureau.

## VI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED that:**

41. Within 7 days of the Effective Date, Defendant Smith must submit to the Enforcement Director an acknowledgement of receipt of this Order, sworn under the penalty of perjury.

42. Within 30 days of the Effective Date, Defendant Smith, for any business for which he is the majority owner or which he directly or indirectly controls that offers or provides any consumer-financial products or services or other services or practices subject to this Order, must deliver a copy of this Order to its executive officers, as well as

to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

43. For 5 years from the Effective Date, Defendant Smith, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section V, and any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

44. Defendant Smith must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

45. Within 90 days of the Effective Date, Defendant Smith must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 40 and 41 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 42.

## VII.
## Recordkeeping

**IT IS FURTHER ORDERED that:**

46. Defendant Smith must create, for at least 5 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau, and make such

documents and records available to the Bureau upon request. Defendant Smith must retain such documents for at least 5 years after creation.

## VIII.

## Compliance Monitoring

**IT IS FURTHER ORDERED that:**

47. To monitor Defendant Smith's compliance with this Order, within 14 days of receipt of a written request from the Bureau, Defendant Smith must submit additional compliance reports or other requested non-privileged information, which must be sworn under penalty of perjury; provide sworn testimony related to requirements of this Order and his compliance with those requirements; or produce non-privileged documents related to the requirements of this Order and Defendant Smith's compliance with those requirements.

48. For purposes of this Section, the Bureau may communicate directly with Defendant Smith unless he retains counsel related to these communications.

49. Defendant Smith must permit Bureau representatives to interview about the requirements of this Order and Defendant Smith's compliance with those requirements any employee or other person affiliated with Defendant Smith who has agreed to such an interview. The person interviewed may have counsel present.

50. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## IX.

## Notices

**IT IS FURTHER ORDERED that:**

51. Unless otherwise directed in writing by the Bureau, Defendant Smith must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Access Funding*, Case No. 1-16-cv-03759-ELH," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552

## X.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED that:**

52. Defendant Smith must cooperate fully to help the Bureau determine the identity and location of, and the amount of harm sustained by, each Affected Consumer. Defendant Smith must provide such information in his or his agents' possession or control within 14 days of receiving a written request from the Bureau.

53. Defendant Smith must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint. Defendant Smith must provide truthful and complete information, evidence, and testimony. Defendant Smith must appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request

upon 10 days' written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XI.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

54. The Court will retain jurisdiction of this matter for purposes of enforcement of this Order.

55. The Clerk shall close the case as to *ELH* defendant Charles Smith.

**SO ORDERED AND ADJUDGED.**

_Ellen L. Hollander_     _11/18/21_
The Honorable Ellen Lipton Hollander     DATE
United States District Judge