# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACCESS FUNDING, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No. 1-16-cv-03759-ELH |

ELH

## [PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER AGAINST ACCESS FUNDING, LLC; ACCESS HOLDING, LLC; LEE JUNDANIAN; AND RAFFI BOGHOSIAN

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on November 21, 2016, to obtain injunctive and monetary relief and civil penalties from Access Funding, LLC, Access Holding, LLC, Reliance Funding, LLC, Lee Jundanian, Raffi Boghosian, Michael Borkowski, and Charles Smith. The Bureau filed an Amended Complaint (Complaint) on December 13, 2017. The Complaint alleges violations of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, in connection with unfair, abusive, and deceptive practices related to the transfer of consumers' future structured-settlement payments in exchange for immediate lump-sum payments.

The Bureau and the Access Funding Defendants (Access Funding, LLC; Access Holding, LLC; Jundanian, and Boghosian, collectively) agree to entry of this Stipulated Final Judgment and Order (Order), without adjudication of any issue of fact or law, to

settle and resolve all matters in dispute arising from the conduct alleged against the Access Funding Defendants in the Complaint.

## FINDINGS

1. Access Funding, a wholly owned subsidiary of Access Holding, is a limited-liability company that facilitated the transfer of payment streams from structured-settlement holders, a practice referred to as "structured-settlement factoring." Access Funding additionally conducted business as "Assoc LLC" and "En Cor LLC."

2. Defendant Jundanian had an ownership interest in Access Holding from its inception to its dissolution. He served as CEO of Access Funding from February 2013 to May 2014. After May 2014, he was an advisor to Access Funding.

3. Defendant Boghosian had an ownership interest in Access Holding from May 2014 to its dissolution. He served as COO of Access Funding from May 2014 to October 2015.

4. This Court has jurisdiction over the Bureau and the Access Funding Defendants and the subject matter of this action.

5. The Access Funding Defendants neither admit nor deny the allegations in the Complaint or the Findings in this Order, except that the Access Funding Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

6. The Access Funding Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of

this action to the date of this Order. The Bureau and the Access Funding Defendants agree to bear their own costs and expenses, including, without limitation, attorneys' fees.

7. Entry of this Order is in the public interest.

**DEFINITIONS**

8. "Advance" means any money given to an Affected Consumer before the consumer completing a Transaction.

9. "Affected Consumer" means any consumer who completed a Transaction with Access Funding, LLC between December 1, 2012, and November 21, 2016, for whom Defendant Smith acted or purported to act as an independent professional advisor, or any consumer who received an Advance from Access Funding before court approval of the structured-settlement transfer.

10. "Defendants" means—individually, collectively, or in any combination—Lee Jundanian, Raffi Boghosian, Michael Borkowski, and Charles Smith, and each of them by any other names by which they might be known; and Access Funding, LLC (d/b/a Assoc LLC and En Cor LLC), Access Holding, LLC, and their successors and assigns.

11. "Effective Date" means the date on which this Order is entered by the Court.

12. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

13. "Related Consumer Action" means a private action by or on behalf of one or more Affected Consumers or an enforcement action by another governmental agency brought against the Access Funding Defendants based on substantially the same facts as described in the Complaint.

14. "Structured-Settlement Transaction" means the purchase, acquisition, or transfer of the right to payments under a structured settlement.

## CONDUCT PROVISIONS

### I.

### Prohibited Conduct

**IT IS ORDERED that:**

15. The Access Funding Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, may not violate §§ 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B).

16. The Access Funding Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, in connection with the transfer of payment streams from structured-settlement holders, may not:

    a. misrepresent, expressly or impliedly:

        i. the relationship between Defendants and any provider of independent professional advice;

    ii.  any other fact material to consumers, such as the material risks, total costs, or conditions of any Advance;

  b. take unreasonable advantage of consumers' lack of understanding of the material risks, costs, or conditions of any Advance.

17. The Access Funding Defendants, whether acting directly or indirectly, shall not refer consumers to a specific individual or for-profit entity for advice concerning any Structured-Settlement Transaction, including for independent professional advice.

18. Within 7 days of the Effective Date of this Order, the Access Funding Defendants shall provide the Maryland Office of Attorney General a copy of this Order.

## II.

## Customer Information

**IT IS FURTHER ORDERED that:**

19. The Access Funding Defendants and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from an Affected Consumer's information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to an Affected Consumer's account (including a credit card, bank account, or other financial account), that the Access Funding Defendants obtained before the Effective Date in connection with any Structured-Settlement Transaction. *However*, an Affected Consumer's information may be disclosed if requested by a government agency or required by law, regulation, court order, or as required in an administrative or regulatory proceeding.

5

## MONETARY PROVISIONS

## III.

### Order to Pay Disgorgement

**IT IS FURTHER ORDERED** that:

20. A judgment for disgorgement is entered in favor of the Bureau and against the Access Funding Defendants, jointly and severally, in the amount of $40,000.

21. Within 10 days of the Effective Date, the Access Funding Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $40,000 in full satisfaction of the judgment as ordered in Paragraph 20 of this Section.

22. The Bureau shall deposit these funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

### Civil Money Penalty

**IT IS FURTHER ORDERED that:**

23. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in Counts IV and V of the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), the Access Funding Defendants, jointly and severally, must pay a civil money penalty of $10,000 to the Bureau.

24. Within 10 days of the Effective Date, the Access Funding Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

25. The civil money penalty will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

26. The Access Funding Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, the Access Funding Defendants may not:

   a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

27. The Access Funding Defendants agree that the civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to them, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## IV.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED that:**

28. In the event of any default on the Access Funding Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

29. The Access Funding Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law, and no part of the funds may be returned to them.

30. The facts alleged in the Complaint will be taken as true solely for the purposes noted herein and will be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation only by or on behalf of the Bureau in a proceeding to enforce its rights to any payment or monetary judgment under this Order such as a nondischargeability complaint in any bankruptcy case.

31. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against the Access Funding Defendants, even in such Defendants' capacities as debtors-in-possession.

32. Under 31 U.S.C. § 7701, the Access Funding Defendants, unless they have already done so, must furnish to the Bureau their taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

33. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, the Access Funding Defendants must notify the Bureau of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that the Access Funding Defendants paid or are required to pay to Affected Consumers and describe the

8

consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, the Access Funding Defendants may not argue that they are entitled to, nor may they benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against the Access Funding Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, the Access Funding Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

34. Under § 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 1681b(a)(1), any consumer-reporting agency may furnish to the Bureau a consumer report concerning Defendants Jundanian and Boghosian, and any such report may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

# COMPLIANCE PROVISIONS

## V.

## Reporting Requirements

**IT IS FURTHER ORDERED that:**

35. The Access Funding Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against the Access Funding Defendants; or a change in the Access Funding Defendants' names or addresses. The Access Funding Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

36. Within 7 days of the Effective Date, the Access Funding Defendants must:

   a. designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with the Access Funding Defendants;

   b. identify all businesses for which the Access Funding Defendants are the majority owner or which the Access Funding Defendants directly or indirectly control that are engaged in offering or providing consumer-financial products or services or other practices subject to this Order, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

    c.    describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales; and

    d.    identify Defendants Jundanian's and Boghosian's telephone numbers and all email, Internet, physical, and postal addresses, including all residences.

    e.    Describe in detail both Defendants Jundanian's and Boghosian's involvement in any business for which each performs services in any capacity or which either wholly or partially owns, including that Defendant's title, role, responsibilities, participation, authority, control, and ownership.

37. The Access Funding Defendants must report any changes in the information required to be submitted under Paragraph 36 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

38. Within 90 days of the Effective Date, and again one year after the Effective Date, the Access Funding Defendants must each submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report), which, at a minimum:

    a.    lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which that Defendant has complied with each such paragraph and subparagraph of this Order; and

    b.    attaches a copy of each Order Acknowledgment obtained under Section VI, unless previously submitted to the Bureau.

## VI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED that:**

39. Within 7 days of the Effective Date, the Access Funding Defendants must each submit to the Enforcement Director an acknowledgement of receipt of this Order, sworn under the penalty of perjury.

40. Within 30 days of the Effective Date, the Access Funding Defendants, for any business for which they are the majority owner or which they directly or indirectly control that offers or provides any consumer-financial products or services or other services or practices subject to this Order, must deliver a copy of this Order to its executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

41. For 5 years from the Effective Date, the Access Funding Defendants, for any business for which they are the majority owner or which they directly or indirectly control, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section V, and any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

42. The Access Funding Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

43. Within 90 days of the Effective Date, the Access Funding Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 40 and 41 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 42.

## VII.

## Recordkeeping

**IT IS FURTHER ORDERED that:**

44. The Access Funding Defendants must create, for at least 5 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau, and make such documents and records available to the Bureau upon request. The Access Funding Defendants must retain such documents for at least 5 years after creation.

## VIII.

## Compliance Monitoring

**IT IS FURTHER ORDERED that:**

45. To monitor the Access Funding Defendants' compliance with this Order, within 14 days of receipt of a written request from the Bureau, the Access Funding Defendants must submit additional compliance reports or other requested information,

which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

46. For purposes of this Section, the Bureau may communicate directly with the Access Funding Defendants unless they retain counsel related to these communications.

47. The Access Funding Defendants must permit Bureau representatives to interview any employee or other person affiliated with any Defendant who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described the Complaint; or (c) compliance with this Order. The person interviewed may have counsel present.

48. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## IX.

## Notices

**IT IS FURTHER ORDERED that:**

49. Unless otherwise directed in writing by the Bureau, the Access Funding Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Access Funding*, Case No. 1-16-cv-03759-ELH," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to

Enforcement_Compliance@cfpb.gov:

>Assistant Director for Enforcement
>Bureau of Consumer Financial Protection
>ATTENTION: Office of Enforcement
>1700 G Street, N.W.
>Washington D.C. 20552

## X.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED that:**

50. The Access Funding Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of harm sustained by, each Affected Consumer. The Access Funding Defendants must provide such information in his or his agents' possession or control within 14 days of receiving a written request from the Bureau.

51. The Access Funding Defendants must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint. The Access Funding Defendants must provide truthful and complete information, evidence, and testimony. The Access Funding Defendants must appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days' written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XI.

52. Should the Access Funding Defendants seek to transfer or assign all or part of their operations that are subject to this Order, such Defendants must, as a

condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XII.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

53. The Court will retain jurisdiction of this matter for purposes of enforcement of this Order.

**SO ORDERED AND ADJUDGED.**

_Ellen L. Hollander_     12/17/21

The Honorable Ellen Lipton Hollander     DATE
United States District Judge